1  Douglas J. Campion, SBN #75381
Email:  doug@djcampion.com
2  LAW OFFICE OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
3  San Diego, California  92108
Telephone: (619) 299-2091
4  Facsimile: (619) 858-0034

5

6  Daniel M. Hutchinson, SBN #239458
Email:  dhutchinson@lchb.com
7  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
8  San Francisco, California 94111
Telephone:  (415) 956-1000
9  Facsimile:  (415) 956-1008

10  [Additional Counsel Appear on Signature Page]

11  *Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

12

NORTHERN DISTRICT OF CALIFORNIA

13

14  STEPHENIE ROSE, on behalf herself and          Case No. 5:11-cv-02390-EJD (PSG)
all others similarly situated,
15                                                 **PLAINTIFFS' NOTICE OF MOTION AND
Plaintiff,                        MEMORANDUM OF POINTS AND
16                                                 AUTHORITIES IN SUPPORT OF
v.                                UNOPPOSED MOTION FOR
17                                                 PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**
18  BANK OF AMERICA CORPORATION,
and FIA CARD SERVICES, N.A.,                   Date: February 28, 2014
19                                                 Time: 9:00 a.m.
Defendants.                    Courtroom:4, 5th Floor
20                                                 Judge: Edward J. Davila

21  CAROL DUKE AND JACK POSTER,
on behalf of themselves and all others
22  similarly situated,

23                                     Plaintiffs,

24          v.

25  BANK OF AMERICA, N.A.; BANK OF
AMERICA CORPORATION;
26  AND FIA CARD SERVICES, N.A.,

27                                     Defendants.

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

I.   INTRODUCTION ...................................................................................................... 2

II.   STATEMENT OF THE FACTS................................................................................. 3

   A.   Factual and Procedural Background ................................................................. 3

      1.   The *Rose* Action .................................................................................... 3

      2.   The *Duke* Action .................................................................................... 4

      3.   The *Ramirez* Action ............................................................................. 4

      4.   The *Johnson* Action ............................................................................ 4

      5.   The *Makin* Action ................................................................................ 4

      6.   The *Bradshaw* Action .......................................................................... 5

      7.   The Classwide Discovery........................................................................ 5

   B.   The Parties Mediated After Engaging in Full Classwide Discovery .......... 5

   C.   The Proposed Settlement.................................................................................. 6

      1.   The Settlement Class .............................................................................. 6

      2.   Prospective Relief for All Class Members........................................ 7

      3.   Monetary Relief for Settlement Class Members.............................. 7

      4.   *Cy Pres* Distributions ............................................................................ 8

      5.   Class Release ........................................................................................... 8

      6.   Class Representative Service Award .................................................... 9

      7.   Attorneys' Fees and Costs..................................................................... 9

      8.   Administration and Notice .................................................................... 9

III.   ARGUMENT AND AUTHORITY ......................................................................... 10

   A.   Class Action Settlement Approval Process.................................................. 10

   B.   This Settlement Is The Product Of Serious, Informed, And Arm's-Length Negotiations ................................................................................ 12

   C.   The Settlement Is Within The "Range Of Reasonableness" For Preliminary Approval ...................................................................................... 13

      1.   The Settlement Provides Substantial Relief For Class Members.................................................................................................. 14

      2.   The Settlement Treats All Class Members Fairly ......................... 15

      3.   The Settlement Is Fair And Reasonable In Light Of The Alleged Claims And Defenses .............................................................. 15

   D.   The Class Representatives' Service Awards Are Reasonable ................... 16

   E.   The Contemplated Attorneys' Fees And Costs Are Fair And Reasonable ......................................................................................................... 17

   F.   Provisional Certification Of The Settlement Class Is Appropriate.......... 20

**TABLE OF CONTENTS**
(continued)

Page

G.      The Proposed Notice Program Is Constitutionally Sound ........................ 22

IV.     CONCLUSION ................................................................................................... 23

**TABLE OF AUTHORITIES**

Page

<u>CASES</u>

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................................... 20

*Bradshaw v. Bank of Am. Corp*,
   13-CV-0431 LAB RBB (S.D. Cal.) .............................................................................. 2, 5

*Chem. Bank v. City of Seattle* (*In re Wash. Pub. Power Supply Sys. Sec Litig.*),
   19 F.3d 1291 (9th Cir. 1994) ....................................................................................... 20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................ 11, 12, 15

*Duke v. Bank of Am.*,
   Case No. 11-cv-04009-EJD (N.D. Cal.) ...................................................................... 2, 4

*Fitzgerald v. City of Los Angeles*,
   No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382 (C.D. Cal. Dec. 8, 2003) .................... 19

*Franco v. Ruiz Food Prods.*,
   No. 10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057 (N.D. Cal. 2012) ............................ 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................................. 13, 14

*Hansen v. Ticket Track, Inc.*,
   213 F.R.D. 412 (W.D. Wash. 2003) ........................................................................... 24

*Harris v. Vector Marketing Corp.*,
   No. C-08-5198, 2011 WL 1627973 (N.D. Cal. April 29, 2011) ..................................... 12, 13

*Hopson v. Hanesbrands Inc.*,
   2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 200) ................................................... 19

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................................ 21

*Johnson v. Bank of Am., N.A.*,
   Case No. 11-cv-3040 LAB (S.D. Cal.) ......................................................................... 2, 5

*Jordan v. County of Los Angeles*,
   669 F.2d 1311 (9th Cir. 1982) .................................................................................... 23

*Linney v. Cellular Alaska P'ship*,
   C-96-3008-DLJ, 1997 U.S. Dist. LEXIS 24300  (N.D. Cal. July 18, 1997) ..................... 13, 21

*Lo v. Oxnard European Motors, LLC*,
   No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983 (S.D. Cal. May 29, 2012) ...................... 22

*Makin v. Bank of Am., N.A.*,
   Case No. 12-cv-1662 LAB (S.D. Cal.) ......................................................................... 2, 5

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-CV-1290 BEN, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013) .......... 22, 23, 24

*Meyer v. Portfolio Recovery Associates*,
   696 F.3d 943 (9th Cir. 2012) ............................................................................ 17, 23, 24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................... 25

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Odrick v. UnionBanCal Corp.,*
  No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413 (N.D. Cal. Dec. 3, 2012) ...................... 19

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982)................................................................................... 12, 15

*Ramirez v. Bank of Am., N.A.,*
  Case No. 11-cv-02008 (S.D. Cal.) ....................................................................... 2, 4, 5

*Rodriguez v. W. Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009)...................................................................................... 18

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. Cal. 2009).......................................................................... 14, 18

*Rose v. Bank of Am. Corp.,*
  Case No. 11-cv-02390 .................................................................................................. 4

