Joseph Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer PC
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorneys for JAMES KIRBY AND SUSAN HOUSE

FILED
2014 MAR 31 P 5:08

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A.,<br><br>Defendants. | Case No. 5:11-cv-02390-EJD (PSG)<br><br>**OBJECTIONS OF JAMES KIRBY AND SUSAN HOUSE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: April 4, 2014<br>Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila<br><br>Case No. 5:12-cv-04009-EJD (PSG) |
| CAROL DUKE AND JACK POSTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A.,<br><br>Defendants. | |

1

JAMES KIRBY AND SUSAN HOUSE represent to the court they are Class Members and have submitted claims. A copy of their claim forms with (address and phone nos.) submitted by mail are attached as Exhibit A.

## I. INTRODUCTION

There are certain laudatory aspects of this settlement. Class Counsel argue that the gross settlement value of $32,083,905.00 is the largest settlement achieved in a case brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the"TCPA"). Class Counsel have made their motion for attorneys' fees available on the settlement website thirty days prior to the objection deadline, in keeping with the approach recommended in *In re Mercury Interactive Corp. Sec. Litig.*,618 F.3d 988 (9th Cir. 2010). The notice also informs class members of claims being released, and even informs them that for non-emergency calls or text messages made using an automatic telephone dialing system and/or an artificial prerecorded voice, without the prior express consent of the called party, the TCPA provides for damages of $500 per call, or $1,500 for willful violations.

But the rosy picture painted by Class Counsel ignores the real problems with the settlement. Much of the $32,083,905.00 settlement fund will pay attorneys' fees, administrative charges, and unnamed cy pres recipients, rather than Class Members. The attorneys' fees – which are based on the gross settlement value rather than the monetary compensation that will class members – are high as a percentage of the fund, and excessively so in light of the lodestar multiplier requested. The fees requested seem inappropriate given the minimal compensation being offered to individual class members. Through this settlement, statutory damages of between $500 and $1500 per call are being compromised for pennies on the dollar. Given the poor result, the high fees and high lodestar multiplier are unwarranted.

2

### A. The compensation offered to class member is too low

As described in the Detailed Notice, under 47 U.S.C. §227(b)(3), plaintiffs are entitled to treble damages, or up to $1,500 for knowing or willful violations, and up to $500 for negligent violations. With an individual subject to many non-consensual calls, text messages or fax transmissions, potential damages are significant. As the records are all electronic, violations of the TCPA are easy to prove.

Despite the ease of proof and large penalties provided for by the TCPA, the settlement proposes to award individual class members a mere $20 to $40 (or $20 each for <u>all</u> mortgage related call or <u>all</u> credit card calls). This is too low. Other class action cases alleging violations of the TCPA have entitled class members to recoveries more in keeping with the damages provided for under the TCPA. In *Samantha Ellison v. Steve Madden Ltd.*, case number 2:11-cv-05935, in the U.S. District Court for the Central District of California, according to the judge's minute order, every class member submitting a valid claim would be eligible to receive $150, unless the total claims exceeded $10 million, in which case each class member would receive a smaller amount. Likewise in *Kramer v. Autobytel Inc.*, et al, Case Number 4:10-cv-02722, Northern District of California, Judge Claudia Wilken gave preliminary approval to a settlement under which class members would receive payments of up to $100 each. The settlement of $20 to $40 per class member provided for here seems woefully inadequate in light of these awards.

The settlement also seems too low in light of the harassing nature of the calls complained of in the complaints. The calls that form the subject of this lawsuit are not just non-consensual marketing calls, but were instead particularly harassing calls aimed at debt collection. As noted in the *Ramirez* Complaint, when "Mr. and Mrs. Ramirez fell behind on their mortgage, BANA began a campaign of harassment by telephone to collect on the missed payments. BANA would call their home and Mrs.

3

Ramirez' personal cell phone in sequence at multiple times per day." Ramirez Complaint, ¶ 7, page. 3. This suggests that many of the Class Members did not receive one or two calls, but instead suffered repeated harassing calls. Each individual claimant could be entitled to substantial compensation under the TCPA – which establishes penalties for each call.

The Defendants' size, and the degree to which the settlement would penalize the bank, should also be considered in evaluating the fairness of the settlement. The Ramirez Complaint noted that according to the most recent financial report, Bank of America was the largest mortgage loan servicer in the United States, servicing 13.4 million loans. On its website, the parent company notes:

> Bank of America is one of the world's largest financial institutions, serving individual consumers, small- and middle-market businesses and large corporations with a full range of banking, investing, asset management and other financial and risk management products and services. We serve approximately 52 million consumer and small business relationships with approximately 5,400 retail banking offices and approximately 16,300 ATMs and award-winning online banking with 30 million active users. Bank of America is among the world's leading wealth management companies and is a global leader in corporate and investment banking and trading across a broad range of asset classes, serving corporations, governments, institutions and individuals around the world.

Bank of America Corporate Profile, *available at* http://investor.bankofamerica.com/phoenix.zhtml?c=71595&p=irol-homeprofile#fbid=Hbv9GeJ9xUC.

For such a large company, a $32 million settlement is pocket change. But not that pocket change for the bank should translate into pennies on the dollar for class members subjected to the harassing calls giving rise to this litigation.

