UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf herself and all others similarly situated, | Case No. 11-cv-02390-EJD (N.D. Cal.) |
| Plaintiff, | **SUPPLEMENTAL AFFIDAVIT OF CAMERON R. AZARI, ESQ., REGARDING CLAIMS ADMINISTRATION** |
| v. | |
| BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A., | |
| Defendants. | |
| CAROL DUKE AND JACK POSTER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A., | |
| Defendants. | |

I, CAMERON R. AZARI, ESQ., hereby declare and state as follows:

1.    My name is Cameron R. Azari, Esq.  I am over the age of twenty-one and I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.    I am the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  Hilsoft is a business unit of Epiq Systems Class Action and Claims Solutions ("Epiq"), who serves as the settlement administrator.

1

3.   In the *"Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Notices and Notice Plan,"* dated February 19, 2014, I detailed the successful completion of the Notice Plan and provided statistics evidencing the settlement administration activity as of that date.   This supplemental declaration provides an update of administrative activity as of March 27, 2014.

### *Individual Notice*

4.   Beginning on December 17, 2013 and continuing through December 20, 2013, ECA disseminated 670,676 Summary Email Notices to all potential Settlement Class Members for whom a facially valid email address was available.   Beginning on December 17, 2013 and continuing through December 27, 2013, Epiq disseminated 6,234,355 individual Summary Postcard Notices by USPS first class mail.   On January 10, 2014, an additional 31,170 Summary Postcard Notices were mailed to Class Members for whom multiple records were associated with a single email address.

5.   The return address on the mailed Summary Postcard Notice is a post office box maintained by ECA.   For mailed Notices that were returned as undeliverable, ECA undertook additional public record research.   Combined with Class Member records for which the Summary Email Notice was ultimately undeliverable, ECA has mailed an additional 987,444 Summary Postcard Notices as of March 27, 2014.   The address updating and re-mailing process is ongoing and will continue through the Fairness Hearing.

### *Case Website*

6.   The neutral, informational case website continues to see activity.   As of March 27, 2014, there have been 269,145 unique visitors to the case website and over 5,060,471 website pages presented.

### *Toll-free Telephone Number*

7.   Under the Settlement Agreement, the automated system will be available 24 hours per day, 7 days per week until April 20, 2014.   As of March 27, 2014, the toll free number has handled 143,096 calls representing approximately 525,983.97 minutes of use.   The Post Office

2

1   box and dedicated email address also continue to allow Class Members to contact the claims

2   administrator by mail or email with any specific requests or questions.

3       8.   The website, toll-free number, PO Box and email inbox will continue to remain

4   active through the distribution phase of the settlement in order to provide the Class Members with

5   easy access to information.  Relevant Orders of the Court will be posted on the website as

6   appropriate, as well as any other information important to the Class.

7                                    ***Exclusion Requests & Objections***

8       9.   As of March 27, 2014, Epiq has received 435 timely requests for exclusion from 390

9   unique members of the Settlement Class. Epiq has received 4 requests for exclusion after the

10  March 21, 2014 deadline.  Epiq has also received 16 objections from the Settlement Class,

11  including one untimely objection postmarked March 22, 2014. Those objections are attached

12  hereto as Exhibit A.

13      10.  None of the objections related to the adequacy of the Notice Plan or notices.

14                                           ***Claims Filed***

15      11.  The deadline for Class Members to file a claim was a postmarked deadline of March

16  21, 2014.  A total of 227,701 timely, non-duplicated Claims have been filed.  This count includes

17  128,952 Class Members who received both mortgage calls, and credit card calls and/or texts;

18  66,502 Class Members who received only card calls and/or texts; 31,844 Class Members who

19  received only mortgage calls; and 403 Class Members who did not claim mortgage calls, credit

20  card calls or texts.

21  I declare under penalty of perjury that the foregoing is true and correct.   Executed on

22  April 1, 2014.

23

24

25                                   Cameron R. Azari, Esq.

26

27                                                                   © 2014 Hilsoft Notifications

28  SUPPLEMENTAL AFFIDAVIT OF CAMERON R. AZARI, ESQ., REGARDING CLAIMS ADMINISTRATION

# EXHIBIT A

ARTIS MARK, JR.
110 TUSCAN AVENUE
HATTIESBURG, MS 39401
601 270 7437
amark_____ahoo.com

February 19, 2014

ROSE V. BANK OF AM. CORP.,
CASE NO. 11-cv-02390-EJD (N.D.CAL.)
CLERK OF THE COURT
U. S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
280 SOUTH 1ST STREET
SAN JOSE, CA 95113

AND TO

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
EMBARCADERO CENTER WEST
275 BATTERY STREET, 29TH FLOOR
SAN FRANCISCO, CA 94111

RE: OBJECTION TO MY PART OF THE PROPOSE PAY OUT:

Dear: Sir/ Madam:

I adamantly object to the propose pay out that would come to me (Artis Mark, Jr.) as a member
of the settlement class; in the settlement in Rose V. Bank of AM. Corp., No. 11-cv-02390-EJD
(N.D. CAL.)

I don't object to the settlement in, and of it self just the propose pay out that would come to
me under the current pay out agreement reach in the settlement. I don't seek to change any
other pay outs for any other members other than for my self.

It isn't a fair pay out for me one of the person harmed by the defendant actions.

My name, address, phone number, and email address are above at the top of this page. I don't
intend to appear at the fair hearing on my own behave or through Council. My objection comes
now through this letter this the 19th day of February, 2014.

With Best Regards, I Am

Artis Mark, Jr.

BATES MARK, JR.
110 TUSCANY AVENUE
HATTIESBURG MS 39401

REC'D
FEB 24 2014
LIEFF CABRASER, HEIMANN
& BERNSTEIN

GULFPORT MS 395
20 FEB 2014 PM 2 T

LIEFF CABRASER HEIMANN & BERNSTEIN
LLP
EMBARCADERO CENTER WEST
275 BATTERY STREET 29TH FLOOR
SAN FRANCISCO, CA 94111

March 5, 2014

*Rose v. Bank of Am. Corp.,*
Case No. 11-cv-02390-EJD (N.D. Cal.)
Clerk of the Court
U.S. District Court for the
Northern District of California
280 South 1st Street
San Jose, CA 95113

Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

Edward D Rickett and Delores Rickett
1021 Ave E
Billings, MT 59102
ID# 8168007612970
Confirmation # 829013855

Objection to the proposed Settlement in *Rose v. Bank of Am. Corp.,* Case No.
11-cv-02390-EJD (N.D. Cal.).

We are objecting to the estimated payout of this claim, which would equal
around, at the most, $100.

We were homeowners for over 30 years, we had to leave our home in MN,
1982 Glennwood Dr, Cambridge, MN 55008 and relocate back to Delores'
home state of MT.

Within weeks of relocating, we were forced to seek legal protection and
consequently our attorney, Juliane E. Lore, Attorney
Phone: (406) 206-0144
Fax: (406) 281-8463
www.lorelaw.us
**Mailing address:**
PO Box 913
Billings, MT 59103

Filed bankruptcy for the two of us. This was granted on Sep 24, 2013.

**Case Name:**      EDWARD D RICKETT and DELORES J. RICKETT
**Case Number:**    13-60826-RBK
**Document Number:** 20

**Docket Text:**
Order Discharging Debtors in a Chapter 7 Case Signed on 9/24/2013 (related

documents(s) [10] Meeting of Creditors Chapter 7 No Asset). (Cunningham, Pamela)

We can not afford to attend the fairness hearing at 9:00 AM on April 4, 2014, at the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California in Courtroom 4. nor afford to send our attorney, Juliane E. Lore.

Up until November 2011, even though Edward was unemployed after being caught up in a company wide layoff for 18 months and I was never been able to find employment after our move to MN. (details below) and am now 58 with a huge hole in my resume, we were always current on what originally was a Countrywide mortgage.

We came to MN to work and then retire in the house, 1982 Glennwood Dr, Cambridge, MN. 55008, and as good faith put 20% down originally and within a year put another $30,000 down to reduce the monthly payment. Our intention was to pay off the mortgage as fast as we could when we first made an offer on this house in Oct of 2005.

We did not see any reason that we would not be able to do that. Delores was in the 7th year of an office manager job (always over 5 year's job history with responsible jobs and promotions); Edward was a small business owner for over 20 years. Then Gov. Pawlenty of MN was touted as one of the top business friendly governors of any state (Business Weekly) with plenty of jobs in MN. According to the research I (Delores) did before we moved. What I now know after we have lost our house and the life we had, the big banks, by using the housing market like the stock market, eventually devastated the construction/housing market of which my husband has worked in his whole life therefore impeding his ability to make a living wage during 2006 until the beginning of 2013 when we left MN. and created a class of jobs in his industry with low pay and no benefits. So we spent most of the time in MN. with no health insurance, both past 50 years old.

In the seven years in MN anchored to real estate that we had poured a lifetime of work which built the savings that went into that house, our whole life was turned upside down. I can't sleep at night, the pain in my lower back is affecting my ability to sit at the computer and get anything done (like put this story together), my memory has been affected and I still get a knot in my stomach from worrying how we were going to live. I feel I am not good dealing with many people (possibly because it is getting harder for me to deal with ANY stressful situations), and I have another medical concern which I believe is going to make it hard for me to even commute to/from a job if by some miracle I would get a job, as of now, I haven't even been able to get a second interview for a telemarketing job from my home.

We used all our savings and any retirement funds to try and keep current on

everything, we moved to MN in 2006 with the only debt being the house mortgage and the Allied moving bill that my husband put on a c/c (over $8,000). The move was done quickly when we were called in MT. two days before the closing(Dec. 2005) and told that the lender demanded that we have all our house hold items moved in and be living in the house within 30 days after closing. And, that the lender would be sending out an inspector to make sure that is what happened, if not the loan would be void.

At the point of that call, I was still working at my job in MT and had not even given any kind of notice of leaving, we did not intend to run up a huge moving bill as we then ended up doing due to the demands of CountryWide. I felt under so much pressure, after receiving that call, flying out in 20 below zero weather a day or two later, I didn't even take any time to read anything we were signing, madness! Consequently, I also had to resign from my job earlier than I anticipated, thereby losing our health insurance, which I had always carried for the family, and we ended up spending about $18,000.00 over the next 2 1/2 years to keep myself and my husband covered. After we could not afford to pay the over $500.00 a month for ourselves, for the first time in our marriage of over 25 years, we became medically uninsured.

After my husband was laid off in 2008, the interest rate and payments went way up on any c/c balances we had. I was panicking because I knew we needed so much cash money every month to pay the mortgage, the price of the house kept dropping and locking us tighter into the location. I could not immediately secure employment in 2006 after going through our son having a diagnosis of a major illness and so that delayed me even starting a job search, by the time I did start a major job search, I realized I had been losing my vision at night and even though I threw myself at every job I thought I would be able to travel to/from, I never was able find any work while living in MN. It is beyond depressing to me, I have a long employment history with stellar references and it has been devastating to me not to be able to help my family. So I kept using our credit cards to keep trying to fill the hole every month, it seemed unthinkable at the time that the housing market would keep dropping and never return. Also when gas hit $4.00 a gallon it added even more pressure to make ends meet as my husband was working in sales and all his jobs required him to pay the vehicle expenses to go to appointments all over the state of MN and even into WI.

We had never had any kind of help before, but in 2012, I did break down and go to the local food shelf, and I was also able to get help for the past due utilities through Lake and Pines Council in Mora, MN, who were very wonderful to work with also a lady at the electric company who gave me advise on getting emergency help with our electric bill even after receiving some help with our gas bill. Without these ladies, both our power and gas would have been disconnected.

We had no idea who Countrywide was when we first started looking at houses here in MN.  Our realtor assured us that **homes on the water in MN were "bullet proof" in holding its value** and we were assured that although real estate in the state was higher than what we were used to, it was due to higher paying jobs and more of them. Either the mortgage broker or the real estate agent laughed and said the worst that could happen is that we would stay a year or two, decide to sell the house and make some money!  Obviously nothing could be further from what happened.  The Countrywide loan was presented to us as the best possible terms we could get and the lowest payment, before this I had never heard of an interest only loan.  **What I did not understand at the time and what is really scary is that these interest only loans are more like lease options than purchases, since they pay off no principal. With a lease option, at least, the investor can walk away from the deal losing nothing more than his option money. With an interest only loan, the buyer looses his credit, his payments, and in most states, more money if he is hit with a deficiency judgment. The buyer is also responsible to pay for the upkeep on the option, which can really add up.  I remember being in the car when the broker checked our credit for the realtor, she got really excited and said we were what were known in the business as "GOLD".**

In total we gave Country Wide/BOA, approximately $100,000.00 down payment (I would guess this is why this loan has not been dumped on the taxpayers, Freddie Mac,) on a house that was appraised at the time of purchase at **$325,000.00**.  We were congratulated by the appraiser and home inspector (both friends of the realtor and mortgage broker) on what a good deal we had made since we had offered $312,000.00.  On the 1099 C that BOA sent for the year 2013, the fair market value of the house was listed as **$167,500.00**.  Every time gas goes up, real estate in Isanti County, MN. goes down and the county keeps raising property taxes even though the value of the house dropped practically from the time of purchase in Dec 2005.

What I realize now, when it is too late, is **people were not buying homes with these interest only loans, they're buying home futures. It's not hard to get burned in the futures market. And that is what happened to this very ordinary, law abiding, middle class family.**

BOA did not provide any kind of help to us, only what will help them, as they

have proven time and again. Hundreds of robo calls demanding money, interest raised on a credit card my husband had for years to 29%+ when gas was over $4.00 a gallon. Before we walked away from our house in MN. we spent over 2 HOURS on our cell phone trying to tell a 'live' BOA rep. that they needed to make sure the utilities stayed on in the house as the weather was sub zero. The BOA rep that finally talked said "Just turn the utilities off". Our impression was they didn't care if the plumbing froze in the house or any damage was caused. How can it be that as a Primary Dealer of the Federal Reserve, BOA can borrow money at 0% and re-lend to the citizens at whatever they feel like at the time? If nothing else they can buy Treasuries and make money for doing nothing.

That is why, rather than slinking away like I have done something wrong, I decided to tell our story. Not only has if affected my mental and physical health for the rest of my life but also that of my husband. At our age, statistics say we have both lived over ½ our life. How do we rebuild now what took us a lifetime to do?

My husband has easily aged 10 years in 3. I developed so many persistent depressive symptoms; I am surprised I can string two words together. My fibromyalgia has caused and continues too many physical problems for me.

Does the law matter? Or only if your pockets are deep enough to buy the laws you need or defend for umpteen years to make it financially unable for your advisory to continue.

Edward D Rickett      Delores Rickett    1021 Ave E   Billings, MT  59102



Mrs Delores J. Rickett
1021 Avenue E
Billings, MT 59102

CERTIFIED MAIL

7013 2630 0000 4769 2895

UNITED STATES
POSTAL SERVICE

1000          94111

U.S. POSTAGE
PAID
BILLINGS, MT
59102
MAR 05. '14
AMOUNT
$4.00
G0028146-05

RECEIVED
MAR 10 2014
LIEFF CABRASER HEIMANN
& BERNSTEIN

Lieff Cabraser Heimann + Bernstein LLP
Embarcadero Center West
275 Battery St., 29th Floor
San Francisco, CA 94111

Attn: Rose & BOA Objection

RECEIVED

MAR 1 ? 201?

