1   Douglas J. Campion, SBN #75381
    Email:  doug@djcampion.com
2   LAW OFFICE OF DOUGLAS J. CAMPION
    409 Camino Del Rio South, Suite 303
3   San Diego, California  92108
    Telephone: (619) 299-2091
4   Facsimile: (619) 858-0034

5
    LIEFF CABRASER HEIMANN
6   & BERNSTEIN, LLP
    Jonathan D. Selbin (State Bar No. 170222)
7   250 Hudson Street, 8th Floor
    New York, NY  10013
8   Telephone:  (212) 355-9500
    Facsimile:  (212) 355-9592
9
10  [Additional Counsel Appear on Signature Page]

11  *Attorneys for Plaintiffs and the Proposed Class*

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14

15  STEPHENIE ROSE, on behalf herself and       Case No. 5:11-cv-02390-EJD (PSG)
    all others similarly situated,
16                                              **PLAINTIFFS' CORRECTED RESPONSE**
                      Plaintiff,                **TO OBJECTIONS TO SETTLEMENT**
17
            v.
18
    BANK OF AMERICA CORPORATION,
19  and FIA CARD SERVICES, N.A.,

20                    Defendants.

21  CAROL DUKE AND JACK POSTER,
    on behalf of themselves and all others
22  similarly situated,

23                    Plaintiffs,

24          v.

25  BANK OF AMERICA, N.A.; BANK OF
    AMERICA CORPORATION;
26  AND FIA CARD SERVICES, N.A.,

27                    Defendants.

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................. 1

II.   The Overwhelmingly Positive Response to the Settlement Supports Final Approval.......................................................... 2

III.  The Serial Objectors Lack Credibility. ................................ 2

    A.   Darrell Palmer Is a Professional Objector Who Is Facing Disciplinary Charges from the California Bar for Submitting False Declarations in Support of Prior Objections. ............................ 3

    B.   Chris Bandas Is a Professional Objector Who Has Lodged Unfounded, Frivolous Objections to Enrich Himself. ............... 6

    C.   Other Serial Objectors.............................................. 8

IV.  The Objections Should Be Overruled on their Merits. .......................... 9

    A.   The $32,083,905  Settlement Fund is an Excellent Result for Class Members.......................................................... 9

    B.   The Practice Changes Are an Excellent Result for Class Members. ........ 11

    C.   The Requested Attorney Fee Award is Well-Supported Under Established Law. .................................................. 12

        1.   Objectors Demonstrate no Circumstances Justifying Departure from the 25% Benchmark. ............................ 12

        2.   Fee Awards are Calculated Based on the Gross Settlement Fund. .................................................. 15

        3.   The Timing of Plaintiffs' Counsel's Fee Award Is Proper. .......... 16

    D.   The Website Provided Sufficient Information. ........................ 16

    E.   The Requested Service Awards are Reasonable. ...................... 18

    F.   Basing Class Members' Awards  on the Precise Number of Calls Received Was Not Feasible. ...................................... 18

    G.   The Remaining Objections Provide no Basis to Decline to Approve the Settlement.................................................. 19

V.    CONCLUSION ................................................ 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) .................... 11, 14, 18

*Arthur v. Sallie Mae, Inc.*,
No. 10-cv-00198-JLR, 2012 U.S. Dist. LEXIS 132061 (W.D. Wash. Sept. 17, 2012)....... 10, 18

*Barnes v. FleetBoston Fin. Corp.*,
No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072
(D. Mass. Aug. 22, 2006)................................................................................................ 3

*Behrens v. Wometco Enter., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988),
aff'd, 899 F.2d 21 (11th Cir. 1990)................................................................................ 14

*Bellows v. NCO Financial Systems, Inc.*,
No. 07-CV-1413 W (AJB), 2009 U.S. Dist. LEXIS 273 (S.D. Cal. Jan 5, 2009) .............. 11, 14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)........................................................................................................ 15

*Central Railroad & Banking Co. v. Pettus*,
113 U.S. 116 (1885)........................................................................................................ 15

*Churchill Village, LLC v. Gen. Electric.*,
361 F.3d 566 (9th Cir. 2004)....................................................................................... 2, 16

*City of Greenville v. Syngenta*,
No.10-188, Rec. Doc. 320 (S.D. Ill. Sept. 13, 2012) ................................................... 6

*City of Roseville Empls. Ret. Sys. v. Orloff*,
2012 U.S. App. LEXIS 11512 (9th Cir. June 7, 2012) ................................................ 5

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992)....................................................................................... 2

*Conroy v. 3M Corp.*,
2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006)........................................... 7

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ....................................................................... 13

*Esslinger v. HSBC Bank*,
No.12-4549 (3rd Cir. April 16, 2013) .......................................................................... 5

*Gemelas v. Dannon Co.*,
No. 08-236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010)....................................... 3

*Gene & Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008)........................................................................................ 10

*Gonzalez v. Citigroup, Inc.*,
No. Civ. S-11-0795 LKK/GGH, 2011 U.S. Dist. LEXIS 135421 ................................ 10

*Gonzalez v. J.C. Penney Co., Inc.*,
No. 2:11-cv-00794-KJM-EFB, Dkt. No. 18 (E.D. Cal. Sept. 21, 2011)....................... 10

*Gonzalez v. JP Morgan Chase*,
No. 11-cv-00796-GEB-EFB, Dkt. No. 30 (E.D. Cal. Nov. 16, 2011)........................... 10

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3
4

*Grannan v. Alliant Law Group, P.C.,*
No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101
(N.D. Cal. Jan. 24, 2012) ..................................................................................................... 18

5

*Harper v. Credit Control Servs.,*
863 F. Supp. 2d 125 (D. Mass. 2012) ................................................................................. 10

6
7

*Heekin v. Anthem, Inc.,*
No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700
(S.D. Ind. Feb. 27, 2013).......................................................................................................5

8

*In re Activision Sec. Litig.,*
723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................... 13

9
10

*In re Apollo Group Secs. Litig.,*
No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622
(D. Ariz. Apr. 20, 2012)...................................................................................................... 12

11

*In re Cathode Ray Tube Antitrust Litig.,*
2012 WL 1319881 (N.D. Cal. Apr. 16, 2012) .......................................................................7

12

*In re Dell Sec. Litig.,*
No. A-06-CV-726-SS, Dkt. No. 342 (W.D. Tex. Jan. 11, 2011)...........................................5

13
14

*In re Discover Payment Prot. Plan Mktg. and Sales Practices Litig.,*
Case No. 1:10-cv-06994 ........................................................................................................7

15

*In re Flonase, Antitrust Litig.,*
291 F.R.D. 93 (E.D. Ps. 2003) ...............................................................................................6

16

*In re GIB LLC Cases,*
J.C.C.P. No. 4657 (Cal. Super. Ct.) .......................................................................................5

