1  Douglas J. Campion, SBN #75381
   Email: doug@djcampion.com
2  LAW OFFICE OF DOUGLAS J. CAMPION
3  409 Camino Del Rio South, Suite 303
   San Diego, California 92108
4  Telephone: (619) 299-2091
   Facsimile: (619) 858-0034
5
6  LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
7  Jonathan D. Selbin (State Bar No. 170222)
   250 Hudson Street, 8th Floor
   New York, NY 10013
8  Telephone: (212) 355-9500
   Facsimile: (212) 355-9592
9
10 [Additional Counsel Appear on Signature Page]

11 *Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A.,<br><br>Defendants. | Case No. 5:11-cv-02390-EJD<br><br>**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS** |
| CAROL DUKE AND JACK POSTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A.,<br><br>Defendants. | Case No. 5:12-cv-04009-EJD |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1
INTRODUCTION ....................................................................................................................... 1
LEGAL STANDARD ................................................................................................................. 1
SCOPE OF THE REQUEST FOR RECONSIDERATION ....................................................... 2
UNDISPUTED MATERIAL FACTS ......................................................................................... 2
    I.    The Prospective Practice Changes Effected Meaningful Change .......................... 2
    II.   The Monetary Recovery ......................................................................................... 6
    III.  The Litigation Strategy Enhanced Efficiency and Saved the Class Millions of Dollars ................................................................................................................. 7
    IV.  The Number of Hours Worked by Class Counsel .................................................. 9
    V.   Class Counsel Litigated This Matter on a Contingent Basis with an Ongoing Risk of Non-Payment ............................................................................ 11
APPLICATION OF THE UNDISPUTED MATERIAL FACTS TO THE COURT'S STANDARD ............................................................................................................................. 13
CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allstate Ins. Co. v. Herron*,
  634 F.3d 1101 (9th Cir. 2011)..................................................................................................2

*Broussard v. Charvat*,
  No. C 13-4878 LHK, 2014 U.S. Dist. LEXIS 119293 (N.D. Cal. Aug. 26, 2014).....................2

*Brown v. DIRECTV, LLC*,
  2013 U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) ........................................................12

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013)....................................................................................12

*Colony Ins. Co. v. Fladseth*,
  2013 U.S. Dist. LEXIS 87738 (N.D. Cal. June 21, 2013) .........................................................2

*Cruz v. Alhambra Sch. Dist.*,
  282 Fed. Appx. 578 (9th Cir. Cal. 2008) .................................................................................11

*Elkins v. Medco Health Solutions, Inc.*,
  Case No. 4:12CV2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) ..................11

*Feldman v. Allstate Ins. Co.*,
  322 F.3d 660 (9th Cir. Cal. 2003) ............................................................................................14

*Fields v. Mobile Messengers Am., Inc.*,
  No. C 12-05160 WHA, 2013 WL 6073426 (N.D. Cal. Nov. 18, 2013) ..................................12

*Gager v. Dell Fin. Svcs., LLC*,
  727 F.3d 265 (3d Cir. 2013).......................................................................................................5

*Greene v. DirecTV, Inc.*,
  Case No. 10-C-117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010)........................12

*McNamara v. Royal Bank of Scot. Group, PLC*,
  2012 U.S. Dist. LEXIS 158580 (S.D. Cal. Nov. 5, 2012) .......................................................12

*Roberts v. PayPal, Inc.*,
  No. C 12-0622 PJH, 2013 U.S. Dist. LEXIS 76319 (N.D. Cal. May 30, 2013)......................12

*Steinfeld v. Discover Fin. Servs.*,
  No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 48540 (N.D. Cal. Mar. 31, 2014) ............ 13, 14

*Steinhoff v. Star Tribune Media Co., LLC*,
  Case No. 13-cv-1750, 2014 U.S. Dist. LEXIS 38293 (D. Minn. Mar. 24, 2014)....................11

*Turner v. Burlington Northern Santa Fe R.R.*,
  338 F.3d 1058 (9th Cir. 2003)...................................................................................................2

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002).................................................................................................13

## STATUTES

42 U.S.C.
  § 1988......................................................................................................................................11

42 U.S.C.
  §1983.......................................................................................................................................11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES**

Federal Rules of Civil Procedure
   Rule 59(e) ................................................................................................................. 1, 2, 14

Federal Rules of Civil Procedure
   Rule 30(b)(6) ................................................................................................................ 3, 8, 9

Northern District of California
   Local Rule 7-9 ..................................................................................................................... 2

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND COUNSEL OF RECORD**:

Please take notice that on October 10, 2014, at 9:00 a.m., in Courtroom 4, 5th floor of the United States District Court for the Northern District of California, Jose Division, located at 280 South 1st Street, San Jose, California 95113, Class Counsel will, and hereby do, move for reconsideration of the Court's August 29, 2014 Order Granting in Part and Denying in Part Motion for Attorneys' Fees and Costs (Dkt. No. 108) and to amend the September 5, 2014 Judgment (Dkt. No. 109).

