Douglas J. Campion, SBN #75381
Email: doug@djcampion.com
LAW OFFICE OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A.,<br><br>Defendants. | Case No. 5:11-cv-02390-EJD<br><br>**DECLARATION OF DOUGLAS J. CAMPION IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION** |
| CAROL DUKE AND JACK POSTER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A.,<br><br>Defendants. | Case No. 5:12-cv-04009-EJD |

I, Douglas J. Campion, declare as follows:

1. I respectfully submit this declaration in support of Plaintiffs' Motion for Reconsideration of Order Granting In Part and Denying In Part Motion for Attorneys' Fees and Costs. I do not take this motion lightly and want the Court to know that in my entire career, I cannot remember ever filing a motion for reconsideration or otherwise challenging any court's ruling on any of my motions for attorneys' fees. Certainly I have never done so in any class action case in the past 13 years since I opened my own office. If called as a witness, I would competently testify to the matters herein from my own personal knowledge, except where otherwise noted.

**My Professional Experience in TCPA Class Actions**

2. I am a member in good standing of the bar of the State of California. I am also admitted in every federal district in California and have handled federal litigation in a number of districts across the country during my 37 year career. I am the only principal in my law firm, Law Offices of Douglas J. Campion, APC. I was admitted to the State Bar of California in 1977 and have been a member in good standing since that time. Since my admission, I have been engaged in litigation and I have had extensive experience in business litigation prior to working in the class action field. Since approximately 1989, the primary focus of my practice has been class actions filed on behalf of Plaintiffs, at first with a large national firm litigating primarily national securities and derivative cases. Since I opened my own office in 2001, I have been litigating primarily plaintiffs' consumer class actions, including litigating Telephone Consumer Protection Act ("TCPA") cases since 2007.

3. All of the class actions I have handled since I opened my office in 2001 have been litigated on a contingency basis. In all of my cases, I work without any guarantee of payment, and this case was no exception. As with any contingency practice, not all cases are successful. Thus, when I took on this case, I did so with the same understanding that there was a risk involved because it was a contingency case. In sum, as with all plaintiffs' contingency lawyers, the cases with which I am successful and for which I am able to collect fees necessarily offset the many cases which do not provide fees. It is those successful cases that permit my office to remain open.

1       4.      In evaluating the contingency factor, the Court stated that this case noted that

2 Class Counsel would "know how to pick a winner" but that is something that is never a certainty.

3 As explained above, there is always a substantial risk in contingency cases. That is especially true

4 in the TCPA field where it is a fairly new field of law, and the law is ever developing on basic

5 issues such as consent, class certification, etc.  As a result, all Class Counsel, including me, have

6 had their share of TCPA cases that have been lost, dismissed, or otherwise did not provide any

7 fees, despite investing perhaps hundreds of thousands of dollars in those cases in time invested

8 and costs.  In addition to those cases listed below, I have voluntarily dismissed many more TCPA

9 cases when discovery revealed information to prevent going forward, such as evidence of consent

10 of which my clients had forgotten or of which they were otherwise unaware. As examples of

11 cases in which I was not able to be successful, I personally was counsel in the following cases in

12 which I invested substantial time and money, but both were ultimately dismissed.

13       a.      *Hudson v. Sharp Healthcare*, Case No. 13cv1807 MMA (NLS) (S.D.

14 Cal. June 25, 2014) (granting summary judgment against Plaintiff in TCPA class case on consent

15 issue).

16       b.      *Maleksaeedi v. American Express Centurion Bank*, Case No. 11-cv-

17 CAB (KSC) (referring case to arbitration on an individual basis after ATT Mobility decision).

18       5.      Even after the present case was filed, it was no "sure thing".  The *Ramirez* case

19 and the Rose case were being litigated separately, with no consolidation of discovery efforts, and

20 until the cases were consolidated, the Rose case did not share any discovery efforts with the

21 *Makin, Johnson, Dukes* or *Poster* cases. We learned that FIA had a document retention policy that

22 caused the erasure of data we were seeking in *Rose*, which could have been a difficult hurdle to

23 overcome.  However, we were prepared to litigate this case for as long as required.  However,

24 ultimately all of these cases were consolidated and we were able to avoid the "divide and

25 conquer" strategy to date of Defendants, and mediated a settlement of all cases.

