Douglas J. Campion, SBN #75381
Email: doug@djcampion.com
LAW OFFICE OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, California 92108
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

Beth E. Terrell, SBN #178181
Email: bterrell@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 N. 34th St., Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHENIE ROSE, on behalf herself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION, and FIA CARD SERVICES, N.A.,<br><br>    Defendants. | NO. 5:11-cv-02390-EJD (PSG)<br><br>CLASS ACTION<br><br>**DECLARATION OF ALEXANDER H. BURKE IN SUPPORT OF MOTION FOR RECONSIDERATION** |
| CAROL DUKE AND JACK POSTER, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; AND FIA CARD SERVICES, N.A.,<br><br>    Defendants. | NO. 5:12-cv-04009-EJD (PSG)<br><br>CLASS ACTION<br><br>Honorable Edward J. Davila<br><br>DATE:<br>TIME:<br>LOCATION: Courtroom 4, 5th Floor |

I, Alexander H. Burke, declare as follows:

1. I am manager of Burke Law Offices, LLC ("BLO"). I submit this declaration in support of the Motion for Reconsideration of Order Granting In Part and Denying In Part Motion for Attorneys' Fees and Costs in this matter. Except as otherwise noted, I have personal

1  knowledge of the facts set forth in this declaration, and could testify competently to them if called
2  upon to do so.

3      2.    For the past four years or so, my firm has focused its practice on litigating TCPA
4  cases. I take these non-fee shifting cases on a contingency-fee basis, whereby my firm earns its
5  fees as a percentage of my client's recovery, or as ordered by the Court if I am able to achieve a
6  class settlement. The fee agreement I have with Amin Makin calls for my firm and my co-
7  counsel's firm to take a total of 40% of his recovery, after costs. This percentage represents the
8  market rate in Chicago for the caliber of representation I provide in TCPA cases. I know this
9  because I raised my percentage from 33% to 40% a few years ago, and have never had a client
10 balk at such a percentage. Even former clients who paid 33% previously and returned with new
11 potential cases agreed to 40% the second time around; ostensibly because they believed I
12 deserved such a fee because of my representation and results. I was a solo practitioner for the
13 entire time this matter was pending; I hired my first associate about a week ago, in September
14 2014.

15     3.    After we filed the *Makin* matter in Indiana, I learned about the *Rose* and other
16 matters that were pending in California. In the spring and summer 2012, I cold-called Beth
17 Terrell to introduce myself and talk about the cases. After several discussions, my co-counsel Ali
18 Saeed and I were invited to participate in these matters as members of the plaintiff team. Ms.
19 Terrell explained that she had read some of the decisions from my earlier cases, and that the
20 plaintiff team would be enriched through the addition of the distinct *Makin* class allegations, and
21 through the insight I might be able to provide, particularly with respect to interpretation of FCC
22 orders and discovery matters.

23     4.    I was cautiously optimistic about being a part of this case. I felt that there was
24 strength in numbers, and that having the additional lawyers involved would help provide the
25 strongest position possible to achieve the best result for the class we alleged in *Makin*. I had
26 never worked as part of a plaintiff team like that which we formed in this case, and was
27 concerned that I would get lost in the shuffle. Instead, I was overwhelmed with how smart and
28 diligent most of the other lawyers were and how efficiently things worked. Moreover, despite

that I was a late-comer to the team and new to this large a case, my input was well-received and integrated into our strategy.

5. Although I view TCPA cases as straightforward and substantive, they are not as easy as one might imagine. My solo law firm often "goes up against" the largest and best-funded law firms in the country, including Reed Smith in this matter. The defendant in this action was one of the largest banks in the world. I am consistently amazed by the creative positions and arguments defendants raise in my cases.

6. Of course, this firm only files cases that I believe the client and the class should win; however, this does not always happen. When Burke Law Offices, LLC loses cases, my firm takes in no money whatsoever, regardless of how hard I worked and regardless of how much money I spent on depositions, experts and other out-of-pocket costs. For example, I lost *Greene v. DirecTv, Inc.*, 2010 WL 4628734 (N.D.Ill. 2010), and *Elkins v. Medco Health Solutions, Inc.*, 2014 WL 1663406 (E.D.Mo. April 25, 2014), both hard-fought litigations that I took on a contingency basis. My firm put substantial time and money into both; resources that could have been allocated to other cases.

7. As with other lawyers, I often think I should have won cases or motions that I eventually lose. The difference is that while most lawyers (including of course my adversaries) receive remuneration regardless of whether they win or lose, I do not. I also lose the opportunity cost associated with having spent time and money on a loser that could have been spent on a different case. These are not the only cases I have lost as a solo practitioner, but they illustrate the risks associated with this kind of contingency practice.

8. There is no way to accurately predict whether a case will be successful before it has been filed or at any stage of proceedings. There are myriad things that could go wrong, some of which is almost completely out of counsel's control. For example, the law could change: there has been substantial pressure being applied by industry groups and banks that like to use the types of autodialers and prerecorded that are subject to the TCPA, in order to cheaply contact customers and potential customers, without having to worry about whether call recipients consented or not. If the FCC were to relax or alter the rules as to consent, this would not only open the floodgates

1    for billions more robocalls to non-consenting consumers, if such a change in law were retroactive,

2    it could also cause me to lose some or all of my TCPA cases on their merits – cases that were

3    "slam dunk" winners when filed. I have had several cases where the defendant has decided to

4    lobby the FCC for changes in the law, rather than defend on the merits.

5          9.      Indeed, apparently realizing that the TCPA presented a problem for it even before

6    these actions were filed, Bank of America had a meeting with the FCC to discuss proposed

7    changes to the definition of "prior express consent" on October 26, 2010:

8    http://apps.fcc.gov/ecfs/document/view?id=7020918939. The FCC ruled on November 15, 2012,

9    without changing the definition of "prior express consent" for debt collection calls. Had the FCC

10    decided to loosen what constitutes consent to permit implied consent for example, we might have

11    lost this case outright and obtained nothing for the class. With the increased use of autodialers to

12    make calls, there have been more petitions accepted by the FCC. There are several petitions

13    currently pending there, which could affect the outcome of my cases. Some cases are even stayed

14    pending such rulings; *Hurrle v. Real Time Resolutions, Inc.*, 2014 WL 670639 (W.D.Wash. Feb.

15    20, 2014) is an example of one such case.

16          10.    The dealings between plaintiff lawyers, too, factors into the risk associated with

17    litigating these cases, too. Not only has *Hurrle* been delayed, I understand that, without my

18    knowledge, a class case was filed against Real Time Resolutions in Chicago during the stay in

19    *Hurrle*, and that the parties are contemplating class settlement without me. The plaintiff lawyer

20    in *Hurrle* is a member of the plaintiff team in this matter. If that other lawyer settles without me,

21    I will receive nothing.

22       I declare under penalty of perjury of the laws of the State of Illinois and the United States

23    of America that the foregoing is true and correct.

24       EXECUTED at Chicago, Illinois this 15th day of September, 2014.

25

                                   /s/ Alexander H. Burke

26

27

28