*Six Mexican Workers v. Ariz. Citrus Growers,*
  904 F.2d 1301 (9th Cir. 1990).................................................................................... 19

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003)...................................................................................... 22

*Tarlecki v. Bebe Stores, Inc.,*
  No. C 05-1777, 2009 U.S. Dist. LEXIS 102531 (N.D. Cal. Nov. 3, 2009)............................. 22

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993).................................................................................. 8, 19

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.,*
  274 F.R.D. 229 (S.D. Ill. 2011).................................................................................. 17

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002).................................................................................... 20

*Wright v. Linkus Enter., Inc.,*
  259 F.R.D. 468 (E.D. Cal. 2009) ................................................................................. 20

**STATE CASES**

47 U.S.C. § 227(b)(1)(A) ................................................................................................. 2

**CASES**

Fed. R. Civ. P. 23(a)....................................................................................................... 20

Fed. R. Civ. P. 23(a)(1).................................................................................................. 20

Fed. R. Civ. P. 23(a)(2).................................................................................................. 21

Fed. R. Civ. P. 23(a)(3).................................................................................................. 21

Fed. R. Civ. P. 23(a)(4).................................................................................................. 21

Fed. R. Civ. P. 23(b)(3).................................................................................................. 21

**FEDERAL STATUTES**

4 *Newberg on Class Actions* (4th Ed. 2002) § 11.25 ................................................... 11, 14

4 *Newberg on Class Actions* (4th ed. 2002) § 11.41 ......................................................... 11

*Manual for Complex Litigation* (Fourth) (2004) § 13.14.................................................... 12

- iv -

**TABLE OF AUTHORITIES**
(continued)

Page

*Manual for Complex Litigation* (Fourth) (2004) § 21.312 ........................................................... 22

*Manual for Complex Litigation* (Fourth) (2004) § 21.63 ............................................................. 11

*Manual for Complex Litigation* (Fourth) (2004) § 21.632 ..................................................... 12, 20

*Manual for Complex Litigation* (Fourth) (2004) §21.633 ........................................................... 20

## STATE STATUTES

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C. 2008) ................................................................................................................. 16

PLFS' MOT. FOR PRELIMINARY APPROVAL
5:11-CV-02390-EJD (PSG)

1  | **NOTICE OF MOTION AND MOTION**

2  | **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3  NOTICE IS HEREBY GIVEN that on February 28, 2014 at 9:00 a.m., or as soon as the

4  matter may be heard, in the Courtroom of the Honorable Edward J. Davila of the Northern

5  District of California, located at San Jose Courthouse, Courtroom 4, 5th Floor, 280 South 1st

6  Street, San Jose, CA 95113, Plaintiffs Stephanie Rose, Sandra Ramirez, Shannon Johnson, Amin

7  Makin, Carol Duke, Jack Poster, and Freddericka Bradshaw ("Plaintiffs") on behalf of themselves

8  and all others similarly situated, by and through their undersigned counsel, request that this Court

9  grant preliminary approval of the parties' proposed Settlement Agreement.  Bank of America

10  Corporation ("BAC"), Bank of America, N.A. ("BANA"), and FIA Card Services, N.A. ("FIA")

11  (together, "Defendants") do not object to the motion in the context of the parties' proposed

12  settlement.

13  The Motion is based on this Notice of Motion and Motion, the Memorandum of Points

14  and Authorities in Support of Motion for Preliminary Approval, the Proposed Order Granting

15  Preliminary Approval, the Declaration of Jonathan D. Selbin and the exhibits thereto, the

16  Declaration of Cameron R. Azari, Esq. on Settlement Notices and Notice Plan and the exhibits

17  thereto, the pleadings and papers filed in this case, and any oral argument this Court permits.

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    <u>INTRODUCTION</u>**

Plaintiffs Stephenie Rose, Sandra Ramirez, Shannon Johnson, Amin Makin, Carol Duke, Jack Poster, and Freddericka Bradshaw ("Plaintiffs") respectfully move the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiffs and Bank of America Corporation ("BAC"), Bank of America, N.A. ("BANA"), and FIA Card Services, N.A. ("FIA") (together, "Defendants").  The proposed Settlement would resolve all claims in the above-entitled action and the related case *Duke v. Bank of Am.*, Case No. 11-cv-04009-EJD (N.D. Cal.), as well as the claims in the following similar actions: *Ramirez v. Bank of Am., N.A.*, Case No. 11-cv-02008 (S.D. Cal.); *Johnson v. Bank of Am., N.A.*, Case No. 11-cv-3040 LAB (S.D. Cal.); *Makin v. Bank of Am., N.A.*, Case No. 12-cv-1662 LAB (S.D. Cal.); and *Bradshaw v. Bank of Am. Corp*, 13-CV-0431 LAB RBB (S.D. Cal.) (together, "Actions").  The Actions allege that Defendants called or texted Plaintiffs and Class Members on their cellular telephones through the use of automatic telephone dialing systems or by using an artificial or prerecorded voice without Plaintiffs' or Class Members' prior express consent, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A).

As described below, a core aspect of the Settlement is significant prospective business practice changes.  Specifically, as a result of the Actions, Defendants have developed and implemented enhancements to their servicing systems which are designed to prevent the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrower's prior express consent to call his/her cell phone.  In addition, the Settlement requires Defendants to pay what is believed to be the largest cash sum in the 22-year history of the TCPA—$32,083,905—into a settlement fund ("Fund").  Eligible Class Members who file qualified claims will receive, at their election, either a pro rata cash payment or a reduction from the balance of an outstanding extension of credit with Defendants.

The Actions involve sharply opposing positions on many issues, among the following critical issue: The parties disagree on whether the TCPA allows prior express consent for calls to a cellular telephone to be given at any time after origination of a credit relationship.  Plaintiffs

1    assert, based on certain rulings from the Federal Communications Commission (the "FCC"), that

2    consent may be given only at the time of the loan origination.  Defendants believe that Plaintiffs'

3    construction of the rulings is incorrect.  In Defendants' view, the FCC could not have intended

4    this construction in the context of credit and mortgage relationships that last for many years.

5    Defendants instead believe that the FCC rulings state that prior express consent can be given at

6    any point in time during a credit relationship.

7        Class Counsel and Defendants have engaged in extensive formal and informal discovery

8    and evaluation of Plaintiffs' claims.  The parties also participated in three formal mediation

9    sessions and several subsequent telephonic sessions before the Honorable Edward A. Infante

10   (Ret.) of JAMS.  With this motion, Plaintiffs seek preliminary approval of the Settlement, and

11   provisional certification of a nationwide class for purposes of providing the Class with notice of

12   the Settlement and an opportunity to opt-out, object, or otherwise be heard.  The proposed

13   Settlement satisfies all criteria for preliminary settlement approval under Ninth Circuit law and is

14   fair, reasonable, and adequate.