### B. The injunctive relief does not benefit the class

Class Counsel are proud of the changes Bank of America has agreed to implement to its policies regarding unsolicited calls to clients. As noted in the attorneys' fee motion:

> [T]he primary focus of the Settlement is Bank of America's prospective practice changes. Specifically, Bank of America has developed and implemented significant enhancements to its servicing systems which are designed to prevent

4

CASE NO. 5:11-cv-02390-EJD
OBJECTIONS TO PROPOSED SETTLEMENT
AND NOTICE OF INTENT TO APPEAR

the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrower's prior express consent to call his/her cell phone.

Plaintiffs' Motion for Attorneys' Fees ("Fee Motion"), page 3.

Although these practice changes are salutary, they don't benefit the class. These are prospective changes that will benefit Bank of America's current customers and clients, but will not benefit former mortgage holders who have possibly already lost their homes in foreclosure, or credit card customers who fell behind on their payments, received harassing phone calls, and may have had their accounts closed. Injunctive relief that benefits other people – including current customers – should not be considered a benefit the class because "[t]he fairness of the settlement must be evaluated primarily on how it compensates class members—not on whether it provides relief to other people." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 720 (6th Cir. 2013) (*quoting Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006). The court should remember that the period covered by this litigation includes the great economic crisis of 2008, which affected millions of consumers, many of whom lost their homes. Changing Bank of America's practices is a salutary goal, but these practice changes should not be approved in lieu of real compensation to the injured individuals in the class.

### C. The Attorneys' Fees Requested are Too High

Class Counsel's contingent fee request of 25% of the settlement is excessive. Although fee awards of 25% may be accepted in the Ninth Circuit, such fees are not appropriate in all circumstances. Attorney fee percentage awards in large class actions show an inverse relationship to the size of the award. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010). For settlements over $30 million, the mean percentage award nationwide is only 22.3%, less than the fee percentage sought by Class Counsel. *Id.*

Class Counsel are requesting attorneys' fees and costs of $8,020,976. After subtracting class counsel's expenses of $64,365.14, the attorneys' fees requested are $7,956,610.86. This number should

5

be evaluated in both the benefit achieved for the class and in light of the hours spent on the litigation. Class counsel claim to have devoted 2560.70 hours to litigation. Dividing the total fees by the number of hours, yields average hourly compensation of $3,107.20. This is far too high.

Analysis of the lodestar multiplier requested by Class Counsel underscores that the attorneys' fees requested are too high. Review of the lodestar provides an important check on excessive fees. A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002). Here, Class Counsel are requesting a lodestar multiplier of 5.7. This is an extremely high lodestar, particularly in a case where the compensation recovered for the class is so small relative to the damages alleged. The authorities Class Counsel cite in their fee motion highlight the unreasonable nature of the fee request. Class Counsel cite to *Vizcaino* to support the high multiplier, requested although the multiplier counsel seek here is much higher than that approved in *Vizcaino*. The multiplier approved in Vizcaino was only 3.65 – much less than the 5.7 sought here. *Id.*, at 1052-1054 (finding most multipliers ranged from 1.0 to 4.0).

As Class Counsel point out in their fee motion, courts consider several factors in determining appropriate attorneys' fees. Factors a court may consider include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. Fee Motion, page 11, *citing Vizcaino*, 290 F.3d at 1048-1050 *and In re Omnivision*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). Objectors do not agree, however, these favors support the large fees sought. The results the attorneys achieved for the class are low in light of the significant statutory damages provided for under the TCPA. Given this result, a high lodestar multiplier is not warranted.

6

### D. The payment procedures elevate Class Counsel's interests over those of the class

Under Section 7.04 of the Settlement Agreement, Class Counsel will be paid ten days after the entry of the Final Approval Order and the order approving fees. Class Members, however, will only receive their payment thirty days after the "Effective Date", which is defined as either thirty days after entry of the Final Judgment approving the Settlement if no appeal or request for rehearing is filed, or, if an appeal is filed, then five days after the appellate proceedings have been terminated. This provision enables the lawyers to be paid before the case has been concluded, and before Class Members are paid. This so-called quick pay provision is an affront to Class Members and shows Class Counsel is putting their own interests in front of those of their clients. This provision disincentives Class Counsel from conscientiously attending to the claims administration and funds distribution process – and divorces Class Counsel's interest from those of the class. The court should not allow this. The attorneys should receive their fees when Class Members get paid.

## II. Joinder in Other Objections

These objectors join in and adopt all other objections or portions thereof not inconsistent with the above.

///

## III. Conclusions

For the foregoing reasons and all others at oral argument, these objectors request that the court sustain their objections enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

LAW OFFICES OF DARRELL PALMER PC

Dated: March 21, 2014      By: _____
Joseph Darrell Palmer [1]
Attorney for **JAMES KIRBY AND SUSAN HOUSE**

## CERTIFICATE OF SERVICE

I certify that on March 21, 2014, I mailed the foregoing document by First-Class Mail, postage prepaid, to the following:

*Rose v. Bank of Am. Corp.*,
Case No. 11-cv-02390-EJD (N.D. Cal.)
Clerk of the Court
U.S. District Court NDCA
280 South 1st Street
San Jose, CA 95113

Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

By: _____
Joseph Darrell Palmer

---

[1] The court should allocate time for the usual personal onslaught against objector lawyers. However the court should note this objection is well written and specifically aimed at real issues in the proposed settlement. Class counsel should limit their response to the arguments presented. Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, House and Kirby are willing to stipulate to an injunction prohibiting themselves and their attorneys from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to a perceived objector blackmail problem). (This is also the proposal used by Center for Class Action Fairness.)

8