LIEFF, CABRASER, HEIMANN
& BERNSTEIN

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

STEPHENIE ROSE, on behalf herself and
all others similarly situated,

        Plaintiff,

v.

BANK OF AMERICA CORPORATION,
and FIA CARD SERVICES, N.A.,

        Defendants.

CAROL DUKE AND JACK POSTER,
on behalf of themselves and all others
similarly situated,

        Plaintiff,

v.

BANK OF AMERICA. N.A.; BANK OF
AMERICA CORPORATION;
AND FIA CARD SERVICES, N.A.,

        Defendants.

Case No. 5:11-cv-02390-EJD (PSG)

**OBJECTION TO PROPOSED
SETTLEMENT, FEE REQUEST,
AND INCENTIVE PAYMENTS**

I, Erich Neumann ("Neumann"), an eligible Class Member, do hereby state as follows:

1.    My name is Erich Neumann, and I reside at 5 Island Avenue, Unit 3J, Miami Beach, FL 33139. My telephone number is (305) 735-2404.

2.    I am a Class Member. I received dozens of annoying and harassing automated calls regarding my mortgage loan during the class period. In my estimation, I received multiple calls per week for many months. These calls were especially frustrating because I was attempting to restructure my loan with Bank of America the entire time.

3.    I object to the Settlement, Fee Request, and Incentive Payments in the above captioned matter, and I rely upon legal authority and evidenced cited herein.

4.    My objections to the Proposed Settlement are as follows:

    a.    The settlement provides for only one (1) claim for class members who received harassing automated calls regarding mortgage payments. Additionally, it provides for

one (1) additional claim for class members who received harassing automated calls regarding credit card account payments. However, the settlement makes no distinction between class members, such as me, who received **multiple** harassing calls as compared to those who may have received only one or two harassing calls. Class members who received ongoing and multiple harassing calls on a weekly basis should be granted to right to make a claim for each of the calls received and should be entitled to a larger share of the total fund.

      b.    The total estimated payment for each claimant is inadequate. The notice form estimates that each claimant will receive between $20 to $40. However, to class members such as me, who received continuous harassing calls, this is completely inadequate compensation. Additionally, it will not stop the Defendants from engaging in the same behavior in the future if it prompts some of its debtors to pay their bills faster.

      c.    The attorneys' fee request is excessive compared to the actual billable time spent on the case. The plaintiff's counsel claims that 2,560.70 hours were spent during this litigation by its attorneys and staff. This number of attorneys' fees is simply impossible in a case that did not have substantial motion practice and did not go to trial. In fact, despite the long time period the case was open, there was very little litigation involved. After the motion to dismiss was fully briefed, no other substantive motions were filed until preliminary approval of settlement. Nor were there many discovery disputes that I can see from review of the docket. In summary, the Plaintiff filed its complaint, amended its complaint, filed one opposition brief to Defendant's motion to dismiss, entered into ADR, and then settled the case. This litigation was not hard fought by any stretch of the imagination and could not possibly have required the 2,560 hours as claimed by the Plaintiff's counsel.

      d.    The rate claimed by the Plaintiff's counsel simply absurd. Plaintiff's counsel claims that 2,560.70 hours (including both attorney and staff hours combined) were spent on the file for a total dollar figure of $1,396,523.75. This implies an average hourly rate of $545.37 amongst all counsel and staff who worked on the file. As noted, this case did not involve complex issues, did not involve substantial motion practice and did not go to trial. In

1   fact, although as much is not completely clear from the Plaintiff's filings, it appears that a large

2   portion of the 2,560 hours were spent by staff members reviewing documents and administering

3   claims forms.  Certainly time spent by staff members and document reviewers, whether they

4   were attorney or staff members, should not be compensated at such a high rate.  Additionally,

5   while I am sure that some of the attorneys involved in the litigation were highly experienced

6   professionals, I find it hard to believe that they would command a rate at or over $545 per hour

7   for document review.  In fact, in order for the overall rate (which presumably includes non-

8   attorney staff and low level attorneys at lower rates) to average out to $545 per hour, the

9   experienced attorneys would have to be charging rates well in excess of $700 to $900 per hour.

10          e.     The lodestar multiplier sought by the Plaintiff's counsel is clearly

11   excessive. As discussed earlier, this case was not complex. It did not involve any novel issues.

12   It did not involve any substantial motion practice. It did not involve any intensive discovery

13   motions. It did not go to trial. Additionally, the Plaintiff's counsel are already overbilling and

14   overcharging for each hour spent in their hourly rates. Yet, the Plaintiff's counsel are not

15   content. They further request a 5.7x multiplier on top of their excessive lodestar. Plaintiff

16   counsel's multiplier request equates to grand theft of the settlement funds that would otherwise

17   go to the class members. The multiplier inflates Plaintiff's counsels' already inflated hourly

18   rates from an average of $545 per hour to a completely ridiculous $3,106.50 per hour. This is

19   unacceptable.

20       WHEREFORE, for the reasons stated above, I respectfully object to this settlement.

21

22                     Sincerely,

23

24                     Erich Neumann, Esq.

25

26

27

28

3

1

## PROOF OF SERVICE

2      I hereby certify that on March ⟍⟍, 2014, a true copy of the above document was served

3   by U.S. Mail to the following:

4

5   Clerk of the Court
    U.S. District Court for the

6   Northern District of California
    280 South 1st Street

7   San Jose, CA 95113

8   Lieff Cabraser Heimann & Bernstein, LLP
    Embarcadero Center West

9   275 Battery Street, 29th Floor

10  San Francisco, CA 94111

11

12                                        Erich Neumann, Esq.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

March 13, 2014

Clerk of the U. S. District Court
for the Northern District of California
280 South 1st Street
San Jose, CA 95113

Re: Rose v. Bank of America Corp.,
    Case No. 11-cv-02390-EJD (N.D. Cal.)
    Objection to the Settlement

Dear Clerk of the Court:

This letter is an objection to the proposed Settlement. I am a Settlement Class Member
who has not opted out of the Settlement, and I am not being represented by counsel.
I do intend to appear at the Final Approval Hearing.

The basis of my objection are three fold: 1) There is no adequate showing that the
proposed Settlement bears any relationship to the alleged damages inflicted by
Defendants on Plaintiffs; 2) The actions of Class Counsel are indicia of a consciousness
of unfairness and collusion; and 3) The amount of the proposed attorney fees and costs of
up to $8,020,976 constitutes over reaching, represents unjust enrichment, and shocks
the conscience.

In its Stipulation and Settlement Statement published on the case website, Class
Counsel failed to recite what discovery, what proceedings, and what procedures led up to
the proposed Settlement. On February 25, 2014, I telephoned the office of Class Counsel
and asked to speak to someone about this proposed Settlement. I was transferred
to Jennifer who identified herself as a paralegal who would answer my questions. When I
asked her how many people were in the class, what discovery had taken place, and what
pretrial activity had been accomplished, she said she didn't know, and didn't know who
had that information. I then asked her if I could look through the file and satisfy myself
that the proposed Settlement was adequate, fair, and an arms length transaction, but I was
told that would never be permitted.

The next day I received a telephone call from Jennifer saying that an attorney with the
firm would like to talk with me about my request. A telephone conference was scheduled
for 10 AM on February 28th, and I waited from 9:55 AM to 11 AM on that date to receive
that telephone call, but it never came. Nor was there any attempt to reach me thereafter.

Since I am a member of the class, and therefore a client of Class Counsel, there is plenty
of legal authority to support my right to access and scrutinize Class Counsel's file. Beside

the Rules of Professional Conduct, there is *In the Matter of Kaleidoscope, Inc.* 15 B.R. 232 (Bkrutcy. D.Ga. 1981) where the court held that the attorney is an agent of the client and may not refuse to turn over any portion of client's file, and may not assert work-product privilege against client. And in *Resolution Trust Corp. v. H---, P.C.* 128 F.R.D. 647 (N.D. Tex. 1989), the court concluded that the **entire** contents of a client's file belong to the client, and that neither the attorney-client privilege nor work-product doctrines were applicable.

Therefore, I oppose the proposed settlement and demand greater information on how it represents an adequate result for Class Plaintiffs. I also oppose the amount of attorney fees and costs requested as being way above what might be considered reasonable.


Very truly yours,

Michael Narkin
85391 Chezem Road
Eugene, OR 97405
541-852-5507

cc: Lieff Cabraser Heimann & Bernstein, LLP

2

March 21, 2014

***Via FedEx Priority Overnight***
Clerk of Court
United States District Court for the
Northern District of California
280 South 1st Street
San Jose, California 95113

  Re: *Rose v. Bank of Am. Corp.*, Case No. 11-cv-02390-EJD (N.D. Cal.)

Dear Clerk:

  My name is Cassie Grimes Hampe. My home address is 6571 Furman Court, Tyler, Texas 75703 and my telephone number is (214) 356-2388.

  Please accept this letter as my objection to the proposed class action settlement, the award of excessive attorneys' fees to class counsel, and the Court's approval of the settlement in the above referenced class action lawsuit. The proponents of this settlement have not met their burden to show that the settlement is fair, reasonable, and adequate.

  I received notice of this class action lawsuit by mail at my home address referenced below. I have attached a copy of said notice as Exhibit "A". I have also attached a copy of the claims I have filed in this case as Exhibit "B".

  By my signature below, I state under penalty of perjury that I recall getting an automatic telephone call from Bank of America regarding a Bank of America Credit Card Account between May 16, 2007 and January 31, 2013 ("Credit Card Calls").

  I object to the proposed settlement on the following grounds:

  The attorneys fee requested by class counsel are excessive. Class counsel seeks 25% of the $32 million fund. Based on the records submitted by class

counsel in support of their fee request, they are seeking a multiplier of approximately 5.7 times their lodestar. That is excessive. Although the Ninth Circuit has not addressed this issue directly in the context of a class action, the teachings of the United States Supreme Court in *Perdue v. Kenny*, 130 S. Ct. 1662 (2010) (addressing a fee multiplier for counsel in a civil rights case) suggest that a 5.7X multiplier to class counsel would be a windfall to Class Counsel, and not justified by the actual risks Class Counsel faced by undertaking this litigation.

The record is devoid of any evidence that Class Counsel faced any enhanced or extra risk in pursuing the TCPA claims that this case seeks to settle. Moreover, the modest payment to class members (which is described as potentially between $20 and $40 per claimant) is quite low and represents a settlement for pennies on the dollar value of the claims. The defendant is solvent, has deep pockets, and faced hundreds of millions of dollars in potential liability in this case. $32 million is hardly an extraordinary against that backdrop and certainly does not justify such an extraordinary multiplier. Class Counsel in effect seeks $3,000 per hour for every partner, associate, and legal assistant that worked on this case. Such a lucrative outcome for Class Counsel after such a modest settlement cannot be justified and does not square with *Perdue*. This Court, and the Ninth Circuit, should apply the rule of *Perdue* to fee requests in class actions such as this one.

Class Counsel also seeks to camouflage their excessive fee request by pegging the percentage to the 25% benchmark in this Circuit. While that percentage is in fact the benchmark (when the elements justifying that fee can be established, which they cannot here for the reasons stated above), Class Counsel seeks to count the cost of notice and administration of the settlement as a "recovery" to the class. It is not. Class Counsel should not be awarded a 25% "commission" on the costs of administration and notice.

Objection is made to any procedures or requirements to object that require information or documents other than those that are contained herein to the extent that such requirements are unnecessary, unduly burdensome, are calculated to drive down the number and quality of objections to the settlement and violate objectors' due process rights and Rule 23(e)(5).

I also join in and incorporate herein by reference any and all objections filed by other objectors as though set forth in full, to the extent not inconsistent with the specific objections made herein.

I will not attend the fairness hearing.

I also wish to disclose to the Court that I have sought and obtained assistant from an attorney in preparing and filing this objection. *See* ABA Opinion 07-446. That attorney is Christopher A. Bandas. I do not seek any advantage from the Court of any kind by virtue of submitting this objection myself.

I am mailing my objections, as indicated above and below, to the court and to the attorneys identified in the notice as required recipients.

Sincerely,

Cassie Grimes Hampe

cc:   Lieff Cabraser Heimann & Bernstein, LLP
      Embarcardero Center West
      275 Battery Street, 29th Floor
      San Francisco, CA 94111

The Settlement Class includes all individuals who:

(1) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between August 30, 2007 and January 31, 2013 (Mortgage Calls);

or

(2) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between May 16, 2007, and January 31, 2013 (Credit Card Calls);

or

(3) received one or more non-emergency, default servicing text messages from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between February 22, 2009, and December 31, 2010 (Credit Card Texts). Those persons who also received a Credit Card Call may make only one claim for either a Credit Card Call or Credit Card Text.

PRESORTED
FIRST-CLASS MAIL
AUTO
U.S POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2682

Bank of America TCPA Settlement Claims Administrator
PO Box 3410
Portland, OR 97208-3410

**Important notice about a Class Action Settlement.**

8168063776902
CASSIE A GRIMES
6571 FURMAN COURT
TYLER, TX 75703-4281

59753
97
138

EXHIBIT
"A"

Legal Notice                                                                    Legal Notice

**If you received a non-emergency mortgage or credit card default servicing call or
text on your cellular telephone from Bank of America through the use of
an automatic telephone dialing system and/or a prerecorded voice,
you could receive a payment from a class action settlement.**

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

A $32,083,905 Settlement has been reached in a class action lawsuit claiming that Bank of America unlawfully used an automatic telephone dialing system and/or an artificial prerecorded voice to call or text cell phones without the prior express consent of the recipients. Bank of America denies that it did anything wrong and the Court has not decided who is right.

**Who's included?** Bank of America's records show you are a member of the Settlement Class. The exact definition of who is included in the Class is on the reverse side of this notice.

**What are the Settlement terms?** A Settlement Fund of $32,083,905 has been established to pay valid claims, attorney fees, service awards, costs, expenses and settlement administration. Additionally, Bank of America has enhanced its business practices to ensure that a borrower has provided consent before being called on a cell phone and that the Bank's loan servicing record reflects the borrower's prior express consent to call his/her cell phone.

**How can I get a payment?** To get a payment you must submit a claim using this 13 digit, unique Identifier: 8168063776902. You can submit your claim online, by mail or by calling the toll-free number. It is estimated that payments will be between $20 and $40 per claim and each Class Member may be eligible to file up to two Claims. The final cash payment amount will depend on the total number of valid and timely claims filed by all Class Members. The claim deadline is March 21, 2014.

**Your other options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by March 21, 2014. If you do not exclude yourself, you will release your claims against Bank of America. You may object to the Settlement by March 21, 2014. The Detailed Notice available on the website explains how to exclude yourself or object. The Court will hold a Hearing on April 4, 2014 to consider whether to approve the Settlement and a request for attorneys' fees of up to $8,020,976 and service payments of $2,000 each to the seven Class Representatives. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call or visit the website.

**www.BOATCPASettlement.com • 1-877-919-9186**

# Bank of America TCPA Settlement

Case No. 11-cv-02390-EJD (N.D. Cal.)

| Home | FAQs | Important Documents | Submit a Claim | Contact Us | Español |

**Submit a Claim - Success**

**Important Dates**

**March 21, 2014**
Deadline to request exclusion ("opt-out") from the Settlement

**March 21, 2014**
Deadline to object to the Settlement

**April 4, 2014**
Final Approval Hearing

**March 21, 2014**
Deadline to submit a Claim Form

Thank you for your submission. Your Confirmation Number is: 7GEWBHT1.