17
18

*In re Hydroxycut Mktg. & Sales Practices Litig.,*
No. 09-md-2087 BTM (KSC),
2013 U.S. Dist. LEXIS 133413 (S.D. Cal. Sept. 17, 2013) ......................................... 2, 6, 7, 8

19

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000)..................................................................................................9

20

*In re Merry-Go-Round Enterprises, Inc.,*
244 B.R. 327 (Bankr.D.Md. 2000) ...................................................................................... 13

21
22

*In re Oil Spill by Oil Rig Deepwater Horizon,*
MDL 2179, 2013 U.S. Dist. LEXIS 4595 (E.D. La. Jan. 11, 2013) .......................................5

23

*In re Omnivision Techs.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................................... 13, 14

24

*In re Rite Aid Corp. Sec. Litig.,*
146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................................... 13

25

*In re Rite Aid Corp. Sec. Litig.,*
362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................................... 13

26
27

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
2011 U.S. Dist. LEXIS 154288 (N.D. Cal. Dec. 27, 2011) .......................................... 4, 6, 16

28

*In re Trans Union Corp. Privacy Litig.,*
211 F.R.D. 328 (N.D. Ill. 2002)........................................................................................... 10

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Wal-Mart Wage and Hour Emp't Practices Litig.*,
2010 U.S. Dist. LEXIS 21466 (D. Nev. Mar. 8, 2010)...............................................7

4

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)...............................................12, 13, 14

5

*In re: Uponor Inc. F1807 Plumbing Fittings*,
No. 11-2247 (D. Minn. Sept. 11, 2012) ...............................................4

6

*Kagan v. Wachovia Sec., L.L.C.*,
No. 09-5337 SC, 2012 U.S. Dist. LEXIS 46372
(N.D. Cal. Apr. 2, 2012) ...............................................17

7

8

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)...............................................9

9

*Lopez v. Youngblood*,
No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289
(E.D. Cal. Sep. 1, 2011) ...............................................15

10

11

*Meyer v. Portfolio Recovery Associates*,
707 F.3d 1036 (9th Cir. 2012)...............................................9

12

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)...............................................9

13

*Parker v. Time Warner Entm't Co., L.P.*,
331 F.3d 13 (2d Cir. N.Y. 2003)...............................................10

14

*Perdue v. Kenny A*,
130 S. Ct. 1662 (2010)...............................................12

15

16

*Ralston v. Mortgage Investors Group, Inc.*,
2013 U.S. Dist. LEXIS 134960 (N.D. Cal. Sept. 19, 2013) ...............................................6, 14

17

*Rodriguez v. W. Pub. Corp.*,
563 F.3d 948 (9th Cir. 2009)...............................................16

18

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
2014 U.S. Dist. LEXIS 26002 (S.D. Fla. Feb. 28, 2014)...............................................8

19

*Salina v. NCO Fin. Syst., Inc.*,
No. 10-7496, Dkt. No. 44 (E.D. Pa. June 25, 2012) ...............................................10

20

21

*Satterfield v. Simon & Schuster, Inc.*,
No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) ...............................................18

22

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)...............................................15

23

*Steiner v. Am. Broad. Co.*,
248 Fed. Appx. 780 (9th Cir. 2007) ...............................................13

24

*Trustees v. Greenough*,
105 U.S. 527 (1882)...............................................15

25

26

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)...............................................13

27

*Warnick v. Dish Network Corp.*,
No. 11-cv-00615-MSK-CBS, Dkt. No. 14 (D. Colo. May 20, 2011)...............................................10

28

**TABLE OF AUTHORITIES**
(continued)

Page

**<u>STATUTES</u>**

47 U.S.C. § 227 .................................................................................................................. 1

**<u>RULES</u>**

Fed. R. Civ. P. 23, advisory committee note (2003) ...................................................... 16

Rule 23(e) ................................................................................................................ 16, 17

**<u>TREATISES</u>**

Newberg on Class Actions § 14:6 (4th Ed. 2002) ............................................... 12, 13, 14

1    I.        **INTRODUCTION**

2              After engaging in classwide discovery, contested motion practice, hard-fought, arm's

3    length settlement negotiations, including three full-day mediations before the Honorable Edward

4    A. Infante (Ret.), and confirmatory discovery, Class Counsel negotiated a Settlement with

5    Defendants Bank of America Corporation ("BAC"), Bank of America, N.A. ("BANA"), and FIA

6    Card Services, N.A. ("FIA") (together, "Bank of America") under which Bank of America will

7    pay $32,083,905 in cash into a non-reversionary Settlement Fund.  If final approval is granted, the

8    net proceeds of the Settlement Fund will be distributed *pro rata* to every claimant; no money will

9    revert back to Bank of America.  Bank of America has also instituted prospective practice

10   changes designed to protect Settlement Class Members from receiving automated calls in the

11   future.  The Settlement is an excellent result—the largest cash settlement in the 22-year history of

12   the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

13             At total of 227,701 Class Members have filed claims demonstrating their support for the

14   Settlement.  The 128,952 Claimants who received both mortgage calls and credit card calls and/or

15   texts will receive between $110 and $120 each.  The remaining 98,749 Claimants who received

16   only mortgage call or credit card calls and/or texts will receive between $55 and $60 each.

17             In contrast only 16 objected to the Settlement.[1]  That is, over 14,231 times as many Class

18   Members have chosen to participate in the Settlement and accept its benefits than have decided to

19   object, demonstrating both that the overwhelming majority of the Class approves of the

20   Settlement and that the Settlement is fair, reasonable, and adequate.

21             Notably, of the 16 objections, two were filed by well-known "professional" objectors—

22   Joseph Darrell Palmer and Chris Bandas—who repeatedly object to Class Settlements based not

23   upon the particular facts or circumstances of the case at bar but based upon a desire to obtain

24   more money for themselves—and thus lack credibility.  Mr. Palmer and Mr. Bandas have a

25   demonstrated history of jointly employing the "scheme" of presenting objections "for the

26   _____

27   [1] For purposes of this brief, Class Counsel include all communications received that do not
     unequivocally appear to be opt-outs as valid objections, even though several do not object to the
     terms of the settlement and one was postmarked a day after the objections deadline.  *See*
28   Supplemental Affidavit of Cameron R. Azari, Esq., Regarding Claims Administration ("Azari
     Decl."), Exh. A (compiling objections); *see also* Dkt. Nos. 75-85.

PLAINTIFFS' RESPONSE TO
OBJECTIONS TO SETTLEMENT
5:12-CV-04009-EJD (PSG)

1   improper purpose of obtaining a cash settlement in exchange for withdrawing the objections."

2   *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM (KSC), 2013 U.S. Dist.