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 59(e), Class counsel respectfully move for reconsideration of the Court's August 29, 2014 Order Granting in Part and Denying in Part Motion for Attorneys' Fees and Costs (Dkt. No. 108) and to amend the September 5, 2014 Judgment (Dkt. No. 109). Cognizant of the Court's heavy docket, and the obvious time and effort the Court devoted to analyzing their original Motion, Class counsel do not submit this request lightly. However, the Court's ruling awarding Class counsel fees and costs of less than 7.5% of the common fund is a somewhat radical downward departure from the benchmark fee of 25% ordinarily awarded in common fund cases. Class counsel respectfully submit that the Court's departure from the benchmark is not supported by a fulsome analysis of the undisputed facts relating to four key issues: (1) the nature of the prospective practice changes required by the Settlement, (2) the amount of the monetary relief achieved by the Settlement for each submitted claim, (3) the number of hours Class Counsel worked on this litigation and (4) the risk that Class counsel would not be paid for their work. Class counsel submit that reconsideration is therefore warranted, and respectfully request that the Court grant their motion.

# LEGAL STANDARD

Post-judgment reconsideration of a motion under Rule 59(e) is appropriate where: "(1) the motion is 'necessary to correct manifest errors of law or fact upon which the judgment is based;' 2) the moving party presents 'newly discovered or previously unavailable evidence;' 3) the motion is necessary to 'prevent manifest injustice;' or 4) there is an 'intervening change in

controlling law.'" *Turner v. Burlington Northern Santa Fe R.R.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)); *Broussard v. Charvat*, No. C 13-4878 LHK, 2014 U.S. Dist. LEXIS 119293, at *3 (N.D. Cal. Aug. 26, 2014) (granting reconsideration and vacating judgment after Ninth Circuit remand).[1] A district court has "considerable discretion" in considering a Rule 59(e) motion. *Id.* The Ninth Circuit has explained that:

> Rule 59(e) amendment may be particularly appropriate where, as here, the amendment reflects the purely clerical task of incorporating undisputed facts into the judgment. Such an amendment does not raise the concern that a party has abused Rule 59(e) to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (holding that district court did not abuse its discretion by adding undisputed facts to an amended judgment); *see also Colony Ins. Co. v. Fladseth*, 2013 U.S. Dist. LEXIS 87738, at *7, *11 (N.D. Cal. June 21, 2013) (granting Rule 59(e) motion to amend judgment to include an award of $239,280.05 in "attorneys' fees or expenses incurred in the underlying cases").

## SCOPE OF THE REQUEST FOR RECONSIDERATION

Class counsel do not intend to reargue their original Motion. Rather, Class counsel respectfully submit, as detailed below, that the Order is not supported by a fulsome review of the undisputed material facts central to the Settlement. Under these circumstances, amendment is "particularly appropriate." *See Allstate Ins. Co.*, 634 F.3d at 1111. Class counsel move for reconsideration of the Court's Order and entry of an amended Judgment recalculating the award of attorneys' fees and costs in light of the undisputed factual record.

## UNDISPUTED MATERIAL FACTS

**I.     The Prospective Practice Changes Effected Meaningful Change**

The Court's Order "question[ed] the 'prospective relief' provided by the Settlement Agreement," and expressed "concern[] that the prospective relief would not be of any benefit to

---

[1] The Court's Local Rules similarly permit a motion for consideration is when the District Court fails to consider "material facts or dispositive legal arguments which were presented to the Court." N.D. Cal. L.R. 7-9. However, that Rule is only applicable "[b]efore the entry of a judgment." *Id.*

1  consumers because it would not prevent Defendants from continuing to call Class Members" and
2  concluded it "means very little in the context of this lawsuit." Order at 17-20. Respectfully,
3  Class counsel strongly disagree with these factual assertions, which are contrary to the undisputed
4  facts. As a direct result of these lawsuits and the prospective practice changes secured by Class
5  counsel in this Settlement, every Class member who wants the automated calls to stop has the
6  ability to make the calls stop. The practice changes that Class counsel achieved are a tremendous
7  result and will benefit every Class member.