26 **The *Rose* Case**

27       6.      I am class counsel in this case, and was the counsel that filed the lead case, *Rose v.*

28 *Bank of America and FIA Card Services, N.A.*, on May 16, 2011.  I brought the Rose Action

solely on behalf of persons "who had a credit card serviced by FIA." Dkt. No. 1 at ¶ 20. I have actively litigated the Rose case and been involved in all aspects of discovery, although I delegated certain tasks to my co-counsel.

7. On August 31, 2011, Terrell, Marshall, Daudt & Willie PLLC ("TMDW") and the Ankcorn Law Firm, filed the *Ramirez* complaint against Bank of America, N.A. I did not learn about the *Ramirez* action until after its filing. *Ramirez* counsel did not inform me or any of my *Rose* co-counsel of the *Ramirez* action prior to filing, nor did we participate in any aspect of the *Ramirez* litigation.

8. In July 2012, attorneys from Lieff, Cabraser, Heimann & Bernstein, LLP ("LCHB") approached me to discuss their intention to file a separate action against Bank of America challenging both credit card and mortgage calls. Even though the cases involved two separate companies with different documents, data, and witnesses, LCHB shared their belief that a new proceeding would be more efficient and provide a vehicle through which the cases could be addressed together, given the overlap between the *Rose* and *Ramirez* classes. I supported LCHB's decision, in part because I believed that the introduction of new plaintiffs would help me challenge Bank of America's assertions that Plaintiff Rose's claims were not valid.

9. Although I did not participate in any aspect of the *Ramirez* litigation, I have become familiar with Bank of America's mortgage calls through my work on the global settlement. The credit card and mortgage calls at issue involved separate defendants, separate policies, separate practices, separate documents, separate data, and separate witnesses. It is therefore my view that the *Rose* and *Ramirez* cases would have required separate discovery regardless of whether the cases were joined at an earlier date.

**The Confirmatory Discovery**

10. On January 9, 2013, I deposed Dana Wassum, the person designated by Bank of America's as their Rule 30(b)(6) representative, for the purpose of conducting confirmatory discovery. As part of that deposition, Ms. Wassum testified about the procedures put in place by Bank of America, owner of FIA Card Services, after this lawsuit was filed to make certain in the future no cellphone numbers were called without prior express consent or numbers having

1  revoked consent.  Attached hereto as Exhibit A is a true and correct copy of the relevant pages of

2  that deposition transcript specifically relating to those new procedures.

3  **The Final Approval Hearing**

4  11. I attended the April 4, 2014, Final Approval Hearing on behalf of the Settlement

5  Class.  Attached hereto as Exhibit B is a true and correct copy of relevant pages of the hearing

6  transcript.

7  **The Costs of Notice and Claims Administration**

8  12. The costs for Settlement Administrator's hard costs for notice and claims

9  administration exceeded their initial projection due to:  (1) greater than anticipated data clean-up

10 and de-duplication efforts; (2) a higher than expected Email Notice undeliverable rate; and (3)

11 higher-than-expected Class member correspondence rates.  *See* Dkt. No. 74-11 at ¶ 39.  Class

12 counsel nonetheless negotiated a hard cap of $3,600,000 on Court-approved payments for notice

13 and claims administration, even though that amount is substantially less than the Settlement

14 Administrator's normal billing rates.

15 I declare under penalty of perjury of the laws of California and the United States that the

16 foregoing is true and correct, and that this declaration was executed in San Diego, California on

17 September 15, 2014.

**LAW OFFICES OF DOUGLAS J. CAMPION, APC**

By: */s/ Douglas J. Campion*
Douglas J. Campion
Class Counsel