15   **II.      STATEMENT OF THE FACTS**

16       **A.      Factual and Procedural Background**

17           **1.      The *Rose* Action**

18       On May 16, 2011, Plaintiff Stephanie Rose filed a class action complaint against

19   Defendants Bank of America Corporation ("BAC") and FIA Card Services, N.A. ("FIA") in this

20   District (the "*Rose* Action").  *Rose v. Bank of Am. Corp.*, Case No. 11-cv-02390.  Ms. Rose

21   alleges that FIA made several prerecorded calls using an automatic dialing system to her cell

22   phone.  *Id.*, Dkt. No. 8, ¶¶ 16-17.  The Complaint in the *Rose* Action alleges that BAC and FIA

23   violated the TCPA by using an automatic telephone dialing system or an artificial prerecorded

24   voice to call cell phones without the prior express consent of Rose and the putative class members.

25   *Id.*, Dkt. No. 8.  The *Rose* Action focuses on credit card customers who received automated calls

26   without their prior express consent "within the four years prior to the filing of this Complaint."

27   *Id.*, Dkt. No. 8, ¶ 24.

28

### 2. **The *Duke* Action**

On July 30, 2012, Plaintiffs Carol Duke and Jack Poster filed a class action complaint against all three Defendants in the Northern District of California (the "*Duke* Action"). *Duke v. Bank of Am., N.A.*, 5:12-cv-04009-EJD (N.D. Cal.). The Complaint in the *Duke* Action alleges that Defendants violated the TCPA by using an automatic telephone dialing system or an artificial prerecorded voice to call cell phones without the prior express consent of Plaintiff and the putative class members. Dkt. No. 1. The *Duke* Action focuses on automated calls to Bank of America's credit card and mortgage customers. On September 25, 2012, this Court issued an order relating the *Rose* Action and the *Duke* Action. Dkt. No. 37.

### 3. **The *Ramirez* Action**

On August 31, 2011, Plaintiff Sandra Ramirez filed a class action complaint against Defendant Bank of America, N.A. ("BANA," together with BAC and FIA "Defendants") in the Southern District of California (the "*Ramirez* Action"). *Ramirez v. Bank of Am., N.A.*, Case No. 11-cv-02008 (S.D. Cal.). The Complaint in the *Ramirez* Action alleges that BANA violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by using an automatic telephone dialing system or an artificial prerecorded voice to call cell phones without the prior express consent of Ramirez and the putative class members. *Id.*, Dkt. No. 1. The *Ramirez* Action focuses on automated calls to BANA's mortgage customers.

### 4. **The *Johnson* Action**

On December 29, 2011, Plaintiff Shannon Johnson filed a class action complaint against Defendant BAC in the Southern District of California (the "*Johnson* Action"). *Johnson v. Bank of Am., N.A.*, Case No. 11-cv-03040 LAB (S.D. Cal.). The Complaint in the *Johnson* Action alleges that BANA violated the TCPA by using an automatic telephone dialing system or an artificial prerecorded voice to call cell phones without the prior express consent of Johnson and the putative class members. *Id.*, Dkt. No. 1. The *Johnson* action focuses on automated calls to BANA's mortgage customers.

### 5. **The *Makin* Action**

On March 27, 2012, Plaintiff Amin Makin filed a class action complaint against BANA in

the Sothern District of Indiana (the "*Makin* Action").  *Makin v. Bank of Am., N.A.*, Case No. 12-cv-1662 LAB (S.D. Cal.).  The Complaint in the *Makin* Action alleges that BANA violated the TCPA by using an automatic telephone dialing system or an artificial prerecorded voice to call cell phones without the prior express consent of Makin and the putative class members.  *Id.*, Dkt. No. 1.  The *Makin* Action focuses on automated calls to BANA's mortgage customers.  On August 31, 2012, the *Makin* Action was transferred to the Southern District of California and both the *Johnson* and *Makin* Actions were consolidated with the *Ramirez* Action.  *Ramirez v. Bank of Am., N.A.*, Case No. 11-cv-02008, Dkt. 34.

### 6.      The *Bradshaw* Action

On February 22, 2013, Plaintiff Freddericka Bradshaw filed a Complaint against BAC and FIA in the United States District Court for the Southern District of California.  *Bradshaw v. Bank of Am. Corp*, 13-CV-0431 LAB RBB (S.D. Cal.) (the "Bradshaw Action").  The *Bradshaw* Action focuses on text messages rather than calls to cellular telephones.

### 7.      The Classwide Discovery

The parties have engaged in significant formal and informal discovery.  First, Defendants have produced thousands of pages of documents and served written discovery responses.  Declaration of Jonathan D. Selbin in Support of Motion for Preliminary Approval of Settlement ("Selbin Decl.") ¶ 11.  Second, Plaintiffs have taken several 30(b)(6) depositions of Defendants' witnesses and Defendants have taken the depositions of some of the Plaintiffs.  *Id.*  The parties also engaged in discovery dispute motions practice.  *Id.*  In addition, Defendants voluntarily produced additional confirmatory discovery relevant to the Settlement, including additional documents, data, written discovery responses, and deponents.  *Id.*  Defendants will continue to provide Class Counsel with any additional information as necessary to reasonably confirm the material information provided to Class Counsel during settlement negotiations and administrative plans and procedures for compliance with the terms of the Settlement.  *Id.* ¶ 13.  Such discovery will further confirm that the terms of the Settlement are fair, reasonable, and adequate.  *Id.*

### B.      The Parties Mediated After Engaging in Full Classwide Discovery

As described above, by the time the parties explored mediation, they had already fully

1  litigated multiple cases for over a year.  That litigation included hotly contested motion practice

2  and full classwide discovery.  This discovery was essential to the parties' ability to become fully

3  informed on all relevant case issues.

4          The parties participated in three formal mediation sessions before the Honorable Edward

5  A. Infante (Ret.), on October 23, 2012, January 23, 2013, and June 20, 2013.  Selbin Decl. ¶ 12.

6  The parties also participated in several subsequent telephone calls with Judge Infante.  *Id.*  In

7  addition, the parties submitted detailed mediation briefs to Judge Infante, setting forth their

8  respective views on the strengths of their cases.  *Id.*  During these mediation sessions, the parties

9  discussed their relative views of the law and the facts and potential relief for the proposed Class.