*NOTICE: This website provides a summary of the Settlement and is provided for informational purposes only. In the event of any discrepancy between the text of this website and the original text upon which it is based, the text of the original document shall prevail.*

**Questions? Contact the Claims Administrator at 1-877-919-9186**

SECURE
network

© 2013 Epiq Systems, Inc., All rights reserved |Privacy Policy | | Version: 1.0.2.54 | Updated: 2/20/2014 3:05:49 PM


EXHIBIT
"B"

Cassie Grimes Hampe
6571 Furman Court
Tyler, Texas  75703

RECEIVED

MAR 2 4 2014

LIEFF, CABRASER, HEIMANN
& BERNSTEIN

Lieff Cabraser Heimann & Bernstein, LLP
Embarcardero Center West
275 Battery Street, 29th Floor
San Francisco, CA  94111

94111$3339  COi6



**KRIS KASZUBA**

2683 Via de la Valle, Suite G-246
Del Mar, CA 92014

By Certified Mail to:

Rose v. Bank of Am. Corp.,                                      March 19, 2014
Case No. 11-cv-02390-EJD (N.D. Cal.)
Clerk of the Court
U.S. District Court for the
Northern District of California
280 South 1st Street
San Jose, CA 95113

And by First Class U.S. Mail to:

Lieff Cabraser Heimann & Berstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

Dear Sir/Madam

Re: My objections to the proposed Class Action Settlement Case No. 11-CV-02390-EJD

I have been informed that I am a Member of the Settlement Class for the above lawsuit.
Exhibit "A" which I received by mail, attached hereto.
I object to the proposed Settlement in Rose v. Bank of Am. Corp., Case No.
11-cv-02390-EJD (N.D. Cal.). I believe that I should have 2 claims in this Class Action,
one for a personal credit card and one for a business credit card.
I wish to continue as a Member of the Settlement Class.

I object to the amounts of the proposed payments in the Settlement on the grounds that
that they are not fair, not reasonable and not equitable especially to the Class
Representatives and the Settlement Class Members. We all appear to have been
harmed by Plaintiff's actions.

My four objections are as follows:

1) I object to the amount of the proposed "Settlement Fund" of $32,083,905.00.
It is miniscule and should be substantially higher.
When compared to the $25 Billion Settlement in February, 2012 between Bank of
America and the Federal Government and 49 State Attorneys, this proposed Settlement
Fund is only 0.00128% or about **1/10th of a percent** of the 2012 Settlement.
My recommendation for the proposed Settlement Fund would be a total payout of 1% of

the former $25 Billion Settlement which would be $250 Million. I believe this would be more fair, reasonable and equitable.

2) I object to the proposed amount of $2,000 to be paid to the Class Representatives. It is way too little and should be higher. $2,000 each is a pittance.
My recommendation is for $50,000 be paid to each of the Class Representatives. Considering the responsibilities and diligence in standing up and taking legal action against Bank of America. The Representatives were protecting their rights and now, the rights of the Class Members and they should be properly compensated.
I believe this would be fair, reasonable and equitable.

3) I object to the proposed amount of $20 to $40 to be paid to the Class Members. This is an absolute mockery of reasonableness, fairness, equity and justice.
$20 is less than a pittance. My time and expenses to object cost me more than $20. A $500 payment or more to each Class Members should be fair, reasonable and equitable. Consider the fact that most Attorney's charge $500 or more for an hour.

4) I object to the proposed payment amount for Attorneys' Fees of 25% of $32,083,905.00 (the "Settlement Fund") which equals $8,020,976.
My recommendation would be a 10% maximum on a Settlement Amount for Attorneys. Should $250,000,000 be the revised new Settlement Fund this would amount to $25 Million total for the approximately 15 law firms.
I believe this would be fair, reasonable and equitable.

Additionally, if this had been a regular corporation operating contrary to the TCPA, there likely would have been criminal charges filed against the Executives.

Section 7.02 Page 14 of the proposed Settlement Agreement acknowledges as follows: "Defendants represent for settlement purposes that the size of the Class is as follows: 4,171,217 persons received Mortgage calls; 2,449,350 persons received Credit Card Calls; and 1,103,293 persons received Credit Card Texts".

It is important to note the sheer magnitude and number of about 7.6 Million persons in this proposed Settlement who may have been harmed by "BANA violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA")."

I am not able to attend the Hearing since I live 500 miles away and I am not represented by Counsel.

I request that the Honorable Judge please consider my objections and recommendations for the proposed Settlement Agreement.

Respectfully Submitted,

**KRIS KASZUBA**
Cell: 858 353-6279

K. KASZUBA
2683 Via de la Valle
#G-246
Del Mar, CA 92014

SAN DIEGO CA 920

20 MAR 2014 PM 3 L

USA
FOREVER



Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

94111333998

*March 1, 204*

RE:  *Rose v. Bank of Am. Corp.,*
     Case No. 11-cv-02390-EJD (N.D. Cal.)
     Letter sent to the judge.

TO:  Lieff Cabraser Heimann & Bernstein, LLP
     Embarcadero Center
     West 275 Battery Street, 29th Floor
     San Francisco, CA 94111

Dear Honorable judge,

I received the notice that a lawsuit was filed on my behalf and that the settlement is to be $32 MILLION! and that I am to receive $20 to $40.

If there is STILL the tiniest sense of what is right, what is fair and what is correct in your court, you WILL not allow this perfect injustice to take place. It is not about the money, but about what is the most basic action of American justice. Dear Lord, I am in disbelief that such mockery is made of our court system and that a lawyer would dare to actually bring this 'proposal' to ANY American judge for approval.

Who keeps the millions? And why should they?

My husband and I (he is a Senior Chief Navy retired) have 10 children. My son is a veteran who received a medical discharge from the Army for PTSD after serving honorably for 8 ½ years in the Infantry and receives $1,400 a month (his car payment is $410). I am his caregiver, and every month I struggle, putting applications with all kind of non-profit organizations to help him pay his bills. And other people get to keep MILLIONS of dollars because a bank called me? Seriously????

I would go to the hearing, just to say my peace, but I don't have the money to cover that expense. I can't write anymore. My stomach hurts too much.

Just do what is right. Stand up and be an example... If not America is truly bound for self-destruction. When the law falls, nothing else can stand.

Thank you for reading my humble letter.

Sincerely,

Carmen Cifuentes
14267 Calle de Vista
Valley Center, CA 92082
619 / 733-6224

NOT THAT ANYONE WILL PAY ANY attention to My letter.



Carmen Cifuentes
14267 Calle De Vista
Valley Center CA 92082-6510

SAN DIEGO CA 920
01 MAR 2014 PM 2 L

DIGITAL

USA forever

RECEIVED
MAR 0 3 2014
LIEFF, CABRASER, HEIMANN
& BERNSTEIN

Lieff Cabraser
Embarcadero Center
W. 275 Battery St. 29th floor
San Francisco, CA 94111

Rose vs. BOA.   94111331400

1   Joseph Darrell Palmer (SBN 125147)
    darrell.palmer@palmerlegalteam.com
2   Law Offices of Darrell Palmer PC
    2244 Faraday Avenue, Suite 121
3   Carlsbad, CA 92008
    Telephone: (858) 215-4064
4   Facsimile: (866) 583-8115

5   Attorneys for JAMES KIRBY AND SUSAN HOUSE

6

7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10

11  STEPHENIE ROSE, on behalf of herself and all    )   Case No. 5:11-cv-02390-EJD (PSG)
    others similarly situated,                      )
12                                                  )   **OBJECTIONS OF JAMES KIRBY AND**
                 Plaintiffs,                        )   **SUSAN HOUSE TO PROPOSED**
13                                                  )   **SETTLEMENT AND NOTICE OF INTENT**
    v.                                              )   **TO APPEAR**
14                                                  )
    BANK OF AMERICA CORPORATION,                    )
15  and FIA CARD SERVICES, N.A.,                    )
                                                    )   Date:  April 4, 2014
16               Defendants.                        )   Time:  9:00 a.m.
                                                    )   Judge: Hon. Edward J. Davila
17  _____        )
                                                    )
18                                                  )   Case No. 5:12-cv-04009-EJD (PSG)
                                                    )
19  CAROL DUKE AND JACK POSTER,                     )
    on behalf of themselves and all others          )
20  similarly situated,                             )
                                                    )
21               Plaintiffs,                        )
                                                    )
22  v.                                              )
                                                    )
23  BANK OF AMERICA, N.A.; BANK OF                  )
    AMERICA CORPORATION;                            )
24  AND FIA CARD SERVICES, N.A.,                    )
                                                    )
25               Defendants.                        )
                                                    )
26

27

28

                                    1

JAMES KIRBY AND SUSAN HOUSE represent to the court they are Class Members and have submitted claims. A copy of their claim forms with (address and phone nos.) submitted by mail are attached as Exhibit A.

## I. INTRODUCTION

There are certain laudatory aspects of this settlement. Class Counsel argue that the gross settlement value of $32,083,905.00 is the largest settlement achieved in a case brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the"TCPA"). Class Counsel have made their motion for attorneys' fees available on the settlement website thirty days prior to the objection deadline, in keeping with the approach recommended in *In re Mercury Interactive Corp. Sec. Litig.*,618 F.3d 988 (9th Cir. 2010). The notice also informs class members of claims being released, and even informs them that for non-emergency calls or text messages made using an automatic telephone dialing system and/or an artificial prerecorded voice, without the prior express consent of the called party, the TCPA provides for damages of $500 per call, or $1,500 for willful violations.

But the rosy picture painted by Class Counsel ignores the real problems with the settlement. Much of the $32,083,905.00 settlement fund will pay attorneys' fees, administrative charges, and unnamed cy pres recipients, rather than Class Members. The attorneys' fees – which are based on the gross settlement value rather than the monetary compensation that will class members – are high as a percentage of the fund, and excessively so in light of the lodestar multiplier requested. The fees requested seem inappropriate given the minimal compensation being offered to individual class members. Through this settlement, statutory damages of between $500 and $1500 per call are being compromised for pennies on the dollar. Given the poor result, the high fees and high lodestar multiplier are unwarranted.

2

Philip Davis Jr.
9128 Nathaline St.
Redford Twp .48239-1926

October 31,2013

Re: Bad decision on Complaint on Case #12-15284 file in US District Court Eastern district of
Michigan Southern Division

TO WHOM IT MAY CONCERN

Philip Davis Jr. and Jessie Ogletree Jr., we felt that our case wasn't properly decided by Judge Patrick
Duggan. We felt our case was strong enough to warrant a favorable decision or at least a trail by jury.
With all the exhibits, letters of complaints, affidavits from other victims and news paper articles that
clearly show the Banks wrong doing and negative activities in dealing with the African American
community. It seems highly unlikely that any Judge especially the older racist type that hide behind
a robe would rule in a black families favor. Its unimaginable that in 2013 we lose just about every case in
U.S. District Court. We are recommending a full investigation of all cases that involve African Americans
and Judge Patrick Duggan that sue any bank especially Countrywide Home Loans aka Bank of America.

Our complaint with the Judges ruling is that he mention "State a claim for which relief can be granted"
We stated a claim , the Bank was guilty of wrong doing and the Judge saw it differently for some reason.
Please see our attached pleading and news paper article showing that the Bank encourage the employees
not to grant modifications by giving the employees gift cards and a $500 bonus for steering homeowners
into foreclosure rather than a modification. This is exactly what occurred in Mr. Ogletrees' situation , we
are asking the Office of the Circuit Executive to look into this case. The Judge (Mr. Mike Duggan's father)
rule against us even when the evidence show just cause to rule with us. Please find enclosed our pleading
and news articles that show that Bank of America was guilty of wrong doing, misconduct and unethical
policies by the Government and should be liable not only to the Government but also to the people that
have suffer.

Sincerely,

Phillip Davis Jr. and Jessie Ogletree Jr.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUG.9, 2013

PHILIP DAVIS JR.
JESSIE OGLETREE JR.

      Plaintiffs,

v.                                 Case No. 12-15284

COUNTRYWIDE HOME LOANS a/k/a
BANK OF AMERICA,

      Defendant,

_____/

## PLEA FOR CONTINUTION:

Dear, Honorable Judge Patrick J. Duggan

This letter is to inform you that the Plaintiffs would like to go forward with this class action civil lawsuit. We believe that we have more then enough evidence and information to continue. We have enclosed more exhibits for consideration.

## INTRODUCTION AND RESPONSE:

Dear Honorable Judge this case was originally against Countrywide Home Lending but since Bank of America bought their assets as well as their debt that makes "Bank of America liable for Countrywide's bad practices.

In responds to Bank of America's attorney I Phillip Davis Jr. did make/state a claim in 2008 in the Third Circuit Court in Wayne County for the sum of nine hundred thousand dollars. (900,000.00). Please find a copy of filing enclosed.

Secondly the Plaintiff's complaint is not about fraud and we are aware of how it filed this case. An attorney or attorneys will be in place when we go to trail. Therefore we feel that the Complaint should stand and not be dismissed.

Mr. Davis and Mr. Ogletree are the victims in this matter. Again Mr. Ogletree has suffer greatly because of Bank of America's decimator policies which accomplished exactly what they set out to do, destroy and devastate Mr. Ogletree's life and family, well done Bank of America.

CONTINUE          Pg.2

The Counsel for Bank of America is misinformed in the matter of Mr.Ogletree applying for a modification it was done through a company called "America Hope Financial Management" Please see attached copy of contract. They are the one's that Prevented Countrywide AKA Bank of America from foreclosing on us twice and prevent two Sheriff Sales. So when she states that we didn't apply for a Modification it's simply not true.

Now with regard to Mr. Davis's bankruptcy and State Court Litigation Mr. Davis has paid out over one hundred thousand dollars ($100,000.00) over a three year period there wasn't any disputes.

The Amended complaint is for one-million dollars for the two primaries and one hundred fifty million for the class.

At the time Countrywide wasn't served because Bank of America bought them out. The Council for the Defendant seems to have their facts incorrect; Mr. Davis never claims fraud in the filing although a case could be made for it.

The Council for the Defendant keeps making the statement "State a claim which relief can be granted". Please read the Plaintiffs complaint again and make a statement to the court stating how much you are willing to offer in relief for your decimator polices that destroy life's and families.

Regarding the Davis Bankruptcy hearing it is interesting to note that Countrywide now Bank of America tried to do everything they could to cause another Black man and his family as much misery as possible. Countrywide did unilaterally raise Mr. Davis's monthly house payments in bankruptcy court from one thousand fifty eight dollars ($ 1,058.00) every two weeks too one thousand two hundred twenty three dollars and thirty seven cents ($ 1,223.37) every two weeks. Bank of America cause the Davis family both financial and emotional distress not to mention the pain and suffering. As a result of Countrywide AKA Bank of America actions Mr. Davis has loss thousands of dollars out of his 401 k retirement account. This class action law suit is design to bring relief to the many home owners who have been taken advantage and those who are still being victimized by Bank of America.

Bank of America is bad for America, that's probably the reason why they have been sue repeatedly all over the country also by the U.S. Justice Department and The Securities and Exchange Commission just to name a few. They have been exposed as a company guilt of wrong doing by the Government and should not only have to pay them but should be held accountable to the people they have injury also. Please find enclosed a News article exposing some of Bank of America's unethical policies.