3   LEXIS 133413, at *72 (S.D. Cal. Sept. 17, 2013).  The objections submitted by these professional

4   objectors are riddled with misunderstandings of the Settlement Agreement and basic class action

5   jurisprudence.  In their efforts to shoot first and aim later by making boilerplate objections that do

6   not apply to *this* Settlement, the professional objectors ignore the fact that Class Counsel obtained

7   an excellent result for the Class despite the very real risks of facing an adverse ruling at class

8   certification or on the merits.  The remaining objectors, several of which were filed by serial

9   objectors who have objected to other class action settlements, fail to state any valid reason for

10  declining to approve the Settlement as fair, reasonable, and adequate.

11      Plaintiffs respectfully submit that the objections should be overruled, and request that the

12  Court grant final approval to the Settlement.

13  **II.      The Overwhelmingly Positive Response to the Settlement Supports Final Approval.**

14      Class Members' reactions to a proposed settlement are a key factor in determining

15  whether the settlement is fair, adequate, and reasonable.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268,

16  1291 (9th Cir. 1992).  Courts often infer that a settlement is fair, adequate, and reasonable when

17  relatively few class members object to it.  *See, e.g., Churchill Village, LLC v. Gen. Electric.*, 361

18  F.3d 566, 577 (9th Cir. 2004) (affirming settlement approval where 45 of the approximately

19  90,000 notified class members objected and 500 opted out).

20      Here, Class Member response has been overwhelmingly positive.  Only 16 of the Class

21  Members who received the Court-ordered class notice objected.[2]  And, only 390 opted out.[3]

22  These scant numbers, particularly when compared with the much larger number of 227,701

23  claims, demonstrate broad, class-wide support for the Settlement.

24  **III.     The Serial Objectors Lack Credibility.**

25      Class Counsel recognize that objectors can provide genuine assistance to the parties, the

26  Court, and class members by identifying problems in a proposed settlement.  At times, however,

27  _____

28  [2] Azari Decl., ¶9.
    [3] *Id.*

"serial" or "professional" objectors file objections either to advance their own ideological agenda or to extract payments for themselves from the parties or counsel by threatening years of delay associated with unmeritorious settlement objections and appeals:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass. Aug. 22, 2006).  Accordingly, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first."  *Dennis v. Kellogg Co.,* No. 09-cv-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118, at *11 n.2 (S.D. Cal. Nov. 14, 2013).

Objectors' counsel, Darrell Palmer and Chris Bandas have widely and repeatedly been criticized as serial, professional, or otherwise vexatious objectors.  The Court should therefore give these objections little weight.

### A.   Darrell Palmer Is a Professional Objector Who Is Facing Disciplinary Charges from the California Bar for Submitting False Declarations in Support of Prior Objections.

Darrell Palmer, who represents objectors James Kirby and Susan House, submitted an objection to the Settlement.  Dkt. No. 81.  The objection fails to notify this Court of the fact that (1) Mr. Palmer is currently subject to disciplinary charges by the California State Bar for lying to the court in three separate sworn declarations in support of prior objections[4] and that (2) during

---

[4] Declaration of Jonathan D. Selbin in Support of Plaintiffs' Response to Objections to Settlement ("Selbin Decl."), Exh. A, *available at* http://members.calbar.ca.gov/courtDocs/12-O-16924.pdf (describing pending charges for Moral Turpitude and Misrepresentation in willful violation of California Business and Professions Code, Section 6106).  The courts also admonished Mr. Palmer for other conduct in addition to submitting false declarations. *Gemelas v. Dannon Co.,* No. 08-236, 2010 WL 3703811, at *1-2 (N.D. Ohio Aug. 31, 2010) (characterizing Mr. Palmer's

another recent objection of Mr. Palmer's to a TCPA class action settlement, Judge Robart admonished Mr. Palmer for his "flat out" false representations to the court and granted the plaintiffs' motion for revocation of Mr. Palmer's *pro hac vice* application.[5]  Indeed, this Court should be aware that Mr. Palmer was disbarred temporarily from the State Bars of California, Arizona, and Colorado because of a felony conviction—and has since been reprimanded by many courts.  Mr. Palmer has a significant track record of vexatious and bad faith litigation and appeals, as well as misrepresentations to the Court.  For example:

- In *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, Judge Illston held Mr. Palmer in contempt and imposed monetary sanctions[6]

- At the 15th Annual National Institute on Class Actions, Mr. Palmer characterized objecting to class actions as his "hobby" and admitted to accepting "a lot" of money to "sell appeals" over the preceding decade.[7]

- In *In re: Uponor Inc. F1807 Plumbing Fittings*, Judge Montgomery found "that the Palmer Objectors have evidenced bad faith and vexatious conduct…. [T]he Palmer Objectors appear to be represented by an attorney who is not entered an appearance in this case and who is believed to be a serial objector to other class action settlements. This attorney, Darrell Palmer, paid the appellate filing fee on behalf of the Palmer Objectors, and the documents filed on their behalf bear his California mailing address rather than the Texas address of the Palmer

---

clients as "serial objectors" and found the appeal to be "frivolous, unreasonable and in bad faith.") (Polster, J.).

[5] Selbin Decl., Exh. B (Transcript of Motion Hearing, No.10-198 (W.D. Wash. Sept. 14, 2012), at 16) (noting that "many of [Mr. Palmer's] motions since the motion to intervene have been rejected by the court, suggesting that the actions were to disrupt and delay, which is consistent with the fact that Mr. Palmer is a, and I'll use the phrase 'professional' not in any favorable sense, objector.")).

[6] *See* Order Re Motion for and Order to Show Cause, No.07-1827, Dkt. No. 8759 (N.D. Cal. Nov. 8, 2013).

[7] Selbin Decl., Exh. C at 59:3-16 & 61:16-21; *see also* Paul Karlsgodt, Notes From the 15th Annual National Institute on Class Actions (Oct. 17, 2011), *available at* http://classactionblawg.com/2011/10/17/notes-from-the-15th-annual-national-institute-on-class-actions/ (last visited on Mar. 31, 2014).

- 4 -

Objectors…. The Palmer Objectors' objections and subsequent appeal appear little more than dilatory tactics of questionable motivation."[8]

• In *Esslinger v. HSBC Bank*, the U.S. Third Circuit Court of Appeals allowed the appellant who was represented by Mr. Palmer to withdraw her appeal, but directed the Clerk of Court "to forward a copy of the Appellees' motion for sanctions and this order to the Attorney Discipline System of the State Bar of California for review."[9]

• In *In re GIB LLC Cases*, a previous objector who had been represented by Mr. Palmer withdrew her objection after she realized that Mr. Palmer had advanced objections that she did not authorize, agree with, or understand.[10]

*See also In re Oil Spill by Oil Rig Deepwater Horizon*, MDL 2179, 2013 U.S. Dist. LEXIS 4595, at *154 n.40 (E.D. La. Jan. 11, 2013) (noting that "Mr. Palmer has been deemed a 'serial objector'" with a history of "admitt[ed] . . . 'bad faith and vexatious conduct'"); *Heekin v. Anthem, Inc.*, 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013) (finding "bad faith and vexatious conduct on the part of . . . attorney Darrell Palmer" and noting his reputation as "a serial objector"); *In re Dell Sec. Litig.*, No. A-06-CV-726-SS, Dkt. No. 342 (W.D. Tex. Jan. 11, 2011) (describing Mr. Palmer's objection as "absurd" and showing "little respect for the intelligence of this Court."); *City of Roseville Empls. Ret. Sys. v. Orloff*, 2012 U.S. App. LEXIS 11512, at *7-8 (9th Cir. June 7, 2012) (finding Mr. Palmer's appeal of an award of attorneys' fees to be "meritless" and based on misapprehensions of the law).