8  Plaintiffs have consistently maintained that "the primary focus of the Settlement is Bank
9  of America's prospective practice changes." *See, e.g.*, Dkt. 73 at 3. With this motion, Class
10 counsel have submitted excerpts from their depositions of Bank of America's Rule 30(b)(6)
11 representatives that further support that contention. Class counsel sincerely apologize for not
12 providing this information to the Court prior to final settlement approval. After reviewing the
13 Court's Order, Class counsel now recognize that this information is vital to provide context for
14 the importance of Defendants' practice changes and Class counsel's work on this litigation.
15 Specifically:

16 <u>Mortgage Calls</u>: Prior to the filing of the *Ramirez* action, Defendant Bank of America,
17 N.A. ("BANA") did not have any formal policies regarding the removal of cellular telephone
18 numbers from autodialer campaigns. Declaration of Beth E. Terrell in Support of Motion for
19 Reconsideration ("Terrell Decl."), Exh. A (Deposition of Laura Guidici ("Guidici Dep.") at
20 172:10-173:2; 186:12-187:6. BANA's mortgage servicing division did not even have a dedicated
21 database field for a cellular telephone number. *Id.* at 204:3-22. Instead, cell numbers were coded
22 as "home" or "work" numbers and all could be targeted for automatic dialing campaigns without
23 specific consideration as to whether customers consented to be autodialed on their cell phones. *Id.*
24 In Plaintiffs' view, BANA did not have the capability to, and took no affirmative steps to, comply
25 with the TCPA's prohibition on autodialed calls to cellular telephones without prior express
26 consent.

27 After the *Ramirez* action was filed, BANA's mortgage servicing telephone calling policies
28 changed radically. During the course of the litigation, BANA identified all cell phone numbers

on a systematic basis, placed those numbers on a "suppression table" to prevent calling via an auto-dialer, and obtained specific, separate consent from the borrower before the number could again become eligible to be auto-dialed. Guidici Dep. at 174:2-23, 172:10-13. BANA also used information obtained from cellular carriers to identify cellular telephone numbers for suppression on a system-wide basis. *Id.* at 175:12-176:21.

Credit Card Calls: Similarly, after the *Rose* action was filed, Defendants Bank of America Corporation ("BAC") and FIA Card Services, N.A. ("FIA") implemented comprehensive changes to their calling practices. Prior to July 2011, BAC and FIA did not have any procedures directing their agents to record a borrower's consent (or lack of consent) to receive autodialed calls when a borrower provided a new phone number. Declaration of Douglas J. Campion in Support of Motion for Reconsideration ("Campion Decl."), Exh. A, Deposition of Dana Wassam ("Wassam Dep.") at 107:25-108:6, 102:8-18. Plaintiffs therefore allege that BAC and FIA autodialed numbers in their databases regardless of whether they had documented consent to dial those numbers.

Starting in 2012, FIA affirmatively notified customers that, if they provided a cellular phone number, FIA could contact them via an autodialer. Wassam Dep. at 75:24-76:5. BAC and FIA now affirmatively consults "three data sources of auto dial consent"; if BAC and FIA have not documented consent in those sources, the number is not eligible to be placed in an autodialer. BAC and FIA now systematically review their databases on a daily basis to make certain that all customers with cellular phone numbers in their system have given consent to be autodialed. *Id.* at 71:19-73:4. This daily confirmation process also ensures that BAC and FIA do not autodial cell numbers if a borrower recently revoked consent. *Id.* at 83:18-84:25.

This litigation was the catalyst for these novel and sweeping changes.[2] The Settlement Agreement has required Bank of America to perform a full audit of its records and significantly

---

[2] *See* Settlement Agreement, § 4.01 ("Bank of America has developed significant enhancements to its servicing systems which are designed to prevent the calling of a cell phone unless a loan servicing record is systematically coded to reflect the borrower's prior express consent to call his/her cell phone. These procedures were developed and implemented during the Class Period after the filing of the *Rose* action, and have been the subject of confirmatory discovery and investigation by Plaintiffs."); Email Notice (Dkt. No. 59-1) ("What Are the Settlement Terms? . . . Additionally, Bank of America has enhanced its business practices to ensure that a

enhance its servicing systems by systematically coding every record to reflect a borrower's prior express consent to call his/her cell phone. Settlement Agreement § 4.01. This process has required a painstaking, systematic review of *every one* of the records of the approximately 7,723,860 persons in the Class found in multiple databases throughout Bank of America, including individual, manual calls to many Class members to determine whether they provided consent. *See, e.g.*, Guidici Dep. at 172:10-13.

Effect of Practice Changes: These practice changes made the calls stop in two ways. First, unless Bank of America had a specific record of consent for a Class member, that Class member's database records have now been coded so that Bank of America cannot call that Class member. This change automatically has stopped calls to many thousands, if not millions, of Class members. Second, as the Third Circuit recently confirmed – and as Plaintiffs have maintained since the outset of this litigation – under the TCPA, a consumer may revoke any consent he or she may have given to receive automated calls at any time. *Gager v. Dell Fin. Svcs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013). Plaintiffs alleged that consumers who revoked consent nonetheless received automated calls to their cellular phones. Because the practice changes require Bank of America to maintain a field for consent in its call records – and Bank of America updates that field on a daily basis – every Class member who revokes consent will have that request recorded and timely honored. Class counsel has investigated and confirmed the implementation of these procedures through discovery. Settlement Agreement ¶4.01 ("These procedures were developed and implemented during the Class Period after the filing of the *Rose* action, and have been the subject of confirmatory discovery and investigation by Plaintiffs.").