10  *Id.*  Counsel exchanged a series of counterproposals on key aspects of the Settlement, including

11  the parameters of the business practice changes and monetary relief for the Class, and the

12  meaning and interpretation of the eligibility requirements.  *Id.*  At all times, the parties' settlement

13  negotiations were highly adversarial, non-collusive, and at arm's length.  *Id.*  The Settlement

14  Agreement is a result of these arms-length negotiations and investigative efforts.

15          **C.       The Proposed Settlement.**

16          The Settlement's details are contained in the Agreement signed by the parties, a copy of

17  which is attached as Exhibit 1.  For purposes of preliminary approval, the following summarizes

18  the Agreement's terms:

19                  **1.       The Settlement Class**

20          The Settlement Class is comprised of all persons in the United States who:

21                          (1) received one or more non-emergency, default servicing
22                          telephone calls from Bank of America regarding a Bank of America
                          Residential Mortgage Loan Account to a cellular telephone through
23                          the use of an automatic telephone dialing system and/or an artificial
                          or prerecorded voice between August 30, 2007 and January 31,
24                          2013 (Mortgage Calls);

    **or**
25

26                          (2) received one or more non-emergency, default servicing
                          telephone calls from Bank of America regarding a Bank of America
27                          Credit Card Account to a cellular telephone through the use of an
                          automatic telephone dialing system and/or an artificial or
28                          prerecorded voice between May 16, 2007, and January 31, 2013
                          (Credit Card Calls);

**or**

> (3) received one or more non-emergency, default servicing text messages from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between February 22, 2009, and December 31, 2010 (Credit Card Texts).  This excludes those identified individuals who are included in paragraph (2) above.

The confirmatory discovery confirms that approximately 4,171,217 persons in the Class received Mortgage Calls; approximately 2,449,350 persons received Credit Card Calls; and approximately 1,103,293 persons Received Credit Card Texts.  Selbin Decl. ¶ 14.  The Class has been separated by groups in this way for the purpose of clarity only; the relief available under the Settlement is identical for the Class Members in each of these groups.

### 2.      Prospective Relief for All Class Members

The Settlement focuses on prospective practice changes designed to protect Settlement Class Members from receiving automated calls in the future.  Specifically, in consideration for the Settlement and in response to the Complaints filed in the Actions, Defendants developed and implemented significant enhancements to its servicing systems that are designed to prevent the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrower's prior express consent to call his or her cell phone.  Agreement § 4.01.

### 3.      Monetary Relief for Settlement Class Members

In addition to the prospective relief for the Settlement Class, the Settlement also requires Defendants to create a Settlement Fund of $32,083,905.  Agreement § 4.02.  Out of this Fund, eligible Settlement Class Members who file a qualified claim will receive a Settlement Award in the form of a cash payment.  *Id.*  Settlement Class Members may make (1) one claim for any Mortgage Calls and (2) one claim for any Credit Card Calls or for any Credit Card Texts.  Class Members may not make both a claim for Credit Card Calls and a claim for Credit Card Texts.  The persons Defendants identified who received Credit Card Texts did not also receive Credit Card Calls.

The amount of each Class Member's Award will be based on a *pro rata* distribution,

1   depending on the number of valid and timely claims. *Id*. § 4.04. While it is not possible to predict

2   the precise amount of the Awards until all claims have been submitted, Class Counsel, based on

3   their experience in similar TCPA class actions, estimate awards in the range of $20 to $40 after

4   deductions for Court-approved attorneys' fees and costs, Court-approved incentive awards to the

5   Plaintiffs, and costs of notice and claims administration. *See id*. Checks for Cash Awards will be

6   valid for 180 days from the date of the check. *Id.* § 9.03.

7            In order to exercise the right to obtain the relief outlined above, Class Members need only

8   complete a simple, one-page claim form and provide it to the Claims Administrator via the

9   Internet site or by mail. *Id.* § 9.02. Class Members will have 90 days from the Settlement Notice

10  Date—*i.e.* 105 days from the Preliminary Approval Order—to submit their claim forms or to

11  submit written requests to be excluded from or opt out of the Class. *Id.* §§ 2.09, 2.10; *cf. Torrisi v.*

12  *Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (approving notice sent 31 days before the

13  deadline for objections). In the event that the combined amounts of any settlement payment

14  checks to Class Members that remain uncashed for more than 210 days after the date on the

15  checks exceed $50,000, a second *pro rata* distribution will be made to all Class Members who

16  made valid and timely claims. *Id.* § 7.04e.

17          **4.      *Cy Pres* Distributions**

18           In the event that the combined amounts of any settlement payment checks to Class

19  Members that remain uncashed for more than 210 day is equal to or less than $50,000, the money

20  will be distributed *cy pres* to the Electronic Frontier Foundation ("EFF"). Agreement § 7.04f.

21  EFF is a non-profit organization whose mission, in part, is to protect consumers from invasions of

22  privacy resulting from the use of new technologies, such as cellular telephones. If, for any reason,

23  the Parties determine that the proposed recipient is no longer an appropriate recipient, or the

24  Parties no longer agree on the proposed recipient, or the Court determines that the proposed

25  recipient is not or is no longer an appropriate recipient, the Parties shall agree on a replacement

26  recipient of such monies, subject to Court approval. *Id.*

27          **5.      Class Release**

28           In exchange for the benefits allowed under the Settlement, Class Members who do not opt

- 8 -

out will provide a release tailored to the practices at issue in this case.  Specifically, they will release all claims "that arise out of or relate" to the "use of an 'automatic telephone dialing system' or 'artificial or prerecorded voice' to contact or attempt to contact Settlement Class Members."  Agreement § 14.01.

### 6.    Class Representative Service Award

Prior to the Final Approval hearing, the Class Representatives will ask the Court to award them service awards for the time and effort they have personally invested in this Action.  As part of the Settlement, Defendants agree not to object to such incentive payments to be paid to the Plaintiffs from the Settlement Fund provided they do not exceed $14,000 in the aggregate or $2,000 for each Class Representative, subject to Court approval.  Agreement § 5.02.

### 7.    Attorneys' Fees and Costs

Also prior to the Final Approval hearing, Class Counsel will apply to the Court for an award of attorneys' fees and costs.  Defendants will not contest Class Counsel's application to this Court for payment of the costs incurred by Class Counsel in litigating this action, or attorneys' fees of not more than 25 percent of the Settlement Fund.  Agreement § 5.01.  As addressed below (and as will be further addressed in Class Counsel's motion for attorneys' fees which will be filed prior to final approval), this amount comports precisely with the Ninth Circuit's benchmark for compensating Class Counsel in common fund class action settlements for the work they have performed in procuring a settlement for the Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Class Members, and obtaining dismissal of the action.  The enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs.  *Id.*

### 8.    Administration and Notice

All costs of notice and claims administration will be paid from the Settlement Fund.  The parties have agreed that Epiq Systems, Inc. will administer the Settlement, subject to review by Class Counsel, which include the following duties:  (1) issuing Class Notice and claim forms; (2) obtaining new addresses for returned email and mail; (3) setting up and maintaining the

- 9 -

settlement website and toll-free number; (4) responding to Class member inquiries regarding the claims administration process; (5) approving or rejecting claims; and (6) calculating and issuing settlement payments.  Agreement §§ 7.01-7.05.  Defendants have agreed to cooperate with Epiq Systems, Inc. to ensure that it has all of the information it needs to perform these tasks.  *Id.* § 7.02.