Plaintiff:
Philip Davis Jr
9128 Nathaline
Redford, MI 48239-1926

Jessie Ogletree
17600 Northland Park Ct.
Southfield, MI  48075

---

Dear U.S. District Court,

I Philip Davis Jr. a mail carrier for the United States Postal Service, veteran, with recommendations, awards, as well as a hero award letter from the top officials in Washington D.C. After a year of conversations, as well as attempts to rectify the situation with BOFA/Countrywide, they are still unwilling to settle. The only other choice I have is to take legal action. Therefore I have decided to file a multi- million dollar class action lawsuit in U.S District Court against the establishment. I feel Countywide/ Bank of America took advantage of me as well as thousands of families, due to financial and emotional distress, pain and suffering. I have several documents, signed affidavits, materials, key exhibits, witnesses, documents of interrogation, as well as several bad articles on Countrywide/ BOFA. Along with myself and the help from the United States Justice Department, I am confident that we will obtain justice. I have conducted a review of Countywide/BOFA and I now realize that the company is not to be trusted.

You would think Countywide/ BOFA as being a Multi-Billion dollar company would rather negotiate a settlement, than to be sued. I have written many letters, document that I have sent to BOA/ Country wide. I feel that I have been unfairly treated in regards to this matter.

The mortgage market changed in recent years from one in recent years from one in which lenders originated mortgages for retention in their own portfolios to one in which lenders

Plaintiff:
Philip Davis Jr
9128 Nathaline
Redford, MI 48239-1926

Jessie Ogletree
17600 Northland Park Ct.
Southfield, MI  48075

attempted to generate as many mortgage loans as possible for resale on the secondary

mortgage market. The goal for lenders such as Countrywide was not only to originate mortgage

loan volumes, but also originate loans with above- market rates and other terms which would

attract premium prices on the secondary market.

In order to maximize the profits earned by the sale of its loans to the secondary market,

Countrywide's business market increasingly focused on finding ways to generate an ever larger

volume of the type of loans most demanded by investors. For example Countrywide developed

a modification loans product by discussing with investors the prices they would be willing to

pay for loans with particular charac...        (           ...acked by loans with particular

characteristic)  This enabled Countrywide to determine which loans were likely to be sold on

the secondary market for the highest premiums.

 Rather than wait to sale loans, Countrywide's practice was to sell loans, "forward" before loans

were funded.

In 2004, in an effort to maximize Countrywide's profits, Defendants set out to double

Countrywide's shares of the national mortgage market to 30% through a deceptive scheme to

mass produce loans for sale on the secondary market. Countrywide viewed borrowers as

nothing more than the means for producing more loans, originating loans with little or no

regard to borrowers' long term ability to afford the m and to home ownership. This scheme was

created and maintained with knowledge, approval and ratification of defendants.

In 2006 annual report, Countrywide trumpeted the fact while the overall residential loan

production market in the US has tripled in size since 2000, from $1.0 trillion to $2.9 trillion at

Plaintiff:
Philip Davis Jr
9128 Nathaline
Redford, MI 48239-1926

Jessie Ogletree
17600 Northland Park Ct.
Southfield, MI 48075

the end of 2006 Countrywide had grown nearly three times faster, going from $62 billion in loan originations in 2000 to $463 billion in 2006.

Defendants implemented this deceptive scheme through misleading marketing practices designed to sell risky and costly loans to homeowners, the terms and dangers of which they did not understand. Including (1) advertising that it was the nation's largest lender and could be trusted by customers (2) encourage borrowers to refinance or obtain purchase money financing with complicated mortgage instrument like hybrid adjustable rate mortgages or payment options adjustable rate that were difficult for customers to understand. (3) Marketing complex loan products to customers by emphasizing the very low initial teaser" or "fixed" rate while obfuscating or misrepresenting the later steep monthly payments and interest rate increases or risk of amortization: and (4) routinely soliciting borrowers to refinance only months after Countrywide or the loan brokers with whom it had "business partnerships" had sold them loans.

Defendant also employed various lending policies to further their deceptive scheme and sell ever-increasing numbers of loans, including (1) the dramatic easing of Countrywide's underwriting standards (2) increased use of low or – no documentation loans which allow for no verification of stated income or stated assets or both, or no request for income or asset information at all(3) urging borrowers to encumber their home up to 100% (or more)of the asset value; placing borrowers in "piggyback" second mortgages in the form of higher interest rate HELOCs while obscuring their total monthly payment obligations.

Plaintiff:
Philip Davis Jr
9128 Nathaline
Redford, MI 48239-1926

Jessie Ogletree
17600 Northland Park Ct.
Southfield, MI  48075

Under the terms of the HELOCs, borrowers received monthly bills for interest-only payments for the first five years of the loan term (which could be extended to ten years at Countrywide's options); during which time they could also tap any unused amount of the equity line. This was called the "draw period."

Because Countrywide offered HELOCs as piggybacks to Pat Option and Hybrid ARMs, 100% or more of a property appraised value could be encumbered with loans that required interest-only payments or allowed for negative amortization.

Countrywide typically urged borrowers to draw down the full line of credit when HELOCs initially funded. This allowed Countrywide as much interest as possible on the HELCOs it kept in its portfolio, and helped generate the promised payment streams for HELCOs sold on the secondary market. For the borrower, however, drawing down full line of credit at funding meant that there effectively was no "equity line" available during the draw period, as the borrower would be making interest- only for five years. Upon the end of the draw period, the HELCO notes generally require borrowers to repay the principal and interest in fully amortizing payments over a fifteen year period. A fully drawn HELCO was therefore functionally a 20-or 25-year closed-end mortgage. However, Countrywide did not provide borrowers with any documents or other materials to help them calculate the principal and interest payments that would be due after the draw, or interest-only, period.

The ever-increasing monthly payment shock characteristic of Pay Option ARMs is illustrated by the following example of a countrywide loan. The loan had an initial principal balance of $460.000.00, a teaser rate of 1%, and a margin of 2.9% (such that after the one-month teaser

Plaintiff:
Philip Davis Jr
9128 Nathaline
Redford, MI 48239-1926

Jessie Ogletree
17600 Northland Park Ct.
Southfield, MI  48075

rate expired, the interest would be the 1-month LIBOR index plus 2.9% rounded to the nearest

1/8[th] percent). After the teaser rate expired, based on the 1-month LIBOR rate as of the date

the borrower obtained the loan, the interest rate would increase to 7.00%. Assuming the 7.00%

interest rate remained in place, and the borrower chose to make the minimum payment for as

long as possible, the payment schedule would be approximately as follows:

a.  $1,479.54 per month for the first year;

b.  $1,590.51 per month for the second year;

c.  $1,709.80 per month for the third year;

d.  $1,838.04 per month for the fourth year;

e.  $1,975.89 per month for the first nine months of the fifth year; and

f.  Approximately $3747.83 per month for the remaining twenty-five years and three

    months on the loan.

Once the payment reached $3747.83, this Pay Option ARM will have negatively amortized

such that he balance of the loan will have increased to approximately $523,792.33.

At this point the borrower will be faced with a payment more than two-and-a- half times

greater than the initial payment and likely will be unable to refinance unless his or her

home has increased in value at least commensurately with the increased loan balance.  In

addition, increases in the LIBOR rate could cause the borrower to hit the negative

amortization cap earlier, and also could result in even higher payments. If the interest rate

reached 8% just 1% higher he negative amortization cap would be reached sooner and

payments could reach $4,000.00 per month or higher.

Plaintiff:
Philip Davis Jr
9128 Nathaline
Redford, MI 48239-1926

Jessie Ogletree
17600 Northland Park Ct.
Southfield, MI 48075

Countywide received numerous complaints from borrowers claiming that they did not understand their loan terms. Despite these complaints, Countywide turned a blind eye to ongoing deceptive practices. This also created a hardship for borrowers by it loose underwriting practices. They only care about selling increasing numbers of loans at any cost in order to maximize Countrywide's profits on the secondary market.

Sincerely,

Philip Davis Jr.

*Philip Davis Jr.*   11-30-12

*Jm Ogletree*   11.30-12

Countrywide typically urged borrowers to draw down the full line of credit when HELCO'S initially funded. This allowed Countrywide as much interest as possible on the HELCO'S it kept In its portfolio, and helped generate the promised payment streams for HELCO's sold on the secondary market. For the borrowers, however, drawing down full line of credit at funding meant that there effectively was no "equity line" available during the draw period, as the borrower would be making interest-only payments for five years. Upon the end of the draw period the HELCO notes generally require borrowers to repay the principal and interest in fully amortizing Payments over a fifteen year period. A fully drawn HELCO was therefore functionally a 20 or 25 year closed-end mortgage. However, Countrywide did not provide borrowers with any documents or other materials to help them calculate the principal and interest payments that would be due after the draw, or interest-only period.

In conclusion, we are requesting the amount of one hundred fifty million dollars(150,000,000.00) In this Class Action Suit.

Sincerely,

Philip Davis Jr. and Jessie Ogletree Jr

*Philip Davis Jr.*   11-30-12

*Jim Ogletree*   11-30-12

07/23/2012

Attention:

Bank of America is a bad company along with Wells Fargo and Chase Bank. They discriminate to

African American as well as Hispanics. BOFA (Countrywide) has not granted me the settlement

of $900.000.00 or$250.000.00, but now they are going to pay more money out in a class action

lawsuit. Like the article said, "Bank of America is bad for America." People wake up!

1. Discriminate against African American/ Hispanics
2. Assessed higher fees and interest rate as well as higher subprime loans.
3. Foreclosure on many African American/Hispanic families so their only option was to file bankruptcy in order to keep their homes.
4. BOFA/ Countrywide took advantage of and thousands of families causing emotional distress, hardships, pain and suffering.
5. Damaged credit for many families.
6. BOFA/ Countrywide sued by U.S Justice Department ( see attached article)
7. BOFA/ Countrywide sued by securities and exchange Commission (see attached article)
8. Attorney General in ten States  are suing BOFA/ Countrywide
9. This class action lawsuit should inspire people to come forward and collect their share of suit money.
10. BOFA:  Bad for Americans (see attached article).

Dear Court this class action lawsuit should inspire others to come forward.

D.S. District Court Please post in newspapers, web, internet as well as the U.S. mail.

 THANK YOU!

Sincerely

Philip Davis Jr.

*Philip Davis Jr. 11-30-12*

*[signature] 11-30-12*



July 11, 2012

HUFF
POST **BUSINESS**
THE INTERNET NEWSPAPER: NEWS BLOGS VIDEO COMMUNITY

# Kyle Lagow Bank Of America Lawsuit: Whistleblower Receives $14.5 Million In Mortgage Case

Reuters | Posted: 05/29/2012 7:23 pm Updated: 05/30/2012 12:22 am



 **REUTERS**   By Rick Rothacker

May 29 (Reuters) - A former home appraiser will receive $14.5 million as part of a whistleblower lawsuit that accused subprime lender Countrywide Financial of inflating appraisals on government-insured loans, his attorneys said Tuesday.

Kyle Lagow's lawsuit sparked an investigation that culminated in a $1 billion settlement announced in February between Bank of America Corp and the U.S. Justice Department over allegations of mortgage fraud at Countrywide, his attorneys said in a news release. Bank of America bought Countrywide in 2008.

Lagow's suit was one of five whistleblower complaints that were folded into the $25 billion national mortgage settlement that state and federal officials reached with Bank of America and four other lenders this year. His suit was unsealed in February, but the amount of his settlement had not been disclosed.

Gregory Mackler, a whistleblower who challenged Bank of America's handling of the government's HAMP mortgage modification program, has also finalized a settlement, said Shayne Stevenson, an attorney with the Hagens Berman law firm, which represented both whistleblowers. Stevenson declined to comment on Mackler's settlement amount.

The complaints were brought under a whistleblower provision in the U.S. False Claims Act, which allows private individuals with knowledge of wrongdoing to bring suits on behalf of the government and share in the proceeds of any settlement.

Both Lagow and Mackler lost their jobs after raising concerns about practices at their companies and faced difficult times awaiting settlements, Stevenson said. Lagow, who worked in a Countrywide appraisal unit, filed his suit in 2009; Mackler, who worked at a firm called Urban Lending Solutions, brought his case in 2011.

"These guys are inspirational," Stevenson said. "They both did the right thing. The should inspire other people to come forward."

Bank of America declined to comment. A spokesman for the U.S. Attorney's Office in the Eastern District of New York, which handled the Bank of America settlement, also declined to comment.

EARLIER ON HUFFPOST:



**U.S. Department of Justice**
*Consumer Protection Branch*
*Civil Division*
*Washington, DC 20530*

April 13, 2012

Philip Davis Jr.
9128 Nathaline St.
Redford, MI 48239

      Re:     Home Loan Modification Attempts

Dear Mr. Davis:

      This letter is in reply to your correspondence to the Attorney General, dated February 28, 2012, which was referred to this Office for consideration and response. I regret the delay in responding. Your letter concerns your attempts to modify your home loan with Bank of America (BoA), which have been unsuccessful. I note you have filed a suit against BoA and contacted the Office of the Comptroller of the Currency.

      If you have access to the Internet you may wish to review the information and guidance on some of the following websites that may address some of the issues you are facing:

1.    USA.gov: http://www.pueblo.gsa.gov/cfocus/cfmortgage07/focus.htm
2.    State agencies (foreclosure matters): http://www.hud.gov/foreclosure/local.cfm

      Attorney General Eric Holder made a statement on February 9, 2012, copy enclosed http://www.justice.gov/opa/pr/2012/February/12-ag-186.html, regarding a $25 billion agreement between federal and state agencies and the nations five largest mortgage servicers: Bank of America, JPMorgan Chase & Co., Wells Fargo & Company, Citibank, and Ally Financial, which was formerly GMAC. AG Holder's remarks focused on "righting the wrongs that led to our nation's housing-market collapse and economic crisis." If you would like more information on this settlement, I suggest you visit the newly created website, http://www.NationalMortgageSettlement.com.

      In addition, AG Holder issued a memorandum on January 27, 2012, regarding investigations by the Residential Mortgage-Backed Securities Working Group, copy attached, http://www.justice.gov/ag/residential-mortgage-backed-securities.pdf, which was mentioned in President Obama's State of the Union address on January 24, 2012.



# Office of the Attorney General

## Washington, D. C. 20530

January 27, 2012

MEMORANDUM TO THE FINANCIAL FRAUD ENFORCEMENT TASK FORCE

FROM:    THE ATTORNEY GENERAL
         Chair, Financial Fraud Enforcement Task Force

SUBJECT:    Residential Mortgage-Backed Securities

      The recent global financial crisis has affected, and continues to affect, millions of Americans who placed their trust in the integrity and fairness of our financial institutions and markets. Through congressional inquiry and other criminal and civil investigations into the cause of the financial crisis, we have learned that the creation, sale, and, ultimately, massive failure of residential mortgage-backed securities (or, RMBS, as they are known) contributed significantly to the collapse of the housing market, damaged the public's trust and threatened the safety and soundness of our economy.