Mr. Palmer previously worked with Objector Kirby to present an unsuccessful objection. *In re Oil Spill*, 295 F.R.D. 112, 153 (E.D. La. 2013) (finding that Mr. Kirby "appear[ed] to be unqualified to offer the opinions articulated" in support of his objection). Mr. Kirby's deposition

---

[8] *See* Memorandum Opinion and Order, No.11-2247, Dkt. No. 132 (D. Minn. Sept. 11, 2012), at 5-6; *see also Heekin v. Anthem, Inc.,* No. 1:05-cv-01908-TWP-TAB, 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013) (Mr. Palmer withdrew a *pro hac vice* application but continued to pay filing fees for the purportedly *pro se* objector).

[9] *See* Order, No.12-4549 (3rd Cir. April 16, 2013) [Doc. 003111229677].

[10] *See* Declaration of Bethany Caracuzzo, *In re GIB LLC Cases*, J.C.C.P. No. 4657(Oct. 22, 2013) (attached as Exhibit D to the Selbin Declaration).

1   in that case suggested that he did not have standing.  *See id.*[11]  In fact, in pursuit of his serial

2   objections, Mr. Palmer has frequently represented clients who lack standing, including his own

3   family members.  *See In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM

4   (KSC), 2013 U.S. Dist. LEXIS 133413, at *63-64 (S.D. Cal. Sept. 17, 2013) (striking an

5   objection submitted by Mr. Palmer for lack of standing).  The *Hydroxycut* court found it

6   "incredible" that the objector could have purportedly used the product at issue "multiple times a

7   day for three years and not know the name of the product or be able to describe the packaging,"

8   and found that the objector's credibility was further diminished by her years-long friendship with

9   Mr. Palmer.  *Id.*  In *In re: TFT-LCD (Flat-Panel) Antitrust Litig.*, No. M 07-1827 SI, Dkt. No.

10  7618, (N.D. Cal. Feb. 19, 2013), Mr. Palmer was sanctioned for failure to present the objectors—

11  one of whom was his wife, Alison Paul—for court-ordered depositions seeking to challenge their

12  standing.

13          Objector House also has objected to a class settlement at least once before.  *Ralston v.*

14  *Mortgage Investors Group, Inc.*, 2013 U.S. Dist. LEXIS 134960 (N.D. Cal. Sept. 19, 2013)

15  (withdrawing objection because it was untimely).[12]

16          Ms. Palmer's conduct, his admissions that he sold "a lot" of his appeals for his own

17  financial gain, and his clients' prior history of objections, demonstrate that the Court should give

18  Mr. Kirby and Ms. House's objection little or no consideration.

19          **B.      Chris Bandas Is a Professional Objector Who Has Lodged Unfounded,
                     Frivolous Objections to Enrich Himself.**

20

21          Chris Bandas, who assisted Objector Cassie Grimes Hampe in preparing and filing her

22  objection (Dkt. No. 80),[13] is also considered by Courts to be a professional objector.  This Court

23  ───────────────
    [11] For this and other reasons, Plaintiffs' counsel have attempted to serve Mr. Kirby and Ms.
    House with deposition subpoenas in this case, but Mr. Palmer has not confirmed that they will

24  appear.  Plaintiffs' counsel have not served deposition subpoenas on any of the other objectors.
    [12] Here, Plaintiffs' counsel did not receive Mr. Palmer's objection until five days past the

25  objection deadline, despite the fact that it was postmarked on March 21, 2014.  Mr. Palmer has
    previously objected to class settlements after the objection deadline and had his objections

26  stricken as untimely.  *In re Flonase,* 291 F.R.D. at 100 n.4; *City of Greenville v. Syngenta*, No.10-
    188, Rec. Doc. 320 (S.D. Ill. Sept. 13, 2012) (striking objection for failure to comply with the

27  filing requirements established by the district court).
    [13] While purportedly a *pro se* objector, Ms. Grimes states that she "obtained assistant [sic] from

28  an attorney in preparing and filing this objection.  That attorney is Christopher A. Bandas."

found that Mr. Bandas "routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube Antitrust Litig.*, 2012 WL 1319881, at *1 (N.D. Cal. Apr. 16, 2012).  Likewise, another court found that Mr. Bandas had submitted objections that were "not supported by law or the facts and are indeed meritless" and that he had "a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class." *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 2010 U.S. Dist. LEXIS 21466, at *16-17 (D. Nev. Mar. 8, 2010).  In yet another case, the court labeled his objections "unfounded" and "patently frivolous." *Conroy v. 3M Corp.*, 2006 U.S. Dist. LEXIS 96169, at *11-12 (N.D. Cal. Aug. 10, 2006).[14]

Mr. Bandas has a demonstrated history of acting as objector's counsel even when, like here, he is not counsel of record.  In *In re Hydroxycut Marketing and Sales Practices Litig.*, Chief Judge Moskowitz recently took Mr. Bandas to task for employing this same "scheme" of ghost-writing objections "for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections."  2013 U.S. Dist. LEXIS 133413, at *72.  The court held an evidentiary hearing and required the testimony of the objector and defense counsel.  *Id.* at *61.  Based on that testimony, the court found:

> Mr. Bandas said that he didn't care about changing one word of the settlement and that he filed the objections because it was a large settlement and Plaintiff's counsel stood to make millions of dollars. Mr. Bandas said that he was willing to wager that [the defendant] would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away - otherwise, he could hold the settlement process up for two to three years through the appeal process. . . .  Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away. Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made.

*Id.* at *70-71.

---

[14] *See also In re Discover Payment Prot. Plan Mktg. and Sales Practices Litig.*, Case No. 1:10-cv-06994 (E.D Pa.) (withdrawing appeal after the district court approved a settlement despite Mr. Bandas' objections).