Under the factual circumstances of this case, Class counsel respectfully submit that the prospective practices changes are *better than* those in *Grannan*, *Arthur*, or *Kramer*. *See* Order at 19. Indeed, since Plaintiffs allege that, prior to the prospective changes made during this litigation, Bank of America's system lacked the structural capability to record consent (or lack thereof), Plaintiffs therefore allege that that a revocation request or a temporary ban on automated

---

borrower has provided consent before being called on a cell phone and that the Bank's loan servicing record reflects the borrower's prior express consent to call his/her cell phone.").

1  calls would have been meaningless because Bank of America's pre-lawsuit system lacked the
2  capability to implement those measures.

3　　　　Thus, as a matter of fact, the prospective relief enables every Class member to make the
4  calls stop; Plaintiffs allege that Class members simply did not have the ability to do that before.
5  While it is true that Plaintiffs and Defendants still disagree as to what constitutes "prior express
6  consent" under the TCPA, as a result of these changes, Defendants have instituted a full embargo
7  on all autodialed calls without prior express consent and now fully honor Class members'
8  expressed preference. Defendants were not taking these steps before this litigation.

## II.　　The Monetary Recovery.

The Court's Order states that "claimants will receive an average recovery of between $20 and $40" and that "the $20 to $40 range falls in the lower range of recovery for achieved in other TCPA class action settlements." Order at 18. However, that amount was only the conservative estimate Class counsel made before any claims had been filed, and it turned out to be just that: conservative. As Class counsel reported to the Court after the close of the claim-filing period, each claimant's actual *pro rata* recovery ended up substantially higher. On April 1, 2014, Class counsel reported: "Based on the claims information reported in the Supplemental Affidavit of Cameron R. Azari Regarding Claims Administration, the Claims Administrator's budget, and Class Counsel's request for an award of fees and costs, Class Counsel estimate that the total award per claimant will total between $110 and $120 for each Class Member who received both mortgage calls, and credit card calls and/or texts; between $55 and $60 for each Class Member who received only card calls and/or texts; and between $55 and $60 for Class Members who received only mortgage calls." Declaration of Jonathan D. Selbin In Support of Plaintiffs' Response to Objections to Settlement (Dkt. No. 86-1) at ¶ 7 (Apr. 1, 2014).[3] Class counsel reported that information to the Court at the Final Approval Hearing on April 4, 2014. Campion Decl., Exh. B at 5:16-6:8. On August 1, 2014, Class counsel filed undisputed evidence that Class members who submitted a claim for mortgage calls or credit card calls will receive at least $57

---

[3] *See also* Plaintiffs' Response to Objections to Settlement (Dkt. No. 87) at 1, 11 (reporting the same amounts).

1  and $114 if they received both. Supplemental Declaration of Daniel M. Hutchinson in Support of
2  Motions for Final Approval and Attorneys' Fees (Dkt. No. 105) at ¶3.
3        Thus, it is undisputed that claimants will receive significantly more than the $20-$40 (or
4  average of $30) the Court used as the basis for its finding that the results obtained were not
5  exceptional, with the majority of claimants receiving almost four times the Court's calculation
6  ($114/$30).

7  **III.      The Litigation Strategy Enhanced Efficiency and Saved the Class Millions of Dollars.**
8        The Court's Order states that "much of the work done prior to settlement negotiations was
9  duplicative" and that "Class Counsel appear to have coordinated their efforts from very early on
10 in the proceedings" Order at 14, 16. Neither statement is accurate.
11       Class counsel did not initially pursue a coordinated litigation strategy. Campion Decl., ¶7;
12 Terrell Decl., ¶8; *see also* Declaration of Alexander H. Burke in Support of Motion for
13 Reconsideration, ¶3. On May 16, 2011, The Law Offices of Law Douglas J. Campion and
14 Anthony J. Trepel brought the *Rose* Action solely on behalf of persons "who had a credit card
15 serviced by FIA." Dkt. No. 1 at ¶ 20. On July 26, 2011, five other firms joined Mr. Campion's
16 complaint – Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB"); Hyde & Swigart ("H&S");
17 Kazerouni Law Group ("KLG"); Meyer Wilson Co. LPA ("Meyer Wilson"); and Terrell,
18 Marshall, Daudt & Willie PLLC ("TMDW"). Dkt. No. 8.
19       On August 31, 2011, Ms. Terrell, along with the Ankcorn Law Firm, filed the *Ramirez*
20 complaint against Bank of America, N.A. Ms. Terrell did not inform her *Rose* co-counsel of the
21 *Ramirez* action prior to filing, nor did they participate in any aspect of that litigation. Campion
22 Decl., ¶7; Terrell Decl., ¶8. Although the Court notes that *Ramirez* counsel incorrectly included
23 "consumers holding credit cards issued by BANA" in the scope of its class definition,[4] BANA
24 does not, in fact, issue or service credit cards. Therefore, the scope of the *Ramirez* action was at
25 all times limited solely to mortgage calls.
26       Counsel litigated the *Rose* and *Ramirez* action separately and aggressively for years up to
27 the eve of class certification briefing. The defendants, documents, data, and witnesses for each
28

---

[4] *See Ramirez*, Dkt. No. 1.

action were completely different.[5] There is no evidence of any overlap between the two cases. Indeed, Class counsel are not aware of even a single document that was produced in both cases. Terrell Decl., ¶12.