Within fifteen (15) days of entry of the Preliminary Approval Order, the Settlement Administrator will issue the Class Notice (Exhibit C to the Agreement) via mail or email to all Class Members for whom Defendants possess contact information.  *Id.* §§ 8.01, 8.02.  Any Notices that are returned as non-deliverable with a forwarding address will promptly be re-mailed by the Claims Administrator to such forwarding address.  *Id.*  Skip tracing will performed for all returned email and mail.  *Id.*

Additionally, the Settlement Administrator has designed a nationwide publication notice program which the parties believe will fully satisfy the requirements of due process.  *Id.* § 8.03; *see also* Declaration of Cameron R. Azari, Esq. on Settlement Notices and Notice Plan ("Azari Decl."), submitted herewith.

Further, the Settlement Administrator will establish and maintain a settlement website.  *Id.* § 8.05.  The settlement website will provide generalized information, including the following: the Settlement Agreement; the Settlement Notice; the Q & A Form Notice; the Preliminary Approval Order; a downloadable Claim Form for anyone wanting to print a hard copy of and mail in the Claim Form; the operative complaints in the Actions; and, when filed, the Final Approval Order. *Id.*

The Settlement Administrator will calculate the proportionate recoveries of qualified claimants and issue checks to Class Members who submitted valid and timely claims within 30 days after entry of final judgment approving the settlement and the appeals period has run.  *Id.* § 9.03.

## III.   ARGUMENT AND AUTHORITY

### A.      Class Action Settlement Approval Process

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might

otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).  The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Class members, would be impracticable.  Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 ("*Manual for Compl. Lit.*") describes a three-step procedure for approval of class action settlements:

> (1)  Preliminary approval of the proposed settlement at an informal hearing;
>
> (2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentator Professor Newberg, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  4 *Newberg* § 11.25.

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement.  The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile.  *Id.*  In general, the Court should grant preliminary approval if the Settlement:  "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within

1 the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. C-08-5198, 2011 U.S. Dist.

2 LEXIS 48878, at *23 (N.D. Cal. Apr. 29, 2011) (citations omitted).  The decision to approve or

3 reject a proposed settlement is committed to the Court's sound discretion.  *See City of Seattle*,

4 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its]

5 notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse

6 only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv.*

7 *Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).

8       Granting preliminary approval of this Settlement will allow all Class Members to receive

9 notice of the proposed Settlement's terms and the date and time of the final Settlement approval

10 hearing, at which Class Members may voice approval of or opposition to the Settlement, and at

11 which the parties and Class Members may present further evidence and argument concerning the

12 fairness, adequacy, and reasonableness of the Settlement.  *See Manual for Compl. Lit.*, at

13 §§ 13.14, § 21.632.  Although the parties have requested a hearing, a hearing is not required at the

14 preliminary approval stage.  The Court may grant preliminary approval upon an informal

15 application by the settling parties, and may conduct any necessary hearing in court or in chambers,

16 at the Court's discretion.  *Id.* at § 13.14.  In general, the Court should grant preliminary approval

17 if the Settlement: (1) appears to be the product of serious, informed, non-collusive negotiations;

18 (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class

19 representatives or segments of the class; and (4) falls within the range of possible approval.

20 *Harris v. Vector Marketing Corp.*, No. C-08-5198, 2011 U.S. Dist. LEXIS 48878, at *23 (N.D.

21 Cal. April 29, 2011).

22     **B.**    **This Settlement Is The Product Of Serious, Informed, And Arm's-Length**
                    **Negotiations**

23

24       The Court's role is to ensure that "the agreement is not the product of fraud or

25 overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

26 whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d

27 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted).  Where Class Counsel are

28 experienced in litigating class actions, and where the settlement is reached in arm's length

1   negotiations, the settlement is presumed to be fair. *Linney v. Cellular Alaska P'ship*, C-96-3008-

2   DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997); *Rodriguez v. West Publ'g*

3   *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-

4   length, non-collusive, negotiated resolution . . . ."); *Franco v. Ruiz Food Prods.*, No. 10-cv-

5   02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *30-31 (N.D. Cal. 2012) ("[T]he court may

6   presume that, through negotiation, the parties, their counsel, and the mediator arrived at a

7   reasonable range of settlement by considering Plaintiffs' likelihood of recovery.").

8          As detailed above, the Settlement is the result of intensive, arm's-length negotiations

9   between attorneys experienced in the litigation, certification, trial, and settlement of nationwide

10   class action cases.  Counsel for both parties are also experienced in litigating TCPA claims, and

11   understood the legal and factual issues involved in this case.   In the course of negotiating this

12   Settlement, the parties engaged in three formal and several subsequent telephonic contested

13   mediation sessions before an experienced former federal judge who likewise has vast experience

14   mediating TCPA class actions.

15          As also detailed above, Class Counsel thoroughly investigated and analyzed Plaintiffs'

16   TCPA claims through formal, hard-fought classwide discovery, and also exchanged additional

17   information with Defendants regarding their policies and practices in making automated,

18   prerecorded calls to consumer's cells phones and in obtaining consent to make such call, as well

19   as the number of such calls Defendants actually made.  Class Counsel also had the benefit of

20   information gathered from many Class Members who reported their experiences receiving

21   automated calls and provided their credit and mortgage applications to Class Counsel.  As a result,

22   Class Counsel were well-positioned to evaluate the strengths and weaknesses of their case, as

23   well as the appropriate basis upon which to settle it. *Compare Hanlon*, 150 F.3d at 1027

24   (approving settlement where there was no evidence suggesting "that the settlement was

25   negotiated in haste or in the absence of information").

26   **C.**     **The Settlement Is Within The "Range Of Reasonableness" For Preliminary**
        **Approval**
27

28          At the preliminary approval stage, courts evaluate whether the proposed settlement is

within the "range of reasonableness" such that notice to the class of the terms and conditions of the Settlement, and holding a final approval hearing, would be worthwhile. 4 *Newberg* § 11.25. While the threshold for preliminary approval requires only that the Settlement fall within a "range of reasonableness" (*see supra*), the Settlement meets the criteria for final approval and thus exceeds that threshold. At the final approval stage, a proposed Settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276 (*quoting Officers for Justice*, 688 F.2d at 625. In affirming the settlement approved by the trial court in *City of Seattle*, the Ninth Circuit Court of Appeals noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination finally approving the Settlement "will involve a balancing of several factors" which may include: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement." *Id.*

### 1. The Settlement Provides Substantial Relief For Class Members

The Settlement provides relief for all Class Members to whom Defendants made automated or prerecorded calls. Agreement §§ 4.01, 4.02. All Class Members will benefit from Defendants prospective business practice changes, protecting them from unconsented-to future calls or texts through the use of an automatic dialing system and/or artificial or prerecorded voice. The Settlement also requires Defendants to pay $32,083,905 into a Settlement Fund, out of which eligible Class Members who receive Settlement Awards in the form of cash payments. *Id.* § 4.03. The common fund created by this Settlement is the largest such cash fund of which Class Counsel are aware in a TCPA class action case. The TCPA has been on the books since 1991, and it has been litigated extensively. It is simply an outstanding result for Class Members.