      Many of our Task Force members have conducted, and currently are conducting, civil and criminal investigations into the RMBS market to determine whether it was infected by fraud and other misconduct. As you know, a central mission of the Task Force is to enhance the government's effectiveness to prevent and combat financial fraud by sharing information and fostering cooperation among members. Therefore, in order to collaborate with these existing state and federal investigations, as well as forthcoming investigations, I am directing the Task Force to create a new working group specifically devoted to this issue. Specifically, I am asking this new group -- the Residential Mortgage-Backed Securities Working Group -- to assist state and federal law enforcement offices in achieving justice for the victims of any such misconduct by collaborating on the existing ongoing efforts as well as new investigations into these matters, including:

- misrepresentations by originators, sponsors, underwriters, and other market participants concerning the quality of mortgages backing the RMBS;

- failures to transfer ownership of the collateral into the securities;

- failures by trustees to manage adequately the assets within the securitized pools of loans;

- failures by RMBS sponsors to repurchase the problematic loans or remit loan proceeds to RMBS trusts;

- failures by RMBS sponsors to adequately reserve for and/or disclose the potential exposure to liability if obligations to repurchase problematic loans were triggered; and

1

**USA TODAY**   WEDNESDAY, MAY 2, 2012

## Nationline



By Eric Thayer, Getty Images

**Subdued:** Police grapple with a protester during a rally for International Workers' Day in Oakland.

# U.S. demonstrators stage May Day rallies

Activists across the USA joined the worldwide May Day protests Tuesday as Occupy Wall Street members in several cities led demonstrations against major financial institutions.

In Oakland, stinging gas sent protesters fleeing a downtown intersection. It was unclear whether police fired the gas, but officers took four people into custody. Crowds blocked intersections and tried to force businesses to shut down for not observing calls for a "general strike."

Among other protests:

▶ **In New York,** police in riot gear lined the front of a Bank of America as dozens of Occupy activists marched behind barricades chanting, "Bank of America: Bad for America!"

▶ **In Seattle,** black-clad protesters used sticks to smash downtown windows and ran through the streets disrupting traffic.

▶ **In Atlanta,** about 100 people rallied outside the state Capitol, calling for an end to local-federal partnerships to enforce immigration law.

# NATION+WORLD

# Tentative deal has JPMorgan paying $13B in settlement

Associated Press

WASHINGTON — JPMorgan Chase has tentatively agreed to pay $13 billion to settle allegations surrounding the quality of mortgage-backed securities it sold in the run-up to the 2008 financial crisis, a person familiar with the negotiations between the bank and the federal government said Saturday.

If the agreement is finalized, it would be the government's highest-profile enforcement action related to the financial meltdown that plunged the economy into the deepest recession since the Great Depression of the 1930s.

The person, who spoke on condition of anonymity because the deal has not been finalized, said Attorney General Eric Holder, Associate Attorney General Tony West, JPMorgan CEO Jamie Dimon and the bank's general counsel, Stephen Cutler, negotiated the tentative settlement in a Friday night phone call.

The person said the tentative agreement does not resolve a criminal investigation of the bank's conduct. It is being handled by federal prosecutors in Sacramento, Calif.

On Friday night, Holder told the bank that a non-prosecution agreement was a nonstarter — meaning that the Justice Department will continue to conduct the criminal

investigation of the financial institution, said the person. As part of the deal, the Justice Department expects JPMorgan to cooperate with the continuing criminal probe of the bank's issuance of mortgage-backed securities between 2005 and 2007, the person said.

JPMorgan spokesman Brian Marchiony and Justice Department spokesman Brian Fallon declined to comment.

Of the $13 billion, $9 billion is fines or penalties and $4 billion will go to consumer relief for struggling homeowners, the person said.

When the housing bubble burst in 2007, bundles of mortgages sold as securities soured, and the investors who bought them lost billions. In the aftermath, public outrage boiled over that no high-level Wall Street executives had been sent to jail. Some lawmakers and other critics demanded that the big bailed-out banks and senior executives be held accountable.

In response, the government in January 2012 set up a task force of federal and state law enforcement officials to pursue wrongdoing with regard to mortgage securities.

The latest action against JPMorgan brought the weight of the Obama administration against the bank, which has enjoyed a reputation for managing risk better than its Wall Street competitors.

## Mortgage loan actions cited

Kevin McCoy
and Julie Schmit
USA TODAY

NEW YORK Bank of America was found liable for fraud Wednesday for a program — dubbed "the Hustle" — that caused millions in losses to federally backed mortgage finance firms Fannie Mae and Freddie Mac in financial crisis fallout.

The civil verdict by a Manhattan federal court jury similarly found the bank's Countrywide Financial unit liable and determined that former Countrywide executive Rebecca Mairone committed fraud while overseeing the loan-origination program.

Bank of America acquired Countrywide in July 2008.

The decision after a month-long trial focused on evidence that the Countrywide program processed mortgage applications at top speed with little checking for fraud, misrepresentations or other wrongdoing.

A judge is expected to determine civil costs to be paid by the bank.

"Almost a year to the day after we brought suit, a unanimous jury has found Countrywide, Bank of America and senior executive Rebecca Mairone liable for making disastrously bad loans and systematically removing quality checks in favor of its own balance," said Manhattan U.S. Attorney Preet Bharara.

Bank of America's Lawrence Grayson said the bank is studying the verdict. "The jury's decision concerns a single Countrywide program that lasted several months and ended before Bank of America's acquisition of

# BofA found liable in fraud

RON ANTONELLI/BLOOMBERG NEWS

the company. We will evaluate our options for appeal." Defense attorney Marc Mukasey called Mairone "a model of honesty, integrity and ethics." Insisting there was no fraud, Mukasey said, "We'll fight on."

Countrywide created the Hustle program, officially known as the HSSL, or High Speed Swim Lane, in 2007 as the real estate market started to collapse and the market for subprime mortgage loans dried up. The aim was to handle more prime

mortgage loans, generally made to borrowers with high credit ratings.

But federal prosecutors charged that the program's design was to have loans "move forward, never backward," and to remove "toll gates" slowing approval.

Program employees got bonuses based on the volume of mortgages approved, a turnabout from prior metrics that focused more on loan quality, prosecutors charged.

A quality review in 2008 found that 57% of Hustle loans defaulted. Thousands of loans approved under the program were sold to Fannie and Freddie.

Kevin Whelan, national campaign director for the Home Defenders League, said the win "could inspire the federal government to keep going with its own investigations into banks and executives."

Contributing: The Associated Press

# MIKE DUGGAN
## History of Leadership or Unlawful Acts? YOU DECIDE

# For an election this critical, Detroit Voters need to know the truth about Mike Duggan.

**DUGGAN COVERED UP POLICE BRUTALITY IN THE MALICE GREEN CASE**
In 1993, Kalil Jiraki, formerly of the Wayne County Morgue, sued Mike Duggan for attempting to intimidate him to testify Malice Green's death was related to ingesting cocaine and not the fatal beating that Green actually suffered. Jiraki was awarded $2.5 million after suing DUGGAN. **Detroit News - August 11, 2000**

**DUGGAN WAS SUED BY USDOJ FOR DMC KICKBACK SCHEME**
DMC paid a $30 million over allegations it violated the False Claims Act, the Anti-Kickback Statute and the Stark Statute, by engaging in improper financial relationships with referring physicians. DMC billed Medicare and Medicaid from 2007 to 2010 for undocumented physician services. December 30, 2010, USDOJ website. **Crain's Detroit Business - January 10, 2011**

**MORE NO-BID CONTRACTS - AS WAYNE COUNTY PROSECUTOR**
Mike paid various vendors more than $830,000 without formal contracts, a competitive bidding process, or approval from the Wayne County Commission, according to audit. **Detroit Free Press - December 15, 2004**

**USING HIS TAX-FUNDED OFFICE FOR POLITICAL CAMPAIGN WORK**
In 2003, Duggan was sued by an intern, which revealed a fundraising operation out of the Wayne County Prosecutor's Office followed by a Grand Jury investigation. His deputy was having an affair with the 20 year old. Judith McNair, a lawyer in the Prosecutor's Office also sued Duggan because she was demoted for telling the truth.
**Detroit Free Press - January 23, 2003**

**DUGGAN GAVE NO-BID DPS CONTRACTS TO CAMPAIGN DONORS**
As a part of the Takeover Team, Duggan spent $76 million in no-bid contracts to contractors who turned around and funded his Wayne County Prosecutor's run, leaving the DPS in a deficit. **Detroit News - October 3, 1999**

**CLAIMS IGNORANCE THAT DPS BORROWS MONEY TO PAY FOR SNYDER'S SCHOOLS**
Snyder made Duggan one of his seven appointees to the EAA Board set up by Snyder claiming to fix problems at the weakest schools in the state. However, DPS took out $12 million in loans and gave the money to the EAA to keep the Snyder's schools afloat. Duggan claimed not to know about the loans before resigning. Meanwhile, contracts are going out to Duggan's friends. **Michigan Citizen, Detroit Free Press, May 3, 2013**

# KNOW THE FACTS – YOUR VOTE COUNTS NOV. 5th
## Paid for by Detroit Forward PAC



U.S. POSTAGE
PAID
REDFORD, MI
48239
JAN 03 14
AMOUNT
$1.52
00063018-13

97208

1000

UNITED STATES
POSTAL SERVICE

FIRST CLASS

Bank of America TCPA Settlement Claims Administrator

P.o. Box 7410

Portland, OR. 97208-7410.

Davis

9128 Nathaline St.

Redford, michigan 48239-1926

Metroplex MI 480 ZIP
SAT 04 JAN 2014
PM

*A. The compensation offered to class member is too low*

As described in the Detailed Notice, under 47 U.S.C. §227(b)(3), plaintiffs are entitled to treble damages, or up to $1,500 for knowing or willful violations, and up to $500 for negligent violations. With an individual subject to many non-consensual calls, text messages or fax transmissions, potential damages are significant. As the records are all electronic, violations of the TCPA are easy to prove.

Despite the ease of proof and large penalties provided for by the TCPA, the settlement proposes to award individual class members a mere $20 to $40 (or $20 each for all mortgage related call or all credit card calls). This is too low. Other class action cases alleging violations of the TCPA have entitled class members to recoveries more in keeping with the damages provided for under the TCPA. In *Samantha Ellison v. Steve Madden Ltd.*, case number 2:11-cv-05935, in the U.S. District Court for the Central District of California, according to the judge's minute order, every class member submitting a valid claim would be eligible to receive $150, unless the total claims exceeded $10 million, in which case each class member would receive a smaller amount. Likewise in *Kramer v. Autobytel Inc.*, et al, Case Number 4:10-cv-02722, Northern District of California, Judge Claudia Wilken gave preliminary approval to a settlement under which class members would receive payments of up to $100 each. The settlement of $20 to $40 per class member provided for here seems woefully inadequate in light of these awards.

The settlement also seems too low in light of the harassing nature of the calls complained of in the complaints. The calls that form the subject of this lawsuit are not just non-consensual marketing calls, but were instead particularly harassing calls aimed at debt collection. As noted in the *Ramirez* Complaint, when "Mr. and Mrs. Ramirez fell behind on their mortgage, BANA began a campaign of harassment by telephone to collect on the missed payments. BANA would call their home and Mrs.

1   Ramirez' personal cell phone in sequence at multiple times per day." Ramirez Complaint, ¶ 7, page. 3.

2   This suggests that many of the Class Members did not receive one or two calls, but instead suffered

3   repeated harassing calls. Each individual claimant could be entitled to substantial compensation under

4   the TCPA – which establishes penalties for each call.

5

6       The Defendants' size, and the degree to which the settlement would penalize the bank, should

7   also be considered in evaluating the fairness of the settlement. The Ramirez Complaint noted that

8   according to the most recent financial report, Bank of America was the largest mortgage loan servicer in

9   the United States, servicing 13.4 million loans. On its website, the parent company notes:

10

11          Bank of America is one of the world's largest financial institutions, serving
            individual consumers, small- and middle-market businesses and large

12          corporations with a full range of banking, investing, asset management and other
            financial and risk management products and services. We serve approximately 52

13          million consumer and small business relationships with approximately 5,400 retail
            banking offices and approximately 16,300 ATMs and award-winning online

14          banking with 30 million active users. Bank of America is among the world's

15          leading wealth management companies and is a global leader in corporate and
            investment banking and trading across a broad range of asset classes, serving

16          corporations, governments, institutions and individuals around the world.

17   Bank of America Corporate Profile, *available at* http://investor.bankofamerica.com/

18   phoenix.zhtml?c=71595&p=irol-homeprofile#fbid=Hbv9GeJ9xUC.

19

20       For such a large company, a $32 million settlement is pocket change. But not that pocket change

21   for the bank should translate into pennies on the dollar for class members subjected to the harassing calls

22   giving rise to this litigation.

23   **B. The injunctive relief does not benefit the class**

24

25       Class Counsel are proud of the changes Bank of America has agreed to implement to its policies

26   regarding unsolicited calls to clients. As noted in the attorneys' fee motion:

27          [T]he primary focus of the Settlement is Bank of America's prospective practice
            changes. Specifically, Bank of America has developed and implemented

28          significant enhancements to its servicing systems which are designed to prevent

                                                    4

1    the  calling of a cell phone unless a loan servicing record is systematically coded
2    to reflect the  borrower's prior express consent to call his/her cell phone.

3    Plaintiffs' Motion for Attorneys' Fees ("Fee Motion"), page 3.

4    Although these practice changes are salutary, they don't benefit the class.  These are prospective

5    changes that will benefit Bank of America's current customers and clients, but will not benefit former

6    mortgage holders who have possibly already lost their homes in foreclosure, or credit card customers

7    who fell behind on their payments, received harassing phone calls, and may have had their accounts

8

9    closed.  Injunctive relief that benefits other people – including current customers – should not be

10   considered a benefit the class because "[t]he fairness of the settlement must be evaluated primarily on

11   how it compensates class members—not on whether it provides relief to other people." *In re Dry Max*

12   *Pampers Litigation*, 724 F.3d 713, 720 (6th Cir. 2013) (*quoting Synfuel Techs., Inc. v. DHL Express*

13

14   *(USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).  The court should remember that the period covered by

15   this litigation includes the great economic crisis of 2008, which affected millions of consumers, many of

16   whom lost their homes.  Changing Bank of America's practices is a salutary goal, but these practice

17   changes should not be approved in lieu of real compensation to the injured individuals in the class.

18

19   *C.  The Attorneys' Fees Requested are Too High*

20   Class Counsel's contingent fee request of 25% of the settlement is excessive.  Although fee

21   awards of 25% may be accepted in the Ninth Circuit, such fees are not appropriate in all circumstances.

22   Attorney fee percentage awards in large class actions show an inverse relationship to the size of the

23   award. *See Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards*,

24

25   7  J. Empirical L. Stud. 811 (2010).  For settlements over $30 million, the mean percentage award

26   nationwide is only 22.3%, less than the fee percentage sought by Class Counsel . *Id.*

27   Class Counsel are requesting attorneys' fees and costs of $8,020,976.  After subtracting class

28   counsel's expenses of $64,365.14, the attorneys' fees requested are $7,956,610.86.  This number should

5

1    be evaluated in both the benefit achieved for the class and in light of the hours spent on the litigation.

2    Class counsel claim to have devoted 2560.70 hours to litigation . Dividing the total fees by the number

3    of hours, yields average hourly compensation of $3,107.20. This is far too high.