In *Hydroxycut*, Mr. Bandas teamed with Mr. Palmer to act behind the scenes in demanding payment while Mr. Palmer, acting as counsel of record, claimed he was above such methods. *See id.* at *69 ("Mr. Palmer indicated that it was Mr. Bandas's 'show.'").  Mr. Bandas employed the same "scheme" in *Arthur v. Sallie Mae*, *Inc.*, No. 2:10-cv-00198-JLR (W.D. Wash.), by contacting plaintiffs' counsel to resolve Mr. Palmer's clients' objections. *See* Selbin Decl., ¶8. Given their joint involvement again in this case, the Court should view with skepticism Mr. Palmer's proffer that he will stipulate not to accept compensation in exchange for dismissing his objection. *See* Dkt. No. 81.

## C.   Other Serial Objectors.

Objector Michael Narkin (Dkt. No. 85) is a former attorney who resigned from the California state bar in the face of pending disciplinary charges for 16 counts of misconduct— including abandoning clients, misappropriating their money, and dishonesty—and is ineligible to practice law.[15]  Despite that status, Mr. Narkin established an internet-only law school and has been accused of fraud while operating that school.[16]  Mr. Narkin has continued to represent himself *pro se* in objections to class settlements. *Saccoccio v. JP Morgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 26002 (S.D. Fla. Feb. 28, 2014) (rejecting Mr. Narkin's boilerplate objections that recovery was too low and the attorneys' fees were too high).

Objector Erich Neumann (Dkt. No. 84) is an attorney who also objected previously—and unsuccessfully —to a class action settlement. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) (holding that Mr. Neumann's objection lacked merit and did not preclude final approval).

Based on their history, the Court should consider the objections of Mr. Palmer, Mr. Bandas (by proxy), Mr. Narkin, and Mr. Nuemann with extreme skepticism.  None of the objections they assert have any merit, and cannot justify denying approval of the exceptional Settlement that the Parties have reached in this case.

---

[15] *See* California State Bar, http://members.calbar.ca.gov/fal/Member/Detail/59793.

[16] *See, e.g.*, Howard Mintz, *Law Students Claim They've Been Had*, Mercury News (Aug. 9, 2004), *available at* http://www.lawschool.com/narkin.htm (attached as Exhibit E to the Selbin Declaration).

IV.    **The Objections Should Be Overruled on their Merits.**

    A.    **The $32,083,905  Settlement Fund is an Excellent Result for Class Members.**

      Several objectors argue without support or analysis that Class Members are not receiving enough money.  This argument amounts to nothing more than speculation "about what damages 'might have been' won" had Plaintiffs prevailed on the merits.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (settlement of only a fraction of potential recovery fair given nature of claims and facts of case).

      The plain terms of the TCPA allow for statutory damages of $500 per call ($1,500 for willful violations), but attempting to obtain anything approaching that amount for all class members on the merits would entail significant risk and delay.  First and foremost, Class Members face the factual defense of consent, as Bank of America argues that the majority of them provided their cell phone numbers to it either on credit applications or through subsequent dealings with Bank of America.  To recover the full statutory damages, Plaintiffs would need to convince the Court to adopt their view that the FCC has clarified that "prior express consent" can only being given during "the transaction that resulted in the debt owed"; *i.e.* during the opening of Class Members' Bank of America accounts.  The Court could instead have adopted Bank of America's view that consent may be given at any time and in any manner before the call was placed based on contractual language in its customer agreements stating "[w]here you have provided a cell phone number directly to us, or placed a cell phone call to us, *you consent and agree* to accept collection calls to your cell phone from us." *See, e.g.*, https://www.bankofamerica.com/deposits/resources/deposit-agreements.go (emphasis added).  If the Court adopted Bank of America's view, Class Members would also face a potential class certification problem.  Courts are divided as to whether such consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036, 1042 (9th Cir. 2012) (upholding class

1    certification) *with Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 328 (5th Cir. 2008)

2    (reversing class certification).

3          Moreover, at least some courts view awards of aggregate, statutory damages with

4    skepticism and either refuse to certify a class or reduce such awards—even after a plaintiff has

5    prevailed on the merits—on due process grounds.  *See, e.g., Parker v. Time Warner Entm't Co.,*

6    *L.P.*, 331 F.3d 13, 22 (2d Cir. N.Y. 2003) ("[T]he potential for a devastatingly large damages

7    award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff

8    class, may raise due process issues."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328,

9    350-351 (N.D. Ill. 2002) (declining to certify class where it "could result in statutory minimum

10   damages of over $19 billion, which is grossly disproportionate to any actual damage").

11         As serial objector Darrell Palmer has learned first-hand, TCPA violations are not, as he

12   now boldly claims, "easy to prove," particularly on a class basis.  After unsuccessfully objecting

13   the TCPA settlement in *Arthur v. Sallie Mae, Inc.*, No. 2:10-cv-00198-JLR (W.D. Wash.),

14   Mr. Palmer went on to bring his own unsuccessful TCPA actions, including one brought on

15   behalf of the objector, Judith Harper, who he represented in the *Sallie Mae* case.  These actions

16   were dismissed or compelled to arbitration, thereby providing *no* monetary recovery for Mr.

17   Palmer's clients or the classes they purported to represent.  *See, e.g., Harper v. Credit Control*

18   *Servs.*, 863 F. Supp. 2d 125, 127 (D. Mass. 2012) ("Because it would not be reasonable for a jury

19   to conclude from the record that CCS placed calls to Harper's cell phone in violation of the TCPA,

20   defendant's motion for summary judgment will be allowed."); *Gonzalez v. Citigroup, Inc*., No.

21   Civ. S-11-0795 LKK/GGH, 2011 U.S. Dist. LEXIS 135421, at *8 (compelling claims to

22   arbitration); *Gonzalez v. J.C. Penney Co., Inc*., No. 2:11-cv-00794-KJM-EFB, Dkt. No. 18 (E.D.

23   Cal. Sept. 21, 2011) (dismiss all claims with prejudice and imposing sanctions on plaintiff for

24   failure to comply with a prior court order); *Salina v. NCO Fin. Syst., Inc.*, No. 10-7496, Dkt. No.

25   44 (E.D. Pa. June 25, 2012) (voluntarily dismissing class action case without having obtained a

26   recovery for the class); *Warnick v. Dish Network Corp*., No. 11-cv-00615-MSK-CBS, Dkt. No.

27   14 (D. Colo. May 20, 2011) (same); *Gonzalez v. JP Morgan Chase*, No. 11-cv-00796-GEB-EFB,

28   Dkt. No. 30 (E.D. Cal. Nov. 16, 2011) (same).

1    Through the end of the claims period, 227,701 Class Members have made claims.[17]  Over

2    half of those Class Members—128,882—stand to receive between $110 and $120 each because

3    they received calls regarding a credit card and a mortgage account.[18]  The remaining Class

4    Members who received calls regarding only a credit card or a mortgage account stand to receive

5    between $55 and $60 each.[19]  Accordingly, the Settlement is in line with—and exceeds—other

6    TCPA case settlements.  *See, e.g., Bellows v. NCO Fin. Sys.,* No. 3:07-cv-01413-W-AJB, 2008

7    U.S. Dist. LEXIS 103525, at *12 (S.D. Cal. Dec. 2, 2008) (class members received $70 each);

8    *Adams v. AllianceOne Receivables Mgmt., Inc.,* No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137

9    (S.D. Cal. Sept. 28, 2012) (class members received $40 each).