Although the litigation involved two separate companies with distinct practices, Counsel learned during the course of the respective litigation and ongoing investigations that there was a significant overlap between the *Rose* and *Ramirez* classes because many consumers hold both a Bank of America credit card and a Bank of America mortgage. *See* Declaration of Cameron Azari (Dkt. No 86-7) at ¶11 (detailing that approximately 56.6% of claimants received both mortgage calls, and credit card calls and/or texts). On July 30, 2012, two firms – LCHB and Meyer Wilson – filed the *Duke* action to provide a vehicle through which the cases could be litigated (and potentially resolved) together given the overlap. Defendants vigorously opposed the *Duke* action with a fully-briefed motion to dismiss. Dkt. Nos. 11, 19. 24.

Class Counsel's strategy of filing the *Duke* action proved successful and it was ultimately the vehicle through which a global resolution of a $32,083,905 common fund Settlement was reached. This strategy did not result in duplicative work or inefficiencies. Instead, the credit card and mortgage calls at issue involved separate defendants, separate policies, separate practices, separate documents, separate data, and separate witnesses that would have required separate discovery regardless of whether the cases were joined at an earlier date. Campion Decl., ¶9; Terrell Decl., ¶12. As described below, Class counsel filed and litigated the *Duke* action prior to mediation in a remarkably efficient manner, expending only approximately 76 hours on the matter. *See* Selbin Decl. (Dkt. No. 74-1) at ¶¶ 31-32; Wilson Decl. (Dkt. No. 74-10) at ¶¶18-19.

Moreover, because of the overlap between the mortgage and credit card Class members, Class counsel's strategy actually resulted in total savings to the Class of at least two million dollars in hard costs. The Court-approved payments for notice and claims administration are

---

[5] For instance, the deposition witness produced by Bank of America, N.A., in response to Plaintiffs' notice under Rule 30(b)(6) in the *Ramirez* action, could only testify as to the policies, procedures, and operations of Defendant BANA's Mortgage Division. Guidici Dep. at 181:9. Her entire professional experience spanning some twenty years was spent solely in mortgage servicing. *Id.* at 47:22-48:5. She also testified that the mortgage servicing software platform was wholly separate from the credit card or auto loan platforms; data only migrated from one to the other when a human operator entered it into the other system. *Id.* at 145:9-146:11.

1  capped at $3.6 million dollars for the Settlement as whole.  Campion Decl., ¶12; Terrell Decl.,

2  ¶13.  If the mortgage and credit card classes were settled separately, the two classes would incur

3  separate notice and administration costs for 56.6% of the Class members.  Those costs would total

4  approximately $2,037,600 (i.e., $3,600,000 x 0.566 = $2,037,600).  These are significant savings

5  that would not have been achieved had Class counsel not taken the affirmative (and hotly

6  contested) step of filing a unifying case (*Duke*) and thereby permitting a global settlement of two

7  otherwise unrelated cases.

8        Class counsel respectfully submit that they should not be penalized for employing a

9  strategy that helped to favorably resolve the case and, in the process, saved the Class at least two

10 million dollars in costs.

11 **IV.     The Number of Hours Worked by Class Counsel.**

12       There are several key erroneous statements in the Order's factual recitation with respect to

13 Class counsel's lodestar.

14       First, while the Order states that Class Counsel's total submitted lodestar was

15 "$1,396,523.75 from a total of 2,560.7 hours of work," Order at 12, Class counsel's actual total

16 reported lodestar was $1,500,817.25 through August 1, 2014, not including the hours devoted to

17 briefing the issue of attorneys' fees.  Supplemental Declaration of Daniel M. Hutchinson in

18 Support of Motions for Final Approval and Attorneys' Fees (Dkt. No. 105) at ¶7.

19       Second, the Order states that Class Counsel spent "800 hours *in* settlement negotiations

20 and mediation" and "reduced[d] the number of hours billed in this category to 400." Order at 14

21 (emphasis added).   However, Class counsel spent approximately 800 hours on *settlement-related*

22 *work*, not in the mediations themselves.  The overwhelming majority of that time was spent

23 conducting fact-intensive confirmatory discovery and responding to inquiries by Class members.