The claim form for monetary relief is simple and straightforward. Class Members need

1  only provide: (1) the Settlement Class Member's full name; (2) confirmation they received a

2  cellular telephone call or text; (3) for mailed Claim Forms, the Settlement Class Member's

3  signature; and (4) for Claim Forms submitted via a web form, the Settlement Class Member's

4  electronic signature. *Id*. § 9.02.

5        The Settlement Fund is non-reversionary, ensuring that all or nearly all monetary benefits

6  will go to Class Members—not a dime of the Settlement Fund will return to Defendants. Any

7  residual amounts under $50,000 remaining after all the payments contemplated by the Settlement

8  are made that would be economically unfeasible to distribute will be donated *cy pres* to the

9  Electronic Frontier Foundation. *Id.* § 7.04f.

10              **2.      The Settlement Treats All Class Members Fairly**

11       The Settlement provides each Class Member with the same prospective relief and also

12  provides *pro rata* monetary compensation to all Class Members who submit claims. *Id*. §§ 4.04,

13  4.05. Because the precise number of calls Defendants made to each Class Member is

14  substantially difficult, unduly burdensome, and economically unfeasible to determine, allowing

15  all potential Class Members the opportunity to make a claim for monetary relief and allocating

16  such relief regardless of the number of calls each Class Member may have received is reasonable

17  and fair. Selbin Decl. ¶ 15.

18              **3.      The Settlement Is Fair And Reasonable In Light Of The Alleged
                          Claims And Defenses**

19

20       Entering into mediation, Plaintiffs and Class Counsel were confident in the strength of

21  their case, but also aware of the risks inherent to litigation and the various defenses available to

22  Defendants.

23       First, there was a risk that the Court would decline to certify this case as a class action.

24  Defendants maintain that class certification would be inappropriate in these Actions. Courts have

25  either granted or denied class certification in TCPA cases depending upon the facts of the case.

26  *Compare Meyer v. Portfolio Recovery Associates*, 696 F.3d 943 (9th Cir. 2012) (upholding

27  certification of a TCPA class) *with Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274

28  F.R.D. 229, 237 (S.D. Ill. 2011) (denying class certification of TCPA class). If Defendants were

- 15 -

PLFS' MOT. FOR PRELIMINARY APPROVAL
                                                                                                5:11-CV-02390-EJD (PSG)

1   able to present convincing facts to support its position, the Court might decline to certify the class,

2   leaving only the named Plaintiffs to pursue their individual claims.

3          These actions also presented risks on the merits.  Liability turns on competing

4   interpretations of, among other things, the FCC's January 4, 2008 declaratory ruling, *In the*

5   *Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

6   23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485

7   (F.C.C. 2008) (hereinafter "Declaratory Ruling").  The Declaratory Ruling is the FCC's official

8   interpretation of the governing provisions of the TCPA.  The FCC's Declaratory Ruling addresses

9   the meaning of "prior express consent" and states: "prior express consent is deemed to be granted

10   only if the wireless number was provided by the consumer to the creditor, and that such number

11   was provided during the transaction that resulted in the debt owed."  Plaintiffs maintain that

12   Paragraph 10 requires that the cell phone number be "provided during the transaction that resulted

13   in the debt owed," *i.e.* during loan "origination."  Defendants, however, interpret the term

14   "transaction" broadly to mean any time during the multi-year life of the loan.  Based on this

15   interpretation, Defendants maintains that some or all of the Class Members gave it prior express

16   consent to contact them at their cellular phone numbers.  If the Court found that the FCC's

17   Declaratory Ruling and/or the TCPA permits "prior express consent" to be given:  (1) after loan

18   origination on documents such as correspondence, updated information forms, forbearance

19   requests, and the like, and/or (2) verbally, the amount of recoverable damages could be reduced

20   significantly or eliminated altogether for many Class Members.  In addition, even if Plaintiffs

21   prevailed on their interpretation of the FCC's Declaratory Ruling, Defendants would likely appeal

22   the decision.

23          Finally, there is the risk of losing a jury trial.  And, even if Plaintiffs did prevail, any

24   recovery could be delayed for years by an appeal.  The Settlement provides substantial relief to

25   Class Members without further delay.

26          **D.**     **The Class Representatives' Service Awards Are Reasonable**

27          Service awards for class representatives are "fairly typical in class action cases."

28   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Such awards are "intended to

1   compensate class representatives for work done on behalf of the class [and] make up for financial

2   or reputational risk undertaken in bringing the action." *Id.* at 958. Unlike absent Class Members,

3   who will enjoy the benefits of the representatives' efforts without taking any personal action, the

4   named Plaintiffs exposed themselves to Defendants' investigation, committed themselves to all

5   the rigors of litigation in the event the case did not settle, and subjected themselves to all the

6   obligations of named parties. The Class Representatives also provided valuable information to

7   Class Counsel, assisted with the initial case investigation, and reviewed the settlement terms and

8   discussed the settlement with Class Counsel before determining that it was in the best interests of

9   the Class. Selbin Decl. ¶ 16. Some of the Class Representatives also participated in depositions.

10      Plaintiffs will separately move for attorneys' fees and service awards prior to final

11   approval, but for the purposes of preliminary approval, the service awards contemplated in the

12   Settlement fall within the range of reasonableness. Modest incentive awards, such as those that

13   Plaintiffs plan to request in connection with the Settlement, promote the public policy of

14   encouraging individuals to undertake the responsibility of representative lawsuits. Moreover, the

15   amount contemplated here, $2,000 for each of the Class Representatives, is reasonable and typical

16   in class actions that settle at similar procedural postures. *See Hopson v. Hanesbrands Inc.,* No.

17   CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900, at *27-28 (N.D. Cal. Apr. 3, 2009) (citing

18   cases and finding that, "in general, courts have found that $5,000 incentive payments are

19   reasonable") (citations omitted); *Odrick v. UnionBanCal Corp.,* No. C 10-5565 SBA, 2012 U.S.