4    
5           Analysis of the lodestar multiplier requested by Class Counsel underscores that the attorneys'

6    fees requested are too high. Review of the lodestar provides an important check on excessive fees. A

7    court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the

8    reasonableness of a percentage figure." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th

9    Cir. 2002). Here, Class Counsel are requesting a lodestar multiplier of 5.7. This is an extremely high

10   lodestar, particularly in a case where the compensation recovered for the class is so small relative to the

11   damages alleged. The authorities Class Counsel cite in their fee motion highlight the unreasonable

12   nature of the fee request. Class Counsel cite to *Vizcaino* to support the high multiplier, requested

13   although the multiplier counsel seek here is much higher than that approved in *Vizcaino*. The multiplier

14   approved in Vizcaino was only 3.65 – much less than the 5.7 sought here. *Id.*, at 1052-1054 (finding

15   most multipliers ranged from 1.0 to 4.0).

16
17
18          As Class Counsel point out in their fee motion, courts consider several factors in determining

19   appropriate attorneys' fees. Factors a court may consider include: (1) the results achieved; (2) the risk of

20   litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5)

21   awards made in similar cases. Fee Motion, page 11, *citing Vizcaino*, 290 F.3d at 1048-1050 *and In re*

22   *Omnivision*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). Objectors do not agree, however, these

23   favors support the large fees sought. The results the attorneys achieved for the class are low in light of

24   the significant statutory damages provided for under the TCPA. Given this result, a high lodestar

25   multiplier is not warranted.

26
27
28

                                                    6

1

2     *D. The payment procedures elevate Class Counsel's interests over those of the class*

3           Under Section 7.04 of the Settlement Agreement, Class Counsel will be paid ten days after the

4

5     entry of the Final Approval Order and the order approving fees. Class Members, however, will only

6     receive their payment thirty days after the "Effective Date", which is defined as either thirty days after

7     entry of the Final Judgment approving the Settlement if no appeal or request for rehearing is filed, or, if

8     an appeal is filed, then five days after the appellate proceedings have been terminated. This provision

9     enables the lawyers to be paid before the case has been concluded, and before Class Members are paid.

10

11    This so-called quick pay provision is an affront to Class Members and shows Class Counsel is putting

12    their own interests in front of those of their clients. This provision disincentives Class Counsel from

13    conscientiously attending to the claims administration and funds distribution process – and divorces

14    Class Counsel's interest from those of the class. The court should not allow this. The attorneys should

15    receive their fees when Class Members get paid.

16

17    **II. Joinder in Other Objections**

18          These objectors join in and adopt all other objections or portions thereof not inconsistent with the

19    above.

20    ///

21

22

23

24

25

26

27

28

1    **III. Conclusions**

2       For the foregoing reasons and all others at oral argument, these objectors request that the court

3    sustain their objections enter such Orders as are necessary and just to alleviate the inherent unfairness,

4    inadequacies and unreasonableness of the Settlement.

5

6                                    LAW OFFICES OF DARRELL PALMER PC

7

8

9    Dated:   March 21, 2014              By: _____
                                                    Joseph Darrell Palmer
10                                       Attorney **for JAMES KIRBY AND SUSAN HOUSE**

11                              **CERTIFICATE OF SERVICE**

12       I certify that on March 21, 2014, I mailed the foregoing document by First-Class Mail, postage

13   prepaid, to the following:

14   *Rose v. Bank of Am. Corp.*,
     Case No. 11-cv-02390-EJD (N.D. Cal.)
15   Clerk of the Court
     U.S. District Court NDCA              Lieff Cabraser Heimann & Bernstein, LLP
16   280 South 1st Street                  Embarcadero Center West
     San Jose, CA 95113                    275 Battery Street, 29th Floor
17                                         San Francisco, CA 94111

18

19                                         By: _____
20                                         Joseph Darrell Palmer

21

22

23   _____

24   [1] The court should allocate time for the usual personal onslaught against objector lawyers.  However the
     court should note this objection is well written and specifically aimed at real issues in the proposed
25   settlement.  Class counsel should limit their response to the arguments presented.  Nonetheless, to
     preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to
26   extort class counsel, House and Kirby are willing to stipulate to an injunction prohibiting themselves and
     their attorneys from accepting compensation in exchange for the settlement of this objection. *See* Brian
27   T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting
     inalienability of objections as solution to a perceived objector blackmail problem). (This is also the
28   proposal used by Center for Class Action Fairness.)
                                                                          8

# EXHIBIT A

Bank of America TCPA Settlement
Claims Administrator
PO Box 3410
Portland OR 97208-3410

| Toll Free Number: | 1-877-919-9186 |
| Website: | www.BOATCPASettlement.com |
| Email: | info@BOATCPASettlement.com |
| Objection/Exclusion Deadline: | March 21, 2014 |
| Settlement Fairness Hearing: | April 4, 2014 |
| Deadline to File a Claim: | March 21, 2014 |

## BANK OF AMERICA TCPA SETTLEMENT CLAIM FORM

Settlement Awards shall be made to eligible Settlement Class Members on a claims-made basis. Each member of the Settlement Class shall be entitled to make a Claim for a Settlement Award. Any Settlement Class Member shall be entitled to make one claim each for any Mortgage Calls and one claim for Credit Card Calls or Credit Card Texts. (For example, a person who received Mortgage Calls and Credit Card Calls may make two claim selections by checking the appropriate box in Part II and Part III of this claim.) To make a claim, Settlement Class Members must complete and submit a claim by March 21, 2014.

**PART I:      CLAIMANT IDENTIFICATION:**

First Name

`J A M E S`

Last Name

`K I R B Y`

Address 1 (street name and number)

`6 3 0    F A I R W A Y    A V E    N E`

Address 2 (apartment, unit or box number)

City

`F O R T   W A L T O N   B E A C H`

State `F L`   Zip Code `3 2 5 4 7`

Foreign Country (only if not USA)

Optional Telephone Number (home)

`8 5 0` - `8 6 2` - `7 1 3 2`

Email address

`R I P C N O V 9 T H G R O U P . C O N`

Cell phone number at which you received one or more non-emergency mortgage or credit card default servicing calls using an automatic telephone dialing system and/or an artificial prerecorded voice ("Automatic Calls") or one or more non-emergency default servicing text messages ("Automatic Texts") without your prior express consent:

`8 5 0` - `2 1 7` - `1 6 1 6`

Unique Identifier
Please enter the 13 digit unique identifier published in the postcard notice or email notice that you received.
If you did not receive a notice, or cannot locate the 13 digit unique identifier, you may leave this field blank.

`8 1 6 8 0 7 1 2 5 7 9 6 7`

**PART II:**    <u>CLAIM TYPE: AUTOMATIC CREDIT CARD TEXTS OR CALLS:</u>

If you received one or more Automatic Calls or Texts regarding a Bank of America Credit Card Account, you can make a claim for <u>either</u> Automatic Credit Card Calls <u>or</u> Automatic Credit Card Texts, but not both, by checking the appropriate box below:

☒ Received one or more **Automatic Calls** regarding a Bank of America Credit Card Account between May 16, 2007, and January 31, 2013; **OR**

☐ Received one or more **Automatic Texts** from Bank of America regarding a Bank of America Credit Card Account between February 22, 2009, and December 31, 2010.

**Note: You cannot make a claim for both Automatic Credit Card Texts and Automatic Credit Card Calls**

**PART III:**    <u>CLAIM TYPE: AUTOMATIC MORTGAGE CALLS:</u>

If you received one or more Automatic Calls regarding a Bank of America Residential Mortgage Loan Account, you can make a claim for Automatic Mortgage Calls by checking the box below:

☐ Received one or more Automatic Calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account between August 30, 2007 and January 31, 2013.

**PART IV:**    <u>CERTIFICATION:</u>

By submitting this claim form, I certify that the foregoing information supplied by the undersigned is true and correct.

_____
Signature of Claimant

| J A M E S   H.   K I R B Y   III |
Print Name of Claimant

Date  | 0 | 3 | - | 2 | 1 | - | 1 | 4 |
         MM       DD       YY

Bank of America TCPA Settlement
Claims Administrator
PO Box 3410
Portland OR 97208-3410

| | |
|---|---|
| Toll Free Number: | 1-877-919-9186 |
| Website: | www.BOATCPASettlement.com |
| Email: | info@BOATCPASettlement.com |
| Objection/Exclusion Deadline: | March 21, 2014 |
| Settlement Fairness Hearing: | April 4, 2014 |
| Deadline to File a Claim: | March 21, 2014 |

## BANK OF AMERICA TCPA SETTLEMENT CLAIM FORM

Settlement Awards shall be made to eligible Settlement Class Members on a claims-made basis. Each member of the Settlement Class shall be entitled to make a Claim for a Settlement Award. Any Settlement Class Member shall be entitled to make one claim each for any Mortgage Calls and one claim for Credit Card Calls or Credit Card Texts. (For example, a person who received Mortgage Calls and Credit Card Calls may make two claim selections by checking the appropriate box in Part II and Part III of this claim.) To make a claim, Settlement Class Members must complete and submit a claim by March 21, 2014.

## PART I:    CLAIMANT IDENTIFICATION:

First Name
`SUSAN`

Last Name
`HOUSE`

Address 1 (street name and number)
`4436 CLUBBOCK DRIVE`

Address 2 (apartment, unit or box number)

City
`SIMI VALLEY`

State
`CA`

Zip Code
`93063`

Foreign Country (only if not USA)

Optional Telephone Number (home)
`805 - 915 - 8864`

Email address
`dochousemom@gmail.com`

Cell phone number at which you received one or more non-emergency mortgage or credit card default servicing calls using an automatic telephone dialing system and/or an artificial prerecorded voice ("Automatic Calls") or one or more non-emergency default servicing text messages ("Automatic Texts") without your prior express consent:
`806 - 915 - 8864`

Unique Identifier
Please enter the 13 digit unique identifier published in the postcard notice or email notice that you received.
If you did not receive a notice, or cannot locate the 13 digit unique identifier, you may leave this field blank.
`8168025467326`

01-CA8168
L6261 v.08 12.14.2013

1

**PART II:    CLAIM TYPE:  AUTOMATIC CREDIT CARD TEXTS OR CALLS:**

If you received one or more Automatic Calls or Texts regarding a Bank of America Credit Card Account, you can make a claim for either Automatic Credit Card Calls or Automatic Credit Card Texts, but not both, by checking the appropriate box below:

☐    Received one or more **Automatic Calls** regarding a Bank of America Credit Card Account between May 16, 2007, and January 31, 2013; **OR**

☐    Received one or more **Automatic Texts** from Bank of America regarding a Bank of America Credit Card Account between February 22, 2009, and December 31, 2010.

**Note: You cannot make a claim for both Automatic Credit Card Texts and Automatic Credit Card Calls**

**PART III:    CLAIM TYPE:  AUTOMATIC MORTGAGE CALLS:**

If you received one or more Automatic Calls regarding a Bank of America Residential Mortgage Loan Account, you can make a claim for Automatic Mortgage Calls by checking the box below:

☑    Received one or more Automatic Calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account between August 30, 2007 and January 31, 2013.

**PART IV:    CERTIFICATION:**

By submitting this claim form, I certify that the foregoing information supplied by the undersigned is true and correct.

_Signature of Claimant_

Susan House
Print Name of Claimant

Date **03** - **21** - **14**
        MM        DD        YY

DARRELL PALMER
2244 FARADAY AVE
CARLSBAD CA 92008

U.S. POSTAGE
**$1.50**

92110
Date of sale
03/21/14
06  2500
08262201

RECEIVED

MAR 2 6 2014

LIEFF, CABRASER HEIMANN
& BERNSTEIN

Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

1  Joseph Darrell Palmer (SBN 125147)
   darrell.palmer@palmerlegalteam.com
2  Law Offices of Darrell Palmer PC
   2244 Faraday Avenue, Suite 121
3  Carlsbad, CA 92008
   Telephone: (858) 215-4064
4  Facsimile: (866) 583-8115

5  Attorneys for JAMES KIRBY AND SUSAN HOUSE

6

7

8                    UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10
   STEPHENIE ROSE, on behalf of herself and all  )  Case No. 5:11-cv-02390-EJD (PSG)
11 others similarly situated,                     )
                                                  )  **OBJECTIONS OF JAMES KIRBY AND**
12              Plaintiffs,                        )  **SUSAN HOUSE TO PROPOSED**
                                                  )  **SETTLEMENT AND NOTICE OF INTENT**
13 v.                                             )  **TO APPEAR**
                                                  )
14                                                )
   BANK OF AMERICA CORPORATION,                   )
15 and FIA CARD SERVICES, N.A.,                   )  Date:  April 4, 2014
                                                  )  Time:  9:00 a.m.
16              Defendants.                        )  Judge: Hon. Edward J. Davila
                                                  )
17                                                )
18 ─────────────────────────────────────         )  Case No. 5:12-cv-04009-EJD (PSG)
                                                  )
19 CAROL DUKE AND JACK POSTER,                    )
   on behalf of themselves and all others         )
20 similarly situated,                            )
                                                  )
21              Plaintiffs,                        )
                                                  )
22 v.                                             )
                                                  )
23 BANK OF AMERICA, N.A.; BANK OF                 )
   AMERICA CORPORATION;                           )
24 AND FIA CARD SERVICES, N.A.,                   )
                                                  )
25              Defendants.                        )
                                                  )
26
27
28
                                  1

JAMES KIRBY AND SUSAN HOUSE represent to the court they are Class Members and have submitted claims. A copy of their claim forms with (address and phone nos.) submitted by mail are attached as Exhibit A.

## I. INTRODUCTION

There are certain laudatory aspects of this settlement. Class Counsel argue that the gross settlement value of $32,083,905.00 is the largest settlement achieved in a case brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the"TCPA"). Class Counsel have made their motion for attorneys' fees available on the settlement website thirty days prior to the objection deadline, in keeping with the approach recommended in *In re Mercury Interactive Corp. Sec. Litig.*,618 F.3d 988 (9th Cir. 2010). The notice also informs class members of claims being released, and even informs them that for non-emergency calls or text messages made using an automatic telephone dialing system and/or an artificial prerecorded voice, without the prior express consent of the called party. the TCPA provides for damages of $500 per call, or $1,500 for willful violations.

But the rosy picture painted by Class Counsel ignores the real problems with the settlement. Much of the $32,083,905.00 settlement fund will pay attorneys' fees, administrative charges, and unnamed cy pres recipients, rather than Class Members. The attorneys' fees – which are based on the gross settlement value rather than the monetary compensation that will class members – are high as a percentage of the fund, and excessively so in light of the lodestar multiplier requested. The fees requested seem inappropriate given the minimal compensation being offered to individual class members. Through this settlement, statutory damages of between $500 and $1500 per call are being compromised for pennies on the dollar. Given the poor result, the high fees and high lodestar multiplier are unwarranted.

2

### A. The compensation offered to class member is too low

As described in the Detailed Notice, under 47 U.S.C. §227(b)(3), plaintiffs are entitled to treble damages, or up to $1,500 for knowing or willful violations, and up to $500 for negligent violations. With an individual subject to many non-consensual calls, text messages or fax transmissions, potential damages are significant. As the records are all electronic, violations of the TCPA are easy to prove.

Despite the ease of proof and large penalties provided for by the TCPA, the settlement proposes to award individual class members a mere $20 to $40 (or $20 each for all mortgage related call or all credit card calls). This is too low. Other class action cases alleging violations of the TCPA have entitled class members to recoveries more in keeping with the damages provided for under the TCPA. In *Samantha Ellison v. Steve Madden Ltd.*, case number 2:11-cv-05935, in the U.S. District Court for the Central District of California, according to the judge's minute order, every class member submitting a valid claim would be eligible to receive $150, unless the total claims exceeded $10 million, in which case each class member would receive a smaller amount. Likewise in *Kramer v. Autobytel Inc.*, et al, Case Number 4:10-cv-02722, Northern District of California, Judge Claudia Wilken gave preliminary approval to a settlement under which class members would receive payments of up to $100 each. The settlement of $20 to $40 per class member provided for here seems woefully inadequate in light of these awards.