10    Thus, objectors' subjective and speculative belief that this case could have settled for

11    "more" money is without merit.

12    ### B.    The Practice Changes Are an Excellent Result for Class Members.

13    Mr. Palmer argues without support or analysis that the required practice changes will not

14    benefit Class Members.  Dkt. No. 81.  Mr. Palmer offers no evidence for his assertion that

15    "prospective practice changes will only benefit Bank of America's current customers."  *See id.*

16    This is simply not true.  The prospective practices changes apply to *every* telephone number in

17    Bank of America's database, including numbers belonging to current customers, former

18    customers, and persons who were never Bank of America customers.  In other words, Bank of

19    America has developed and implemented significant enhancements to its servicing systems that

20    are designed to prevent it from calling *every* Class Member's cell phone unless a loan servicing

21    record has been systematically coded to reflect the prior express consent to call that number.

22    Accordingly, each one of the approximately 7,723,860 Class Members will benefit from the

23    Settlement.

---

27    [17] Azari Decl., ¶11.

28    [18] *Id.*; Selbin Decl., ¶7.
      [19] *Id.*

PLAINTIFFS' RESPONSE TO
OBJECTIONS TO SETTLEMENT
5:12-CV-04009-EJD (PSG)

C.      **The Requested Attorney Fee Award is Well-Supported Under Established Law.**

1.      **Objectors Demonstrate no Circumstances Justifying Departure from the 25% Benchmark.**

Several objectors argue that the requested attorneys' fee amount it too high.[20]  Mr. Bandas asserts that the attorneys' fees sought are "excessive" and incorrectly argues that applying a multiplier of 5.7 is improper under *Perdue v. Kenny A*, 130 S. Ct. 1662, 1669 (2010).  Dkt. No. 80.  But, the *Perdue* lodestar cross-check analysis only applies in the context of attorneys' fees awarded pursuant to federal fee-shifting statutes.  *See Perdue v. Kenny A*, 130 S. Ct. 1662, 1669 (2010) ("This case presents the question whether the calculation of an attorney's fee, under federal fee-shifting statutes, based on the "lodestar," *i.e.*, the number of hours worked multiplied by the prevailing hourly rates, may be increased due to superior performance and results.").  In such cases, the percentage-of-the-fund method does not apply.  Lodestar multipliers are not barred in common fund, non-statutory fee shifting cases, and are often used as part of the lodestar cross-check.  *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("[The] rationale for barring risk multipliers in statutory fee cases does not operate to bar risk multipliers in common fund cases."); *In re Apollo Group Secs. Litig.*, No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622, at *24 (D. Ariz. Apr. 20, 2012) ("The reasoning in *Perdue* has not been extended to common fund cases, and Ninth Circuit precedent distinguishes between common fund cases and statutory fee cases.").

There is an important policy reason behind choosing to apply the percentage-of-the-fund method, rather than the lodestar method, in common fund cases such as this one:

> Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the [percentage-of-the-fund] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fee the lawyer earns.  Thus, one of the primary advantages of the [percentage-of-the-fund] method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

---

[20] However, Objector Kaszuba argues the opposite and urges this Court to award $25 million in attorneys' fees to Class Counsel and $50,000 to each Class Representative.  Dkt. No. 82.

Newberg on Class Actions § 14:6 (4th Ed. 2002).  For this and other reasons, courts in the Ninth Circuit more often than not apply the percentage-of-the-fund method to calculate fees in common fund cases.[21]  Where the percentage-of-the-fund method is used, the court may elect to—or may choose not to—perform a lodestar "cross-check," and failure to apply a multiplier in such a cross-check may amount to an abuse of discretion.  *See In re Washington*, 19 F.3d at 1300-01 (noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and finding district court's failure to apply multiplier to lodestar calculation was abuse of discretion where the case was "fraught with risk and recovery was far from certain"); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (approving fee award of 25 percent of common fund, which resulted in a 3.65 multiplier on lodestar).  *See generally Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where multiplier was 6.85); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher").[22]  This is because the established practice in the private legal market is to reward attorneys for taking the risk of nonpayment by paying them a premium for successfully resolving contingency fee cases.  *See In re Washington*, 19 F.3d at 1299; *see also* Newberg on Class Actions § 14:6 (4th Ed. 2002).  "[I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of

---

[21] *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) ("[U]se of the percentage method in common fund cases appears to be dominant."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he primary basis of the fee award remains the percentage method."); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289, at *31 (E.D. Cal. Sept. 1, 2011) ("[W]hile the Court has discretion to use either a percentage of the fund or a lodestar approach in compensating class counsel . . . the percentage of the fund is the typical method of calculating class fund fees."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of recovery method in common fund cases).

[22] *See also, e.g., In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (40% award of $71.2 million fund; cross-check multiplier of 19.6); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (25% award of $193 million fund; multiplier of 4.5-8.5); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of $126,000,000 fund; multiplier of 6.96).

PLAINTIFFS' RESPONSE TO
OBJECTIONS TO SETTLEMENT
5:12-CV-04009-EJD (PSG)

1   recovering nothing." *In re Washington*, 19 F.3d at 1300 (quoting *Behrens v. Wometco Enter.,*

2   *Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)).

3        The bottom line is that Class Counsel seek a fee award that is below the Ninth Circuit's

4   benchmark for a "reasonable" fee, which is 25% of the common fund *plus* litigation costs.  Here,

5   Class Counsel seek 25% of the fund *inclusive* of litigation costs.  In most cases, the fees awarded

6   exceed the benchmark.  *Omnivision*, 559 F. Supp. 2d at 1047.  Objector Narkin argues that

7   awarding the 25% benchmark here would result in "unjust enrichment" to Class Counsel and

8   "shock the conscience."  Dkt. No. 85.  But, it is well-settled that the common fund doctrine,

9   which allows fees to be paid as a percentage of the fund, actually prevents unjust enrichment of

10  the *class members* at the expense of the *attorneys*.  Newberg on Class Actions § 14:6 (4th Ed.

11  2002); *In re Washington*, 19 F.3d at 1300 ("[T]hose who benefit in the creation of a fund should

12  share the wealth with the lawyers whose skill and effort helped create it.").