24 This work included drafting discovery on Defendants' policies, reviewing and analyzing

25 information and documents produced by Defendants, requesting complex call record data,

26 working with an expert to analyze that call record data, and taking a series of Rule 30(b)(6)

27 depositions to further Class counsel's analysis.  Class counsel submitted sworn declarations

28 describing that work in summary fashion.  *See, e.g.*, Declaration of Jonathan D. Selbin in Support

of Plaintiffs' Motion for Attorneys' Fees and Final Approval of Class Action Settlement (Dkt. No. 74-1) at ¶ 34 (describing seven categories of mediation-related work done by Class Counsel). In contrast, Class counsel estimate that less than 20% of that time was spent, as the Order concluded, being "present during the mediation sessions." Order at 14.

Third, the Order states that the "number of hours logged in *Duke* and *Johnson* prior to settlement negotiations and mediation" was "560 hours." Order at 16. This overstates the amount of time spent on those matters by over 400 hours.

The only counsel who worked on *Duke* prior to settlement negotiations and mediation were LCHB and Meyer Wilson. *See* Dkt. No. 5:12-cv-04009-EJD (listing counsel). Those two firms spent approximately 76 hours on *Duke* prior to settlement negotiations and mediation, including less than ten hours drafting, revising, and filing the *Duke* Complaint, and 66 hours opposing Bank of America's Motion to Dismiss, conducting legal research, and meeting and conferring with defense counsel regarding Plaintiffs' anticipated Motion to Strike Affirmative Defenses. *See* Selbin Decl. (Dkt. No. 74-1) at ¶¶ 31-32; Wilson Decl. (Dkt. No. 74-10) at ¶¶18-19.

The only counsel who worked in *Johnson* were the KLG and H&S. *See* Dkt. No. 5:14-cv-02177-EJD (listing counsel). Those two firms spent a total of 157 hours on *Johnson* prior to settlement negotiations and mediation. *See* Swigart Decl. (Dkt. No. 74-8) at ¶¶20-21, Kazerounian Decl. (Dkt. No. 74-3) at ¶¶19-20. However, this includes time for both *Rose* and *Johnson*. Swigart Decl. (Dkt. No. 74-8) at ¶19 ("The categories of work identified cross over into both the *Johnson* and *Rose* actions."), Kazerounian Decl. (Dkt. No. 74-3) at ¶¶19-20. The actual amount spent solely *Johnson* is under 80 hours. *See id.* Thus, the combined total for Counsel's work on *Duke* and *Johnson* prior to settlement negotiations and mediation was under 160 hours, or over 400 hours less than the Court's Order.

Fourth, Class counsel continue to expend time on this matter, including working with the Settlement Administrator to ensure implementation of the Settlement and responding to all Class

member inquiries. Based on past experience, Class counsel estimate that will require the expenditure of dozens if not hundreds of additional hours.[6]

## V. Class Counsel Litigated This Matter on a Contingent Basis with an Ongoing Risk of Non-Payment.

While Class counsel are flattered by the Court's suggestion that, because they are experienced in litigating TCPA class actions, they "know how to pick a winner," Order at 21, that is unfortunately not always the case. The undisputed evidence is that Class counsel took this matter on a contingency fee basis and in fact faced a real risk of non-payment. Selbin Decl., ¶¶ 16-18 ("Because LCHB undertook representation of this matter on a contingency-fee basis, LCHB shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.").[7]

That risk was real and meaningful. As detailed in the accompanying declarations of counsel, Class counsel have lost a number of TCPA class actions without any recovery for the proposed classes or any fees for their work. Campion Decl., ¶¶2-5; Terrell Decl., ¶¶2-7; Burke Decl., ¶¶2-10; *Hudson v. Sharp Healthcare*, Case No. 13cv1807 MMA (NLS) (S.D. Cal. June 25, 2014) (granting summary judgment against Plaintiff in TCPA class case); *Van Patten v. Vertical Fitness Group., LLC*, 3:12-cv-1614 LAB (S.D. Cal., May 20, 2014) (same); *Elkins v. Medco Health Solutions, Inc.,* Case No. 4:12CV2141, 2014 U.S. Dist. LEXIS 57633 (E.D. Mo. Apr. 25, 2014) (same); *Martin v. Wells Fargo Bank, N.A.*, 3:12-cv-06030-SI (N.D. Cal. Apr. 4, 2014) (dismissing case with prejudice); *Steinhoff v. Star Tribune Media Co., LLC*, Case No. 13-cv-1750, 2014 U.S. Dist. LEXIS 38293 (D. Minn. Mar. 24, 2014) (granting defendant's motion for

---

[6] Although decided under the inapplicable lodestar method required for civil rights class actions seeking injunctive relief under 42 U.S.C. §§ 1983, 1988, *Cruz v. Alhambra Sch. Dist.*, 282 Fed. Appx. 578, 582 (9th Cir. Cal. 2008), squarely holds that "Plaintiffs are entitled to compensation for the merits work they completed after they filed their [] fee application."