20   Dist. LEXIS 171413, at *11, 18 (N.D. Cal. Dec. 3, 2012) (awarding $5,000 to class representative

21   where "the settlement was reached at the early stages of litigation"); *Fitzgerald v. City of Los*

22   *Angeles,* No. CV 03-01876 NM, 2003 U.S. Dist. LEXIS 27382, at *9 (C.D. Cal. Dec. 8, 2003)

23   (awarding $3,500 each to class representatives in early settlement case).

24      **E.    The Contemplated Attorneys' Fees And Costs Are Fair And Reasonable**

25      Prior to the Final Approval Hearing, Class Counsel will seek an award of twenty-five

26   percent of the Settlement Fund in attorneys' fees and costs, which includes fees and reasonable

27   litigation costs associated with all Actions.

28      This amount—which was negotiated only after the substantive terms of the Settlement

1  were agreed upon—is supported by the percentage-of-the-fund method that Ninth Circuit courts

2  use to determine fees and costs in common fund class action cases.  In the Ninth Circuit, the

3  benchmark for an award of attorneys' fees and costs is twenty-five percent of the settlement fund.

4  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citing *Six Mexican*

5  *Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  When examining fees

6  and costs, "district courts in the Ninth Circuit 'should be guided by the fundamental principle that

7  fee awards out of common funds be *reasonable under the circumstances*.'"  *Wright v. Linkus*

8  *Enter., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (citing *Chem. Bank v. City of Seattle* (*In re*

9  *Wash. Pub. Power Supply Sys. Sec Litig.*), 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations

10  omitted and emphasis in original)).  "In looking at the circumstances of each case, relevant factors

11  may include early settlement, achievement of an excellent result, risk, and a showing of standard

12  fees for similar litigation." *Id.* at 476−77 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

13  1048–50 (9th Cir. 2002)).

14          As will be demonstrated further in Class Counsel's motion for attorneys' fees and costs,

15  all four factors demonstrate that Class Counsel's contemplated request for a benchmark award of

16  attorneys' fees and costs is reasonable under the circumstances.  First, Class Counsel worked hard

17  to achieve an excellent resolution of this case.  *See generally* Selbin Decl. ¶¶ 10-15.  Of course,

18  Class Counsel spent fewer hours prosecuting this action than they would have had the case

19  proceeded to trial.  However, the common fund doctrine "rests on the perception that persons who

20  obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the

21  successful litigant's expense." *See Wright*, 259 F.R.D. at 477 (quoting *Boeing Co. v. Van Gemert*,

22  444 U.S. 472, 478, (1980)).  Therefore, "awarding Plaintiffs' attorneys a percentage of the total

23  settlement amount w[ill] adequately compensate Plaintiffs' counsel for the proposed settlement at

24  an early stage in the litigation." *Id.*  Moreover, awarding Plaintiffs' counsel a reasonable

25  percentage of the common fund promotes the public policy of encouraging timely settlements.

26  *Vizcaino*, 290 F.3d at 1051 (noting "it may be a relevant circumstance that counsel achieved a

27  timely result for class members in need of immediate relief"); *see also In re Activision Sec. Litig.*,

28  723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (approving fees awards that amount to 30 percent of

1   the common fund in part because such a benchmark "will encourage plaintiffs' counsel to move

2   for early settlement").  Thus, the first factor weighs in favor of finding that the requested fees and

3   costs award is reasonable.

4        Second, the Settlement provides Class Members with substantial benefits.  Class Members

5   who do not want Defendants to call them using automated dial systems and/or pre-recorded or

6   artificial voices are protected by Defendants' business practice changes.  And, the settlement

7   agreement creates a fund of $32,083,905 out of which each class member may seek a Settlement

8   payment.  Given the results achieved, the requested fees and costs award is reasonable.  *See, e.g.*,

9   *Linney*, 151 F.3d at 1242 ("[I]t is the very uncertainty of outcome in litigation and avoidance of

10  wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is

11  not to be judged against a hypothetical or speculative measure of what might have been achieved

12  by the negotiators. Thus, the very essence of a settlement is compromise, a yielding of absolutes

13  and an abandoning of highest hopes.") (citations omitted).

14       Third, Plaintiffs' counsel have devoted significant resources to the investigation and

15  prosecution of this case with no guarantee that counsel would be compensated for their time or

16  reimbursed for their expenses.  To the contrary, payment of counsel's fees and expenses has

17  always been contingent on a successful recovery of damages.  Thus, there was a substantial risk

18  of nonpayment.  Moreover, the Court has not yet certified the case as a class action, and

19  Defendants have steadfastly denied that class certification would be appropriate.  Defendants also

20  have denied liability for the claims Plaintiffs' assert.  Even if Plaintiffs ultimately prevail at trial,

21  a result that is not guaranteed, they likely face a long and costly appeals process.

22       Fourth, Plaintiffs' request is in line with fees and costs requested in similar actions.  Not

23  only does the amount comport with the Ninth Circuit's benchmark, it is also consistent with fees

24  approved in recent Ninth Circuit cases involving similar TCPA claims.  *See, e.g.*, *Lo v. Oxnard*

25  *European Motors, LLC*, No. 11CV1009 JLS, 2012 U.S. Dist. LEXIS 73983, at *9 (S.D. Cal. May

26  29, 2012) (awarding twenty-five percent of common fund in fees exclusive of costs, and awarding

27  additional costs out of the common fund  in TCPA action that settled in just over two months);

28  *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN, 2013 U.S. Dist. LEXIS 15731, at

1   \*23 (S.D. Cal. Feb. 4, 2013) (preliminarily approving attorneys' fees "equal to 25% of the

2   Settlement Fund Maximum Payment, or \$4,275,000").  Further, the fact that the Settlement does

3   not make the Class's prospective and monetary relief dependent upon attorneys' fees for Class

4   Counsel weighs in favor of the requested fees and costs.  *See Tarlecki v. Bebe Stores, Inc.,* No. C

5   05-1777, 2009 U.S. Dist. LEXIS 102531, at \*5 (N.D. Cal. Nov. 3, 2009) (citing *Staton v. Boeing*

6   *Co.,* 327 F.3d 938, 972 (9th Cir. 2003)) ("In common fund settlements where the fees are

7   deducted from the common fund, the approval of the settlement agreement as a whole does not

8   depend on the quantum of the fees.")

9          In short, Class Counsel's contemplated fees and costs request is appropriate under the

10  "percentage of the fund" method.

11         **F.      Provisional Certification Of The Settlement Class Is Appropriate**

12         This Court has not yet certified this case as a class action.  For settlement purposes,

13  Plaintiffs respectfully request that the Court provisionally certify Class defined in the Agreement.

14  Agreement §2.32.  Provisional certification for settlement purposes permits notice of the

15  proposed Settlement to issue to inform Class Members of the existence and terms of the proposed

16  Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and

17  place of the formal fairness hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.