The settlement also seems too low in light of the harassing nature of the calls complained of in the complaints. The calls that form the subject of this lawsuit are not just non-consensual marketing calls, but were instead particularly harassing calls aimed at debt collection. As noted in the *Ramirez* Complaint, when "Mr. and Mrs. Ramirez fell behind on their mortgage, BANA began a campaign of harassment by telephone to collect on the missed payments. BANA would call their home and Mrs.

3

1   Ramirez' personal cell phone in sequence at multiple times per day." Ramirez Complaint, ¶ 7, page. 3.

2   This suggests that many of the Class Members did not receive one or two calls, but instead suffered

3   repeated harassing calls.  Each individual claimant could be entitled to substantial compensation under

4   the TCPA – which establishes penalties for each call.

5

6           The Defendants' size, and the degree to which the settlement would penalize the bank, should

7   also be considered in evaluating the fairness of the settlement.  The Ramirez Complaint noted that

8   according to the most recent financial report, Bank of America was the largest mortgage loan servicer in

9   the United States, servicing 13.4 million loans.  On its website, the parent company notes:

10

11          Bank of America is one of the world's largest financial institutions, serving
            individual consumers, small- and middle-market businesses and large
12          corporations with a full range of banking, investing, asset management and other
            financial and risk management products and services. We serve approximately 52
13          million consumer and small business relationships with approximately 5,400 retail
            banking offices and approximately 16,300 ATMs and award-winning online
14          banking with 30 million active users. Bank of America is among the world's
            leading wealth management companies and is a global leader in corporate and
15          investment banking and trading across a broad range of asset classes, serving
            corporations, governments, institutions and individuals around the world.
16

17  Bank of America Corporate Profile, *available at* http://investor.bankofamerica.com/

18  phoenix.zhtml?c=71595&p=irol-homeprofile#fbid=Hbv9GeJ9xUC.

19

20          For such a large company, a $32 million settlement is pocket change.  But not that pocket change

21  for the bank should translate into pennies on the dollar for class members subjected to the harassing calls

22  giving rise to this litigation.

23  **B.  *The injunctive relief does not benefit the class***

24

25          Class Counsel are proud of the changes Bank of America has agreed to implement to its policies

26  regarding unsolicited calls to clients.  As noted in the attorneys' fee motion:

27          [T]he primary focus of the Settlement is Bank of America's prospective practice
            changes. Specifically, Bank of America has developed and  implemented
28          significant enhancements to its servicing systems which are designed to prevent

                                                    4

1    the calling of a cell phone unless a loan servicing record is systematically coded
2    to reflect the borrower's prior express consent to call his/her cell phone.

3    Plaintiffs' Motion for Attorneys' Fees ("Fee Motion"), page 3.

4    Although these practice changes are salutary, they don't benefit the class.  These are prospective

5    changes that will benefit Bank of America's current customers and clients, but will not benefit former

6    mortgage holders who have possibly already lost their homes in foreclosure, or credit card customers

7    who fell behind on their payments, received harassing phone calls, and may have had their accounts

8    closed.  Injunctive relief that benefits other people – including current customers – should not be

9    considered a benefit the class because "[t]he fairness of the settlement must be evaluated primarily on

10   how it compensates class members—not on whether it provides relief to other people." *In re Dry Max

11   Pampers Litigation*, 724 F.3d 713, 720 (6th Cir. 2013) (*quoting Synfuel Techs., Inc. v. DHL Express

12   (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).  The court should remember that the period covered by

13   this litigation includes the great economic crisis of 2008, which affected millions of consumers, many of

14   whom lost their homes.  Changing Bank of America's practices is a salutary goal, but these practice

15   changes should not be approved in lieu of real compensation to the injured individuals in the class.

### C.  The Attorneys' Fees Requested are Too High

Class Counsel's contingent fee request of 25% of the settlement is excessive.  Although fee

awards of 25% may be accepted in the Ninth Circuit, such fees are not appropriate in all circumstances.

Attorney fee percentage awards in large class actions show an inverse relationship to the size of the

award. *See Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards,*

7  J. Empirical L. Stud. 811 (2010).  For settlements over $30 million, the mean percentage award

nationwide is only 22.3%, less than the fee percentage sought by Class Counsel . *Id.*

Class Counsel are requesting attorneys' fees and costs of $8,020,976.  After subtracting class

counsel's expenses of $64,365.14, the attorneys' fees requested are $7,956,610.86.  This number should

5

1    be evaluated in both the benefit achieved for the class and in light of the hours spent on the litigation.

2    Class counsel claim to have devoted 2560.70 hours to litigation . Dividing the total fees by the number

3    of hours, yields average hourly compensation of $3,107.20. This is far too high.

4

5         Analysis of the lodestar multiplier requested by Class Counsel underscores that the attorneys'

6    fees requested are too high.  Review of the lodestar provides an important check on excessive fees.  A

7    court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the

8    reasonableness of a percentage figure." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 & n.5 (9th

9    Cir. 2002).  Here, Class Counsel are requesting a lodestar multiplier of 5.7.  This is an extremely high

10   lodestar, particularly in a case where the compensation recovered for the class is so small relative to the

11   damages alleged.  The authorities Class Counsel cite in their fee motion highlight the unreasonable

12   nature of the fee request.  Class Counsel cite to *Vizcaino* to support the high multiplier, requested

13   although the multiplier counsel seek here is much higher than that approved in *Vizcaino*.  The multiplier

14   approved in Vizcaino was only 3.65 – much less than the 5.7 sought here. *Id.*, at 1052-1054  (finding

15   most multipliers ranged from 1.0 to 4.0).

16

17         As Class Counsel point out in their fee motion, courts consider several factors in determining

18   appropriate attorneys' fees.  Factors a court may consider include: (1) the results achieved; (2) the risk of

19   litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5)

20   awards made in similar cases.  Fee Motion, page 11, *citing Vizcaino*, 290 F.3d at 1048-1050 *and In re*

21   *Omnivision*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). Objectors do not agree, however, these

22   favors support the large fees sought.  The results the attorneys achieved for the class are low in light of

23   the significant statutory damages provided for under the TCPA.  Given this result, a high lodestar

24   multiplier is not warranted.

25

26

27

28

6

### D. *The payment procedures elevate Class Counsel's interests over those of the class*

Under Section 7.04 of the Settlement Agreement, Class Counsel will be paid ten days after the entry of the Final Approval Order and the order approving fees. Class Members, however, will only receive their payment thirty days after the "Effective Date", which is defined as either thirty days after entry of the Final Judgment approving the Settlement if no appeal or request for rehearing is filed, or, if an appeal is filed, then five days after the appellate proceedings have been terminated. This provision enables the lawyers to be paid before the case has been concluded, and before Class Members are paid. This so-called quick pay provision is an affront to Class Members and shows Class Counsel is putting their own interests in front of those of their clients. This provision disincentives Class Counsel from conscientiously attending to the claims administration and funds distribution process – and divorces Class Counsel's interest from those of the class. The court should not allow this. The attorneys should receive their fees when Class Members get paid.

## II. Joinder in Other Objections

These objectors join in and adopt all other objections or portions thereof not inconsistent with the above.

///

7

## III. Conclusions

For the foregoing reasons and all others at oral argument, these objectors request that the court sustain their objections enter such Orders as are necessary and just to alleviate the inherent unfairness, inadequacies and unreasonableness of the Settlement.

LAW OFFICES OF DARRELL PALMER PC

Dated: March 21, 2014          By: _____

Joseph Darrell Palmer [1]

Attorney **for JAMES KIRBY AND SUSAN HOUSE**

### CERTIFICATE OF SERVICE

I certify that on March 21, 2014, I mailed the foregoing document by First-Class Mail, postage prepaid, to the following:

*Rose v. Bank of Am. Corp.,*
Case No. 11-cv-02390-EJD (N.D. Cal.)
Clerk of the Court                                    Lieff Cabraser Heimann & Bernstein, LLP
U.S. District Court NDCA                          Embarcadero Center West
280 South 1st Street                                 275 Battery Street, 29th Floor
San Jose, CA 95113                                  San Francisco, CA 94111

By: _____
Joseph Darrell Palmer

---

[1] The court should allocate time for the usual personal onslaught against objector lawyers. However the court should note this objection is well written and specifically aimed at real issues in the proposed settlement. Class counsel should limit their response to the arguments presented. Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, House and Kirby are willing to stipulate to an injunction prohibiting themselves and their attorneys from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to a perceived objector blackmail problem). (This is also the proposal used by Center for Class Action Fairness.)

8

# EXHIBIT A

Bank of America TCPA Settlement
Claims Administrator
PO Box 3410
Portland OR 97208-3410

| | |
|---|---|
| Toll Free Number: | 1-877-919-9186 |
| Website: | www.BOATCPASettlement.com |
| Email: | info@BOATCPASettlement.com |
| Objection/Exclusion Deadline: | March 21, 2014 |
| Settlement Fairness Hearing: | April 4, 2014 |
| Deadline to File a Claim: | March 21, 2014 |

## BANK OF AMERICA TCPA SETTLEMENT CLAIM FORM

Settlement Awards shall be made to eligible Settlement Class Members on a claims-made basis. Each member of the Settlement Class shall be entitled to make a Claim for a Settlement Award. Any Settlement Class Member shall be entitled to make one claim each for any Mortgage Calls and one claim for Credit Card Calls or Credit Card Texts. (For example, a person who received Mortgage Calls and Credit Card Calls may make two claim selections by checking the appropriate box in Part II and Part III of this claim.) To make a claim, Settlement Class Members must complete and submit a claim by March 21, 2014.

### PART I:   CLAIMANT IDENTIFICATION:

First Name: `J A M E S`

Last Name: `K I R B Y`

Address 1 (street name and number): `6 3 0   F A I R W A Y   A V E   N E`

Address 2 (apartment, unit or box number): ` `

City: `F O R T   W A L T O N   B E A C H`

State: `F L`

Zip Code: `3 2 5 4 7`

Foreign Country (only if not USA): ` `

Optional Telephone Number (home): `8 5 0 - 8 6 2 - 7 1 3 2`

Email address: `R I P C N O V 9 T H G R O U P . C O M`

Cell phone number at which you received one or more non-emergency mortgage or credit card default servicing calls using an automatic telephone dialing system and/or an artificial prerecorded voice ("Automatic Calls") or one or more non-emergency default servicing text messages ("Automatic Texts") without your prior express consent:

`8 5 0 - 2 1 7 - 1 6 1 6`

Unique Identifier
Please enter the 13 digit unique identifier published in the postcard notice or email notice that you received.
If you did not receive a notice, or cannot locate the 13 digit unique identifier, you may leave this field blank.

`8 1 6 8 0 7 1 2 5 7 9 6 7`

**PART II:**    **CLAIM TYPE: AUTOMATIC CREDIT CARD TEXTS OR CALLS:**

If you received one or more Automatic Calls or Texts regarding a Bank of America Credit Card Account, you can make a claim for <u>either</u> Automatic Credit Card Calls <u>or</u> Automatic Credit Card Texts, but not both, by checking the appropriate box below:

☒ Received one or more **Automatic Calls** regarding a Bank of America Credit Card Account between May 16, 2007, and January 31, 2013; **OR**

☐ Received one or more **Automatic Texts** from Bank of America regarding a Bank of America Credit Card Account between February 22, 2009, and December 31, 2010.

**Note:** You cannot make a claim for both **Automatic Credit Card Texts** and **Automatic Credit Card Calls**

**PART III:**    **CLAIM TYPE: AUTOMATIC MORTGAGE CALLS:**

If you received one or more Automatic Calls regarding a Bank of America Residential Mortgage Loan Account, you can make a claim for Automatic Mortgage Calls by checking the box below:

☐ Received one or more Automatic Calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account between August 30, 2007 and January 31, 2013.

**PART IV:**    **CERTIFICATION:**

By submitting this claim form, I certify that the foregoing information supplied by the undersigned is true and correct.

_____
Signature of Claimant

JAMES H. KIRBY III
Print Name of Claimant

Date ☐0 ☐3 – ☐2 ☐1 – ☐1 ☐4
     MM      DD      YY

Bank of America TCPA Settlement
Claims Administrator
PO Box 3410
Portland OR 97208-3410

Toll Free Number:                    1-877-919-9186
Website:              www.BOATCPASettlement.com
Email:               info@BOATCPASettlement.com
Objection/Exclusion Deadline:        March 21, 2014
Settlement Fairness Hearing:         April 4, 2014
Deadline to File a Claim:            March 21, 2014

## BANK OF AMERICA TCPA SETTLEMENT CLAIM FORM

Settlement Awards shall be made to eligible Settlement Class Members on a claims-made basis. Each member of the Settlement Class shall be entitled to make a Claim for a Settlement Award. Any Settlement Class Member shall be entitled to make one claim each for any Mortgage Calls and one claim for Credit Card Calls or Credit Card Texts. (For example, a person who received Mortgage Calls and Credit Card Calls may make two claim selections by checking the appropriate box in Part II and Part III of this claim.) To make a claim, Settlement Class Members must complete and submit a claim by March 21, 2014.

**PART I:      CLAIMANT IDENTIFICATION:**

First Name
`SUSAN`

Last Name
`HOUSE`

Address 1 (street name and number)
`4436 C LUBBOCK DRIVE`

Address 2 (apartment, unit or box number)

City
`SIMI VALLEY`

State
`CA`

Zip Code
`93063`

Foreign Country (only if not USA)

Optional Telephone Number (home)
`805 - 915 - 8864`

Email address
`dochousemom@gmail.com`

Cell phone number at which you received one or more non-emergency mortgage or credit card default servicing calls using an automatic telephone dialing system and/or an artificial prerecorded voice ("Automatic Calls") or one or more non-emergency default servicing text messages ("Automatic Texts") without your prior express consent:
`805 - 915 - 8864`

Unique Identifier
Please enter the 13 digit unique identifier published in the postcard notice or email notice that you received.
If you did not receive a notice, or cannot locate the 13 digit unique identifier, you may leave this field blank.
`8168025467326`

**PART II:**     <u>CLAIM TYPE: AUTOMATIC CREDIT CARD TEXTS OR CALLS:</u>

If you received one or more Automatic Calls or Texts regarding a Bank of America Credit Card Account, you can make a claim for <u>either</u> Automatic Credit Card Calls <u>or</u> Automatic Credit Card Texts, but not both, by checking the appropriate box below:

☐     Received one or more **Automatic Calls** regarding a Bank of America Credit Card Account between May 16, 2007, and January 31, 2013; **OR**

☐     Received one or more **Automatic Texts** from Bank of America regarding a Bank of America Credit Card Account between February 22, 2009, and December 31, 2010.

**Note:** **You cannot make a claim for both Automatic Credit Card Texts and Automatic Credit Card Calls**

**PART III:**     <u>CLAIM TYPE: AUTOMATIC MORTGAGE CALLS:</u>

If you received one or more Automatic Calls regarding a Bank of America Residential Mortgage Loan Account, you can make a claim for Automatic Mortgage Calls by checking the box below:

☑     Received one or more Automatic Calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account between August 30, 2007 and January 31, 2013.