13       These objectors have pointed to no "special circumstances" justifying departure from the

14  benchmark here.  *See Ralston v. Mortgage Investors Group, Inc*., No. 5:08-cv-00536-JF (PSG),

15  2013 U.S. Dist. LEXIS 134960, at *16-18 (N.D. Cal. Sept. 19, 2013) (finding "no special

16  circumstances justifying departure from the twenty-five percent benchmark").  In fact, Class

17  Counsel's fee request is below the percentage awarded in similar TCPA cases that settled at

18  similar procedural postures.  *See, e.g., Bellows v. NCO Financial Systems, Inc*., No. 07-CV-1413

19  W (AJB), 2009 U.S. Dist. LEXIS 273, at *4-5 (S.D. Cal. Jan 5, 2009) (awarding 31.6% of

20  settlement fund in TCPA case that settled within a year of commencement and prior to class

21  certification); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG,

22  Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (awarding 30% of the settlement fund in a TCPA case

23  that settled prior to class certification).

24       In sum, Class Counsel seek a reasonable fee, inclusive of costs, of 25% of the total

25  settlement fund, which is less than the Ninth Circuit's benchmark for what constitutes a

26  reasonable fee.  The results achieved for the Class are remarkable, particularly given the risks that

27  a class would not get certified and/or that Plaintiffs would not prevail on the merits.  The lodestar

28  cross-check, if the Court elects to utilize one, reveals a multiplier that is in line with multipliers

1   generally applied in Ninth Circuit cases, and thus confirms the reasonableness of the fee.  The

2   objectors have not stated any valid reason for departing from the benchmark, instead urging the

3   Court to go against clear precedential authority.  The Court should decline to do so.

4   **2.      Fee Awards are Calculated Based on the Gross Settlement Fund.**

5          Mr. Bandas argues the notice and administration costs should not be taken into account in

6   using the percentage-of-the-fund method to calculate fees in common fund cases.  Dkt. No. 80.

7   In a common fund settlement such as this one, the percentage-of-the-fund method looks to the

8   total benefit achieved for the class, not to what class members are ultimately paid.  *Boeing Co. v.*

9   *Van Gemert*, 444 U.S. 472, 478 (1980) ("Since the decisions in *Trustees v. Greenough*, 105 U.S.

10  527 (1882), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), this Court has

11  recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of

12  persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a

13  whole.").  The "benefit" achieved for the class includes "costs (including class administrative

14  costs) and fees."  *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 U.S. Dist. LEXIS 99289,

15  at *32 (E.D. Cal. Sep. 1, 2011); *see also Staton v. Boeing Co.,* 327 F.3d 938, 975 (9th Cir. 2003)

16  (holding that, where the defendant pays the costs of notice to the class on top of the settlement

17  fund, "it is reasonable . . . to include that cost in a putative common fund benefiting the plaintiffs

18  for all purposes, including the calculation of attorneys' fees.").  This is because "the post-

19  settlement cost of providing notice to the class can reasonably be considered a benefit to the

20  class."  *Staton*, 327 F.3d at 975; *see also Dennis,* 2013 U.S. Dist. LEXIS 163118, at *15 (N.D.

21  Cal. 2013) (same).

22         Here, pursuant to the Court-approved notice and administration plan, the Settlement

23  Administrator among other things provided direct, individual notice through email or mail to

24  approximately 95% of the approximately 7,723,860 Class Members; issued publication notice;

25  established a Settlement Website and toll-free number claim-filing and Class Member inquiries;

26  and processed some 227,701 Class Member claims.[23]  Class Counsel did everything in their

27  power to ensure that settlement administration costs remained as low as possible, including by

28

---

[23] Azari Decl., ¶¶4-11.

1    obtaining bids from several potential settlement administrators.  This robust notice plan was

2    designed to reach as many Class Members as possible and to encourage them to make claims.  It

3    accordingly benefitted Class Members, and calculating attorneys' fees based on the total

4    Settlement Fund before deducting settlement costs is both jusified by sound policy

5    considerations and is mandated by Ninth Circuit law.

6    ### 3.    The Timing of Plaintiffs' Counsel's Fee Award Is Proper.

7        Mr. Palmer argues, without citing any authority, that distributing any attorneys' fee award

8    ten days after the entry of a Final Approval Order is improper.  Dkt. No. 81.  This feature of a

9    settlement is often referred to as a quick-pay provision.  As Mr. Palmer well knows, this provision

10   is designed to prevent objectors from holding a settlement hostage with frivolous objections and

11   appeals lodged solely to receive payment for themselves at the expense of the class.  No wonder

12   he finds it objectionable.  For this reason:  "With respect the 'quick pay' provisions, Federal

13   courts, including this Court and others in this District, routinely approve settlements that provide

14   for payment of attorneys' fees prior to final disposition in complex class actions."  *In re TFT-*

15   *LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 154288 (N.D. Cal. Dec. 27, 2011)

16   (collecting recent cases from this District and throughout the country).  The presence of a quick-

17   pay provision therefore does not weigh against settlement approval.

18   ### D.    The Website Provided Sufficient Information.

19       Objector Narkin argues that the Settlement Agreement did not detail the precise discovery,

20   proceedings, and procedures that led to the Settlement.  Dkt. No. 85.[24]  Rule 23(e) mandates only

21   that notice be made "in a reasonable manner" to the class.  The Ninth Circuit has determined that

22   notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to

23   alert those with adverse viewpoints to investigate and to come forward and be heard."  *Rodriguez*

24   *v. W. Pub. Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., L.L.C. v. GE*, 361

25   F.3d 566, 575 (9th Cir. 2004)).  Courts, however, caution against providing direct notice that is

26   "simply too long," instead urging parties to "provide an industry-standard short-form notice that

27

28   [24] Plaintiffs' counsel dispute Mr. Narkin's description of his call to their office and have since
     spoken with him on several occasions in an attempt to address his concerns.

1   directs them to the long-form notice for details."  *Kagan v. Wachovia Sec.*, *L.L.C.*, No. 09-5337

2   SC, 2012 U.S. Dist. LEXIS 46372, at *28 (N.D. Cal. Apr. 2, 2012) ("The Court is concerned that

3   few class members will read a fifteen-page, single-spaced Class Notice without having been

4   given some initial hint as to why they should bother.").  As important, the content must "be

5   couched in plain, easily understood language."  Fed. R. Civ. P. 23, advisory committee note

6   (2003).

7          Here, the direct notice provided Class Members with the following information: (1) the

8   name of the case and a general description of the claim; (2) a description of the Class; (3) the

9   amount of the Settlement Fund; (4) the estimated amount of individual Class Member payments;

10  (5) the requested attorneys' fees; (6) the requested service awards for the Class Representatives;

11  (7) the fact that, if there are remaining funds of $50,000 or less resulting from uncashed checks,

12  such funds will be donated to the Electronic Frontier Foundation; (8) Class Members' rights to

13  submit a Claim, to opt-out out of the Settlement, to object to the Settlement, or to do nothing, and

14  the consequences of exercising such rights; (9) the deadlines for taking actions such as making a

15  claim or opting out; (10) that Class Members release their claims unless they opt-out; and (11)

16  that Class Members may write to the Settlement Administrator, go to the Settlement Website, or

17  call the toll-free line for further information, to opt-out or object, to make a Claim, or to ask

18  questions.