[7] *See also* Swigart Decl. (Dkt. No. 74-8) ¶10; Kazerounian Decl. (Dkt. No. 74-3) ¶13; Campion Decl. (Dkt. No. 74-5) ¶13; Wilson Decl. (Dkt. No. 74-10) ¶¶7-8; Burke Decl. (Dkt. No. 74-2) ¶15; Ankcorn Decl. (Dkt. No. 74-4) ¶8; Saeed Decl. (Dkt. No. 74-6) ¶¶1-3; Shay Decl. (Dkt. No. 74-7) ¶2-4; Terrell Decl. (Dkt. No. 74-9) ¶¶25-26. One former co-counsel firm, Anthony J. Trepel's law firm, withdrew early in the *Rose* action and decided not to endure the risk of continued litigation. *See* Campion Decl. (Dkt. No. 74-5) ¶ 12.

1    judgment on the pleadings on the issues of prior express consent); *Evans v. Aetna Inc.*, Case No.
2    2:13-cv-01039-LA (E.D. Wisc. Nov. 20, 2013) (dismissing case), *Brown v. DIRECTV, LLC*, 2013
3    U.S. Dist. LEXIS 90894 (C.D. Cal. June 26, 2013) (compelling claims to arbitration on an
4    individual basis); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1208 (S.D. Cal. 2013)
5    (same); *O'Brien v. General Electric Capital Corp.*, 3:12-cv-1909 JAH (S.D.Cal., Aug. 2, 2013)
6    (same); *Maleksaeedi v. American Express Centurion Bank*, 3:11-cv-790 CAB (S.D.Cal., Feb. 12,
7    2013) (same); *Delgado v. US Bankcorp*, 2:12-cv-10313-SJO-AJW (C.D. Cal. Jan. 17, 2013)
8    (dismissing case); *Moore v. Chase Bank USA, N.A.*, Case No. 2:12-cv-10316-PA-E (C.D. Cal.
9    Jan. 9, 2013) (dismissing case); *McNamara v. Royal Bank of Scot. Group, PLC*, 2012 U.S. Dist.
10   LEXIS 158580 (S.D. Cal. Nov. 5, 2012) (dismissing action); *Greene v. DirecTV, Inc.*, Case No.
11   10-C-117, 2010 U.S. Dist. LEXIS 118270 (N.D. Ill. Nov. 8, 2010) (granting summary judgment
12   against Plaintiff in TCPA class case).

13          Class counsel' experiences are not unique.  TCPA class actions involve complex factual
14   issues and unresolved legal issues.  Courts in this District have frequently disposed of TCPA class
15   actions without recovery for the Plaintiffs or class.  *See, e.g.*, *Fields v. Mobile Messengers Am.,*
16   *Inc.*, No. C 12-05160 WHA, 2013 WL 6073426, at *4 (N.D. Cal. Nov. 18, 2013) (denying
17   certification because plaintiff could not establish that consent issue was appropriate for class
18   treatment); *Roberts v. PayPal, Inc.*, No. C 12-0622 PJH, 2013 U.S. Dist. LEXIS 76319 (N.D. Cal.
19   May 30, 2013) (dismissing putative class action on motion for summary judgment).  These many
20   adverse rulings in TCPA class actions are consistent with this Court's own findings in this case.
21   The Court specifically found in this case that there was a "[r]isk of continuing litigation . . .
22   because the issue of prior express consent is an open question and [] the Court may not have
23   adopted Class Counsel's view."  Order at 20; *see also* Order at 7-8 (describing the "risk, expense,
24   complexity, and likely duration of the litigation" and "risk of maintaining class action status
25   through trial."  The uncontested evidence therefore establishes that Class Counsel took this matter
26   solely on a contingency fee basis and faced a substantial risk on non-payment.

27
28

**APPLICATION OF THE UNDISPUTED MATERIAL FACTS
TO THE COURT'S STANDARD**

In light the above, Class counsel respectfully submit that they have satisfied the criteria for an award of attorneys' fees and costs in line with—or certainly close to—the benchmark of 25% of the $32,083,905 common fund they created. *See* Order at 11 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . .") & 17 ("The 25% benchmark rate is the starting point for analysis.") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Respectfully, the radical downward departure from that benchmark that the Court imposed is not warranted, particularly in light of the corrected factual record detailed above. Indeed, even without those corrections, the Court concluded that all but two factors supported an award using a percentage-of-the fund method; those two were (1) the results achieved, *id.* at 17-20, and (2) the contingency rationale. *Id.* at 20-21. As set forth above, the results achieved are significantly higher than the Court understood them to be, and the contingency risk, in this and other TCPA class cases, is substantial. Both factors support an award of the Ninth Circuit benchmark.