18  Defendants waive their right to challenge class certification solely for purposes of this Settlement.

19  For the reasons set forth below, provisional certification is appropriate under Rule 23(a) and

20  (b)(3).

21         The numerosity requirement of Rule 23(a) is satisfied because the Class combined

22  consists of approximately 7,723,860 million people throughout the United States, and joinder of

23  all such persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *Jordan v. County of Los Angeles,*

24  669 F.2d 1311, 1319 & n.10 (9th Cir. 1982) (listing thirteen cases in which courts certified

25  classes with fewer than 100 members).  The commonality requirement is satisfied because there

26  are many questions of law and fact common to the Settlement Class that center on Defendants'

27  common practice of using an automated dialing system to call or text Class Members.  *See* Fed. R.

28  Civ. P. 23(a)(2).  Courts in the Ninth Circuit likewise relied upon almost identical common

questions to find that commonality was satisfied in similar cases in which consumers alleged violations of the TCPA. *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (upholding finding of commonality in TCPA action); *Malta*, 2013 U.S. Dist. LEXIS 15731, at *6 (finding common questions of fact "in that the calls were made by Wells Fargo to class members . . . using auto-dialing equipment or with a prerecorded voice message" and common questions of law "including: (1) whether Wells Fargo negligently violated the TCPA; (2) whether Wells Fargo willfully or knowingly violated the TCPA; and (3) whether Wells Fargo had "prior express consent" for the calls."). The typicality requirement is satisfied because Plaintiffs' TCPA claims, which are based on Defendants' systematic use of automated calls or texts to Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer*, 707 F.3d at 1041-42 (upholding typicality finding); *Malta*, 2013 U.S. Dist. LEXIS 15731, at *7 (finding typicality where TCPA claim stemmed from the same course of conduct and were based on the same legal theory). The adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See* Fed. R. Civ. P. 23(a)(4); *see also Meyer*, 707 F.3d at 1042; *Malta*, 2013 U.S. Dist. LEXIS 15731, at *8. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA actions. *See* Selbin Decl. ¶¶ 2-9 & Exhibit A.

The predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Settlement Class members in a single adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Malta*, 2013 U.S. Dist. LEXIS 15731, at *10. Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Malta*, 2013 U.S. Dist. LEXIS 15731, at *11 (superiority met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it

1   "unlikely that individual actions will be filed").  For these reasons, certification of the Settlement

2   Class for purposes of settlement is appropriate.

3          **G.**        **The Proposed Notice Program Is Constitutionally Sound**

4        "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class

5   members who would be bound by a proposed settlement, voluntary dismissal, or compromise'

6   regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for*

7   *Compl. Lit., supra*, at § 21.312.  The best practicable notice is that which is "reasonably

8   calculated, under all the circumstances, to apprise interested parties of the pendency of the action

9   and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

10   *Trust Co.*, 339 U.S. 306, 314 (1950).  According to the *Manual*, *supra*, at § 21.312, the settlement

11   notice should:

12           •       Define the class;

13           •       Describe clearly the options open to the class members and the deadlines for

14   taking action;

15           •       Describe the essential terms of the proposed settlement;

16           •       Disclose any special benefits provided to the class representatives;

17           •       Provide information regarding attorneys' fees;

18           •       Indicate the time and place of the hearing to consider approval of the settlement,

19   and the method for objecting to or opting out of the settlement;

20           •       Explain the procedures for allocating and distributing settlement funds, and, if the

21   settlement provides different kinds of relief for different categories of class members, clearly set

22   out those variations;

23           •       Provide information that will enable class members to calculate or at least estimate

24   their individual recoveries; and

25           •       Prominently display the address and phone number of class counsel and the

26   procedure for making inquiries.

27        The proposed forms of Notice, attached as Exhibit C to the Agreement, satisfy all of the

28   criteria above.  The Notice Plan provides for direct, individual notice via either email or mail.

Agreement §§ 8.01-8.07. And, skip tracing will be performed for returned email and direct mail notices. *Id*. § 8.02a. Also, notice will be provided to Class Members online through the settlement website. *Id*. § 8.05. Additionally, the Settlement Administrator has designed a Publication Notice plan which will satisfy due process and is presented to the Court as set forth in the attached Azari Declaration. *Id*. § 8.03.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court do the following: (1) preliminarily approve the proposed Settlement as fair, adequate, and reasonable; (2) conditionally certify the Settlement Class and appoint Plaintiffs as class representatives; (3) appoint Class Counsel; and (4) appoint Epiq Systems, Inc. as the Settlement Administrator to administer the proposed Notice and Claims Program.

Dated:  September 27, 2013

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By:/s/ Daniel M. Hutchinson
    Daniel M. Hutchinson

Daniel M. Hutchinson
Nicole D. Reynolds
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

Jonathan D. Selbin
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Matthew R. Wilson
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

Beth E. Terrell
Kimberlee L. Gunning
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 40
Seattle, WA 98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

Mark Ankorn
CASEY GERRY SCHENK FRANCAVILLA BLATT, &
PENFIELD LLP
110 Laurel Street
San Diego, CA 92101
Telephone:  (619) 238-1811
Facsimile:  (619) 544-9232

Joshua B. Swigart
HYDE & SWIGART
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone:  (619) 233-7770
Facsimile:  (619) 297-1022

1133644.1

- 24 -

PLFS' MOT. FOR PRELIMINARY APPROVAL
5:11-CV-02390-EJD (PSG)

Abbas Kazerounian
KAZEROUNIAN LAW GROUP, APC
2700 North Main Street, Suite 1000
Santa Ana, CA 92705
Telephone:  (800) 400-6808
Facsimile:  (800) 520-5523

Douglas J. Campion
LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, CA 92108
Telephone:  (619) 299-2091
Facsimile:  (619) 858-0034

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 North Michigan Avenue, Suite 9020
Chicago, IL 60601
Telephone:  (312) 729-5288
Facsimile:  (312) 729-5289

Syed Ali Saeed
SAEED & LITTLE LLP
1512 N. Delaware Street
Indianapolis, IN 46202
Telephone:  (317) 614-5741
Facsimile:  (888) 422-3151

Daniel G. Shay
LAW OFFICES OF DANIEL G. SHAY
409 Camino Del Rio South, Suite 101B
San Diego, CA 92108
Telephone:  (619) 222-7429
Facsimile:  (866) 431-3292

Steven E. Kaftal
LAW OFFICES OF STEVEN E. KAFTAL
409 Camino Del Rio South, Suite 101B
San Diego, CA 92108
Telephone:  (619) 786-7838
Facsimile:  (888) 431-3292

*Attorneys for Plaintiffs and the Proposed Class*