**PART IV:**     <u>CERTIFICATION:</u>

By submitting this claim form, I certify that the foregoing information supplied by the undersigned is true and correct.

_____
Signature of Claimant

**Susan House**
Print Name of Claimant

Date   **03** - **21** - **14**
       MM    DD    YY

DARRELL PALMER
2244 FARADAY AVE
CARLSBAD CA 92008

U.S. POSTAGE
$1.50
92110
Date of sale
03/21/14
06    2S00    APC
08282201

RECEIVED

MAR 2 6 2014

LIEFF, CABRASER HEIMANN
& BERNSTEIN

Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

94111333939 C016

Hello,                                                            Date: 02/05/2014

To: TCPA Settlement Claims Administrator,

Re. 8168069971500


I am sending this to Object to the settlement, Please remove me from your claim against B Of A as I am
filing my own against them as soon as I find the correct Attorney, $20.00 to $40.00 is not worth what I
had to go through.


Thank you

Jonathan Wills

114 N Shasta Ave


Copy to File

The Settlement Class includes all individuals who:

(1) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between August 30, 2007 and January 31, 2013 (Mortgage Calls);

or

(2) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between May 16, 2007, and January 31, 2013 (Credit Card Calls);

or

(3) received one or more non-emergency, default servicing text messages from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between February 22, 2009, and December 31, 2010 (Credit Card Texts). Those persons who also received a Credit Card Call may make only one claim for either a Credit Card Call or Credit Card Text.

PRESORTED FIRST CLASS MAIL AUTO U.S. POSTAGE PAID PORTLAND, OR PERMIT NO. 2882

Bank of America TCPA Settlement Claims Administrator
PO Box 3410
Portland, OR 97208-3410

## Important notice about a Class Action Settlement.



8168069971500
JONATHAN E WILLS
114 NORTH SHASTA AVENUE
EAGLE POINT, OR 97524-9042

71132
176
206



**If you received a non-emergency mortgage or credit card default servicing call or text on your cellular telephone from Bank of America through the use of an automatic telephone dialing system and/or a prerecorded voice, you could receive a payment from a class action settlement.**

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

A $32,083,905 Settlement has been reached in a class action lawsuit claiming that Bank of America unlawfully used an automatic telephone dialing system and/or an artificial prerecorded voice to call or text cell phones without the prior express consent of the recipients. Bank of America denies that it did anything wrong and the Court has not decided who is right.

**Who's included?** Bank of America's records show you are a member of the Settlement Class. The exact definition of who is included in the Class is on the reverse side of this notice.

**What are the Settlement terms?** A Settlement Fund of $32,083,905 has been established to pay valid claims, attorney fees, service awards, costs, expenses and settlement administration. Additionally, Bank of America has enhanced its business practices to ensure that a borrower has provided consent before being called on a cell phone and that the Bank's loan servicing record reflects the borrower's prior express consent to call his/her cell phone.

**How can I get a payment?** To get a payment you must submit a claim **using this 13 digit, unique identifier:** 8168007662997. You can submit your claim online, by mail or by calling the toll-free number. It is estimated that payments will be between $20 and $40 per claim and each Class Member may be eligible to file up to two Claims. The final cash payment amount will depend on the total number of valid and timely claims filed by all Class Members. The claim deadline is **March 21, 2014.**

**Your other options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **March 21, 2014.** If you do not exclude yourself, you will release your claims against Bank of America. You may object to the Settlement by **March 21, 2014.** The Detailed Notice available on the website explains how to exclude yourself or object. The Court will hold a Hearing on April 4, 2014 to consider whether to approve the Settlement and a request for attorneys' fees of up to $8,020,976 and service payments of $2,000 each to the seven Class Representatives. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call or visit the website.

**www.BOATCPASettlement.com • 1-877-919-9186**

3/9/14

Please accept this letter as an official ~~objection~~ *exclusion* to the proposed Settlement in *Rose v. Bank of Am. Corp.,* Case No. 11-cv-02390-EJD (N.D. Cal.). We Doretha and Richard Pengel are requesting to be excluded from the Settlement. We do not believe that the settlement amount is fair and reasonable. Furthermore, it does not adequately compensate us given the harassment we encountered by Bank of America while awaiting a modification they deliberately delayed for 1 year. We / Doretha and Richard Pengel will not attend the fairness hearing but all information pertaining to the case should be sent to the counsel Lieff Cabrases Heimann & Bernstein,LLP handling the care. We can be reached at address 7 Marion Street Chester ,NY 10918,email doretha408@gmail.com, or telephone numbers (646)319-9483,(646)797-9051 for further question comments or concerns. Thank you for your time in this matter.

Doretha and Richard Pengel

RECEIVED

2014 MAR ...

CLERK ...

The Settlement Class includes all individuals who:

(1) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Residential Mortgage Loan Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between August 30, 2007 and January 31, 2013 (Mortgage Calls); or

(2) received one or more non-emergency, default servicing telephone calls from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between May 16, 2007, and January 31, 2013 (Credit Card Calls); or

(3) received one or more non-emergency, default servicing text messages from Bank of America regarding a Bank of America Credit Card Account to a cellular telephone through the use of an automatic telephone dialing system and/or an artificial or prerecorded voice between February 22, 2009, and December 31, 2010 (Credit Card Texts). Those persons who also received a Credit Card Call may make only one claim for either a Credit Card Call or Credit Card Text.

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
PORTLAND, OR
PERMIT NO. 2882

Bank of America TCPA Settlement Claims Administrator
PO Box 3410
Portland, OR 97208-3410

**Important notice about a Class Action Settlement.**

8168010607891
DORETHA F SHAW PENGEL
RICHARD A PENGEL
7 MARION STREET
CHESTER, NY 10918-8205

53972
102
127

**If you received a non-emergency mortgage or credit card default servicing call or text on your cellular phone from Bank of America through 04/17/14, you could receive a payment from a class action settlement.**

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

A $32,083,905 Settlement has been reached in a class action lawsuit claiming that Bank of America unlawfully used an automatic telephone dialing system and/or an artificial prerecorded voice to call or text cell phones without the prior express consent of the recipients. Bank of America denies that it did anything wrong and the Court has not decided who is right.

**Who's included?** Bank of America's records show you are a member of the Settlement Class. The exact definition of who is included in the Class is on the reverse side of this notice.

**What are the Settlement terms?** A Settlement Fund of $32,083,905 has been established to pay valid claims, attorney fees, service awards, costs, expenses and settlement administration. Additionally, Bank of America has enhanced its business practices to ensure that a borrower has provided consent before being called on a cell phone and that the Bank's loan servicing record reflects the borrower's prior express consent to call his/her cell phone.

**How can I get a payment?** To get a payment you must submit a claim using this 13 digit, unique

Identifier: 8168010607891. You can submit your claim online, by mail or by calling the toll-free number. It is estimated that payments will be between $20 and $40 per claim and each Class Member may be eligible to file up to two Claims. The final cash payment amount will depend on the total number of valid and timely claims filed by all Class Members. The claim deadline is **March 21, 2014.**

**Your other options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **March 21, 2014.** If you do not exclude yourself, you will release your claims against Bank of America. You may object to the Settlement by **March 21, 2014.** The Detailed Notice available on the website explains how to exclude yourself or object. The Court will hold a Hearing on April 4, 2014 to consider whether to approve the Settlement and a request for attorneys' fees of up to $8,020,976 and service payments of $2,000 each to the seven Class Representatives. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call or visit the website.

**www.BOATCPASettlement.com • 1-877-919-9186**



Jonathan Wills
114 N Shasta Ave
Eagle Point, OR 97524

MEDFORD OR

05 FEB 2014   PM 1 L

USA
Freedom
FOREVER

Bank of America TCPA Settlement
Claims Administrator
PO Box 3410
Portland, OR 97208-3410

97208$3410

Constance Folsom Smith
340 Meadows Drive
Loganville, GA 30052
March 01, 2014


Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

Dear Attorneys – at- Law,

I am a member of the BOATCPASettlement class action lawsuit, but I do not think the settlement is fair.

Bank of America financed my mortgage at the time of my home purchase from September 2002 until the mortgage was bought by a nonprofit organization that helps single mothers about 2011. I have spent countless hours fighting Bank of America to have them properly manage my mortgage including asking them to not call me and leave sensitive messages on my cell phone, calls on the job, calls on Sunday, calls late at night. Had this nonprofit organization not purchased my mortgage, I would have lost my home although Bank of America refused to maintain their part of agreements. Yet, eventually after a couple of years, I have still had to move out of my home because the help came too late.

Having an Advantage account with BOA, I also had a Bank of America credit card. I was considered a valued and great customer until I became sick and unable to maintain payments. At that point, BOA became rude and ruthless regarding payment on their card. They called my cell number even after I had changed phone numbers and did not give them my new number. They called my job after I had asked them not to do so. They called weekends and late nights.

Although, I have rectified all of my accounts with BOA, I believe it is very unfair for the seven representatives to get large sum settlements, the attorneys to get large settlements, and the very people whose lives have been disrupted, disrespected, and disregarded only get a settlement that will probably be less than $100. If there were no class members, there would be no class lawsuit.

I have kept detailed journals of phone calls and conversations with BOA and would be willing to submit that data should it be decided that it is fitting to settle properly with the class members who have really been affected.

Please consider my request and provide a better settlement for the class members who have actually been affected.

Sincerely,

Constance Folsom Smith

Constance Folsom Smith
P. O. Box 775
Lawrenceville, GA 30046

Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

94111 133399

RECEIVED
MAR 27 2014
LIEFF CABRASER HEIMANN
& BERNSTEIN


Bank Swallow

LAWRENCEVILLE
MAR 2
FOREVER
USA
USPS

December 27, 2013
(732) 618 3911
Vicky Lombardo
8168056982960 Case Identifier
99 Ely Harmony Rd
Freehold, New Jersey  07728

*Rose v. Bank of Am. Corp.,*

Case No. 11-cv-02390-EJD (N.D. Cal.)
Clerk of the Court
U.S. District Court for the
Northern District of California
280 South 1st Street
San Jose, CA 95113

And to:

Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111


Gentlemen,

With regard to why I do not think this settlement is fair, it should be known that it was completely the fault of Bank of America that the events leading to these call on my behalf, commenced.  During a telephone inquiry regarding a loan modification, due to the fact that our interest rate was at 9.8%, the bank's representative told me that during a preliminary approval process the qualifying payment of my mortgage would be reduced. He also stated that effective for this payment due at the time, we would make three payments of a significantly less total than what was due. These monthly payments totaled $1662 approximately each month for the following three months. This amount would be approximately $1000 less than the scheduled monthly payment. After a lengthy discussion regarding home expenses, the bank representative authorized and scheduled the payments.

We were told that there would be paperwork to fill out that would be FedEx to me. While it did take nearly 10 weeks for this form to arrive the payments were made on schedule, and as according to the bank and their requested dollar value. All along this time, I kept my attorney abreast of the situation and he suggested we create a complete paper trail in the event the bank would try to foreclose for some unknown reason. I have at our disposal a record of every telephone conversation, every person spoken with, every piece of paper requested and dates and times of all telephone conversations.

Despite the incredibly lengthy time frame involved, nearly 18 months, a dunning notice was sent to me regarding the lack of complete payment monthly as well as telephone calls and certified letters. However, I was following the instructions of the bank's representative to the letter regarding the mortgage loan modification process. To make a very long story short once the threatening foreclosure calls and letters started to arrive, I paid the entire arrears to prevent this insanity from continuing. While the mortgage payments have been complete and up-to-date ever since and the mortgage was

Page | 1

sold last year I am still saddled with a 9.8% mortgage and a note on my credit record that says Bank of America reports delinquencies.

I have tried to refinance to the lowest rates available in the last six years which would save me nearly $1200 monthly but due to the black mark issued by Bank of America this remains quite improbable. I have retained the services of a credit improvement facility who communicates frequently with Bank of America to remove this negative comment however in the last 18 months every request has been met with a letter from Bank of America stating that they will research the issue but yet nothing has been done.

I find it almost farcical that despite the tens of thousands of dollars I have paid in interest on a house I owned for 34 years and will still need to pay off for another 26 years that I might get back up to $80 for my trouble and Bank of America is still held harmless and still continues unaffected.

At 60 years old I never plan to be a burden on society financially however given the approach to correcting this injustice, this may be inevitable

I feel this is completely within Bank of America's power to correct and moving forward would be a tremendous asset to me and my family

Sincerely,

Vicky Lombardo

Mrs. V. Lombardo
99 Ely Harmony Rd
Freehold, NJ 07728

RECEIVED

JAN 07 2014

LIEFF, CABRASER, HEIMANN
& BERNSTEIN

Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111

NJ METRO NJ 076



RECEIVED

JAN 0 9 2014

LIEFF CABRASER, HEIMANN
& BERNSTEIN

NIEVES RODRIGUEZ
7620 Port Orchard Ave
Las Vegas NV 89113

LAS VEGAS NV 890

07 JAN 2014 PM 4 L

Lief Cabraser Heimann & Bernstein LLP
Embarcadero Center West
275 Battery Street 29th Floor
San Francisco CA 94111

a note for you...

JANUARY 6, 2014

TO WHOM IT MAY CONCERN

I NIEVES RODRIGUEZ OBJECT
TO THE PROPOSED SETTLEMENT
IN ROSE VS BANK OF AMER. CORP,
CASE NO. 11-CV-02390-EJD
(N.D. CAL).

IT IS UNFAIR TO RECEIVE $20 TO
$40 FOR DAMAGES CAUSED
BY BANK OF AME. I WILL NOT
BE ABLE TO APPEAR AT THE HEARING

SINCERELY

NIEVES RODRIGUEZ
7620 PORT ORCHARD AVENUE
LAS VEGAS NV 89113-4023
TEL: 702 222 1401

Nieves Rodriguez

January 18, 2014


To Whom It May Concern,

I am writing to object to the proposed settlement in Rose v. Bank of Am. Corp., Case No. 11-cv-02390-EJD (N.D. Cal.).

I do not believe it is a fair settlement as I believe class members should be treated the same as the plaintiffs. I do not intend to appear at the fairness hearing, but wanted to express my objection.


Sincerely,

Lynn DeMoura
25 Martin Street
Rehoboth, MA 02769
774-565-5507



USA
FOREVER

LEFT CABRASER 400 944013366

21 JAN 2014 PM 3 L

Lieff Cabraser Heimann + Bernstein, LLP
Embarcadero Center West
275 Battery Street 24th Floor
San Francisco, CA 94111

94113366

Lynn Semaic
25 Martin St.
Rehoboth, MA 02769

RECEIVED

JAN 24 2014

LIEFF CABRASER HEIMANN
LIEFF & BERNSTEIN

To whom

Bank of America is in the business of loaning money. Bank of America Credit Card holders are in the business of borrowing money to buy things with BoA money. If CC holders cannot afford to pay, they should not borrow the money. BoA is in the business of collecting what customers agreed to pay and therefore should be allowed to collect their money. No one got threatened with bodily harm or injured. Repercussions exist for a reason. This lawsuit and many others like it are a waste of time and money. For this reason, I object to the lawsuit and the whiners who caused it. Knuckle up and pay BoA the money you owe them. I should sue you for pretending to help me with debt I acrued by my own choice.

Thank you and go Fuck yourself which you apparently already did by spending money you didn't have.

Sincerely,

Gregory Ralph Young (BSME)