19         The Class Notice itself need not have—nor should it have—provided every last detail

20  regarding the discovery, proceedings, and procedures that preceded the Settlement.  Instead, it

21  reasonably directed Class Members to other sources if they wanted more information, including

22  the Settlement Website.  Moreover, as a former attorney, Mr. Narkin knows that he can readily

23  access the respective dockets of the five separate TCPA class actions that resulted in this

24  Settlement to view the full procedural history of this matter.  In short, the Court-approved notice

25  appropriately and sufficiently informed Class Members of the nature of the claims and of their

26  rights, and also directed them to sources where they could obtain further information about the

27  Settlement.  As such, it fully comported with Rule 23(e) and the requirements of due process.

28

E.     **The Requested Service Awards are Reasonable.**

Some objectors argue that the requested service awards to the Class Representatives in the amount of $2,000 each are excessive.  In fact, the requested awards are less than the service award amounts approved in numerous other TCPA settlements.  *See, e.g., Satterfield v. Simon & Schuster, Inc.*, No. 06-cv-2893 (N.D. Cal. Aug. 6, 2010) (awarding $20,000 to one named plaintiff and $5,000 each to the other two named plaintiffs); *AllianceOne,* No. 3:08-cv-00248-JAH-WVG (S.D. Cal. Sept. 28, 2012) (awarding $5,000 to one named plaintiff, and $2,500 each to the other two named plaintiffs); *Grannan v. Alliant Law Group, P.C.,* No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *23 (N.D. Cal. Jan. 24, 2012) (awarding $5,000 incentive payment); *Arthur v. Sallie Mae, Inc.*, No. 10-cv-00198-JLR, 2012 U.S. Dist. LEXIS 132061, at *6 (W.D. Wash. Sept. 17, 2012) (awarding $2,500 to each of the class representatives).  The requested awards are modest and will not only compensate the Class Representatives for the efforts they undertook in these cases, but also will encourage other individuals to undertake the responsibility and risk of litigating class actions.  This objection should therefore be overruled.

F.     **Basing Class Members' Awards  on the Precise Number of Calls Received Was Not Feasible.**

Mr. Neumann argues that he should be able to make a claim under the Settlement for each call he received.  Dkt. No. 84.  As Plaintiffs' counsel have reported to the Court, through confirmatory discovery, the parties concluded that determining the precise number of calls Defendants made to each Class Member is substantially difficult, unduly burdensome, and economically unfeasible to determine. Dkt. No. 59-2, ¶15.  Class Counsel therefore concluded that allocating such relief regardless of the number of calls each Class Member may have received is reasonable and fair.  *Id.*  The Settlement Agreement affords all potential Class Members the opportunity to make a claim for monetary relief.  Any Class Member who believed that the awards under the Settlement do not appropriately compensate her for the number of calls received had the opportunity to opt out to pursue relief.

G.     **The Remaining Objections Provide no Basis to Decline to Approve the Settlement.**

The remaining objections provide no basis for declining to approve the Settlement. Objectors Phillip Davis, Jr., Vicky Lombardo, Jessie Ogletree, Jr., Doretha and Richard Pengel, Edward D. and Delores Rickett, and Constance Folsom Smith suggest that this Settlement is not fair, adequate, and reasonable because of the treatment they received in separate foreclosure and/or loan modification proceedings with Bank of America.  None of these objections undermine a finding that the Settlement is fair, reasonable, and adequate.

Objector Neumann argues that the cash payments required by the Settlement will not, by themselves, halt Bank of America's automated calls, but ignores the practice changes designed to do just that.  Dkt. No. 84.  Objector Neumann also states that, based on his review of the *Duke* docket, he believes there was "very little litigation involved" and that the cases were "not hard fought."  *Id.*  Mr. Nuemann, however, ignores the motion practice in the four other cases that resulted in this Settlement, the many hours spent on investigation and classwide discovery not reflected on the Court dockets, and the extensive mediation efforts spanning more than eight months that resulted in Settlement.

Notably, several of the objections do not, in fact, object to the Settlement itself, but just want a larger payment for themselves.  Objector Artis Mark, Jr. ("I don't object to the settlement . . . .").  Dkt. No. 75.  Even Mr. Palmer details the "laudatory aspects of the settlement," including the size of the settlement fund, the sufficiency of the class notice, and the content of and manner in which Plaintiffs' counsel made their attorneys' fee application available to the Class. Dkt. No. 81.  Such "objections" weigh in favor of, rather than against, a finding that the Settlement is fair, adequate, and reasonable.

V.     **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the objections are all without merit and should be overruled, and that the Settlement should be approved as fair, adequate, reasonable, and in the best interests of the Class.

1   Dated: April 1, 2014                     Respectfully submitted,

2                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

3

4                                            By: */s/ Jonathan D. Selbin*_____
                                                  Jonathan D. Selbin
5
                                             LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
6                                            Jonathan D. Selbin (State Bar No. 170222)
                                             250 Hudson Street, 8th Floor
7                                            New York, NY  10013
                                             Telephone:  (212) 355-9500
8                                            Facsimile:  (212) 355-9592

9                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                             Daniel M. Hutchinson (State Bar No. 239458)
10                                           Nicole D. Sugnet (State Bar No. 246255)
                                             275 Battery Street, 29th Floor
11                                           San Francisco, CA  94111-3339
                                             Telephone:  415.956.1000
12                                           Facsimile:  415.956.1008

13                                           MEYER WILSON CO., LPA
                                             Matthew R. Wilson (State Bar No. 290473)
14                                           mwilson@meyerwilson.com
                                             1320 Dublin Road, Ste. 100
15                                           Columbus, OH  43215
                                             Telephone:  (614) 224-6000
16                                           Facsimile:  (614) 224-6066

17                                           CASEY GERRY SCHENK FRANCAVILLA BLATT &
                                             PENFIELD LLP
18                                           Mark Ankcorn (State Bar No. 166871)
19                                           mark@cglaw.com
                                             110 Laurel Street
20                                           San Diego, CA  92101
                                             Telephone:  619 238 1811
21
                                             TERRELL MARSHALL DAUDT & WILLIE PLLC
22                                           Beth E. Terrell (State Bar No. 178181)
23                                           bterrell@tmdwlaw.com
                                             936 North 34th Street, Suite 400
24                                           Seattle, Washington  98103-8869
                                             Telephone: (206) 816-6603
25                                           Facsimile: (206) 350-3528

26                                           *Attorneys for Plaintiffs and the Proposed Class*

27

28

1167772.2                        - 20 -                    PLAINTIFFS' RESPONSE TO
                                                           OBJECTIONS TO SETTLEMENT
                                                           5:12-CV-04009-EJD (PSG)