The fee award in a similar class action settlement under the TCPA is instructive. In the Discover TCPA settlement, the Honorable Jeffrey S. White found that "Class Counsel achieved an excellent result for the class, especially in light of the significant risks to continued litigation set forth in the Order granting final approval." *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 48540 (N.D. Cal. Mar. 31, 2014) (awarding attorneys' fees and costs). The Discover TCPA settlement included the ability for settlement class members to submit a revocation request to end automated telephone calls from Defendant, an $8.7 million common fund settlement, and, like here, the filing of multiple class actions by separate Plaintiffs' counsel who decided to work together on a global settlement. *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) (finally approving class settlement). Judge White awarded the Ninth Circuit benchmark of 25% of the

common fund, which resulted in a lodestar multiplier of approximately 3.5. *Steinfeld*, 2014 U.S. Dist. LEXIS 48540, at *5.[8]

Class counsel respectfully submit that the relief obtained in this Settlement is *better* than the Discover TCPA settlement. Class counsel request an award of the 25% Ninth Circuit benchmark.[9] If, notwithstanding these corrected facts, the Court exercises its discretion to make a downward departure from the benchmark, nothing in the record supports a reduction from 25% of the common fund to an amount less than 7.5% of the common fund. *See* Order at 22.

## **CONCLUSION**

For the foregoing reasons, Class counsel respectfully request that the Court correct the undisputed facts in the Court's August 29, 2014 Order Granting in Part and Denying in Part Motion for Attorneys' Fees and Costs (Dkt. No. 108), and alter the September 5, 2014 Judgment (Dkt. No. 109) to an award Class counsel attorneys' fees and costs in the total amount of $8,020,976 from the $32,083,905 common fund they created or some amount the Court deems appropriate after accounting for the corrected facts.

---

[8] Judge Robart also awarded approximately 24% of the original $19.5 million settlement in *Arthur v. Sallie Mae*. Following the identification of additional Class members after preliminary approval, the total common fund there was increased to $24.15 million. Class counsel in the *Sallie Mae* case did not request any fees on the upward adjustment, which resulted in a lower ultimate percentage being awarded. Nonetheless, the final percentage there, even absent any fee from the additional $4.65 million, was approximately 20%. Terrell Decl., ¶14.

[9] Under the Settlement Agreement, Class counsel's filing of this Motion tolls the Effective Date of the Settlement. Agreement § 12.01(a) (stating the Judgment shall be deemed final within 30 days "if no document is filed within that time seeking appeal, review or rehearing of the judgment); *see also Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. Cal. 2003) (A Rule 59(e) motion "tolls the time for filing the notice of appeal until the district court rules on the motion."). Class counsel therefore separately move for an expedited ruling on this Motion so that the Class may receive Settlement relief without delay.

| | | |
|---|---|---|
| 1 | Dated:  September 15, 2014 | Respectfully submitted, |
| 2 | | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |

By: /s/ Jonathan D. Selbin
       Jonathan D. Selbin

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson (State Bar No. 239458)
Nicole D. Sugnet (State Bar No. 246255)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

| | |
|---|---|
| 1 | LAW OFFICE OF DOUGLAS J. CAMPION |
| 2 | Douglas J. Campion (State Bar No. 75381)<br>Email:  doug@djcampion.com |
| 3 | 409 Camino Del Rio South, Suite 303<br>San Diego, California  92108 |
| 4 | Telephone: (619) 299-2091<br>Facsimile: (619) 858-0034 |
| 5 | |
| 6 | MEYER WILSON CO., LPA<br>Matthew R. Wilson (State Bar No. 290473) |
| 7 | mwilson@meyerwilson.com<br>1320 Dublin Road, Ste. 100 |
| 8 | Columbus, OH  43215<br>Telephone:  (614) 224-6000 |
| 9 | Facsimile:  (614) 224-6066 |
| 10 | ANKCORN LAW FIRM, PC |
| 11 | Mark Ankcorn (State Bar No. 166871)<br>mark@ankcorn.com |
| 12 | 11622 El Camino Real, Suite 100<br>San Diego, CA 92130 |
| 13 | Telephone:  (619) 870-0600 |
| 14 | TERRELL MARSHALL DAUDT & WILLIE PLLC |
| 15 | Beth E. Terrell (State Bar No. 178181)<br>bterrell@tmdwlaw.com |
| 16 | 936 North 34th Street, Suite 400<br>Seattle, Washington  98103-8869 |
| 17 | Telephone: (206) 816-6603<br>Facsimile: (206) 350-3528 |
| 18 | |
| 19 | Attorneys for Plaintiffs and the Settlement Class |

1193890.6

- 16 -

NOTICE OF MOTION & MOTION FOR RECONSIDERATION
OF ORDER FOR ATTORNEYS' FEES AND COSTS
5:12-CV-04009-EJD (PSG)